**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA**

THE STATE OF LOUISIANA,
By and through its Attorney General, JEFF LANDRY, et.al.

                PLAINTIFFS,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; et al.,

                DEFENDANTS.

CIVIL ACTION NO. 22:21-cv-00778-TAD

**DECLARATION OF JEROME ZERINGUE**

I, Jerome Zeringue, declare as follows:

**EDUCATION, EXPERIENCE, AND EXPERTISE**

1. I am currently a member of the Louisiana State Legislature representing Lafourche and Terrebonne Parishes. I am the Chairman of the Appropriations Committee, and a former member of the Natural Resources Committee, both standing committees of the Louisiana House of Representatives. I am the former Executive Director of the Louisiana Coastal Protection Restoration Authority (LCPRA) and was the Director of the Terrebonne Levee and Conservation District. I am a resident of Houma, Louisiana, in Terrebonne Parish.

2. I have a bachelor's degree in zoology and a master's degree in fisheries science from Louisiana State University, and have also completed additional graduate studies at Tulane University. I am a principal owner of Progressive Coastal Consultants.

3. I make this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. This declaration is based on my personal knowledge, my review of and involvement in the development of cited materials, and my decades of experience in energy policy and analysis. I could and would competently testify to its contents if called to do so.

4. In my capacity as Chairman of House Appropriations and former member of the Natural Resources Committee, I have participated and continue to participate in legislative oversight

of the Louisiana Department of Natural Resources and the LCPRA, including the development and implementation of and funding for the Louisiana Comprehensive Coastal Master Plan ("the Coastal Master Plan").

5. In my capacity as former Executive Director of the LCPRA, I oversaw the development and implementation of the Coastal Master Plan, a comprehensive plan for coastal restoration and land loss prevention.

6. In my capacity as a former director of the Terrebonne Levee and Conservation District, as well as my current occupation, I am very familiar with the Louisiana's coastal areas and coastal protection needs, project planning, and project costs.

**BACKGROUND ON LOUISIANA'S COASTAL MASTER PLAN**

7. The Coastal Master Plan is the largest climate-adaption plan in the country for a sustainable coast. It is funded principally by revenues derived from the most highly regulated and least carbon-intensive oil and gas produced anywhere in the world—oil and gas produced from the Outer Continental Shelf under the Outer Continental Shelf Lands Act.

8. Since 2007, the State's coastal program has secured over $20 billion and has implemented projects in all 20 coastal parishes. Louisiana, through the LCPRA, has mobilized over 150 million cubic yards of material that has benefitted over 315 miles of levees, 60 miles of barrier islands, and 46,000 acres of new land.

9. Louisiana's successes and accomplishments in the coastal program are the result of productive working relationships with an array of stakeholders including the federal government, local governments, levee districts, landowners, the private sector, environmental agencies, and oil and gas companies.

10. Louisiana has a balanced, collaborative approach that brings oil and gas industry stakeholders to the table to develop solutions that will address the effects and causes of climate change.

11. The coastal program's only consistent source of State funding on an annual basis is from oil and gas production on State land and water bottoms. These funds range from about $25 million annually to $10 to $15 million annually.

12. The CPRA's only annual recurring source of revenue from the federal government

comes from the Gulf of Mexico Energy Security Act (GOMESA), which created standing revenue-sharing arrangements between federal government and the States of Texas, Louisiana, Mississippi, and Alabama.

13. GOMESA shares two primary resources of revenue: (1) bonus bids that come from new lease sales in the Gulf of Mexico, and (2) royalties that come from oil and gas production in the Gulf of Mexico.

14. The cancellation of Lease 257, which was originally scheduled for March 2021, causes the State an immediate short-term loss in revenue from the bonus bids on the sale, as well as longer-term revenue losses in rents and royalties.

## HARM TO THE COASTAL RESTORATION PLAN

15. The President's Executive Order, the cancellation of Lease 257, the cancellation of onshore Lease 258, and the delay of numerous other projects that were encompassed in approved leasing programs destabilizes the oil and gas industry, impedes the State's ability to fund existing and planned projects, and jeopardizes the State's ability to protect against and recover from coastal land loss.

16. The cancellation of Lease 257 directly affects revenues under GOMESA tied to bonus bids, since those revenues are related to new lease sales. Executive Order 14008 also affects future revenue shared with the Gulf States from actual oil and gas production, rendering it impossible for the State to plan and carry out large-scale, costly coastal restoration projects and critical habitat restoration projects that GOMESA revenue-sharing was intended to continuously fund.

17. GOMESA revenues come to the Louisiana Coastal Trust Fund in one lump sum annually and are used to cash flow the entire LCPRA operation.

18. In addition, funds coming to the coastal program from the BP oil spill are grant based. That means money has to be spent out of the State Coastal Trust Fund first and then reimbursed. So the Trust needs to have cash available to fund these ongoing projects before contracts can be issued to implement the projects that have been approved and funded from the BP oil spill settlements. GOMESA revenue also provides revenue to front-fund these projects.

19. The currently approved Coastal Master Plan is based upon a projected $389 million in

GOMESA expenditures over the next three fiscal years.

20.   This funding is already earmarked for, among other important initiatives, flood protection for these specific projects:

- $80 million for the Bayou Chene Project in St. Mary Parish, which protects six parishes—St. Mary, St. Martin, Assumption, Iberville, Terrebonne and Lafourche.
- $16.8 million for the Goose Bayou levee alignment.
- $9 million for St. Tammany Parish levee.
- $7 million for the west shore of Lake Ponchartrain, which protects river parishes.
- $9 million for two projects in Upper Barataria Bay, which includes St. Charles and Lafourche Parishes.
- $2 million for the East Bank Sediment Transport Corridor in St. Bernard Parish.
- $18.5 million for a flood gate in Lafourche Parish.
- $2 million a beach improvement project at Port Fourchon.
- $11.5 million for a critical pump station on Bayou Lafourche in Lafourche Parish.

21.   These projects protect people, property, marsh, critical habitat, businesses, and livelihoods. Saltwater marsh and swampland that these projects help protect and restore provide environmental benefits to the rest of the country and the world through natural carbon capture mechanism.

22.   If GOMESA funds vanish, Louisiana will essentially be left without a major source of funding for a $50 billion coastal recovery and restoration program.

I declare under penalty of perjury under the laws of the United States of America and the State of Louisiana that the foregoing is true and correct.

Executed in Houma, Louisiana this 31st day of March, 2021.

_____
JEROME ZERINGUE