# EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, JEFF LANDRY, et al.,<br><br>      *Plaintiffs,*<br><br>  v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al.,<br><br>      *Defendants*,<br><br>and<br><br>HEALTHY GULF, et al.,<br><br>      *Intervenor-Defendants.* | Civ. No.: 2:21-cv-00778-TAD-KK<br><br>Judge:  Terry A. Doughty<br><br>Mag. Judge: Kathleen Kay |

## DECLARATION OF PETER NELSON

  1. My name is Peter Nelson, and I am the Director of Federal Lands at Defenders of Wildlife ("Defenders"), a position I have held for over 13 years. I am also a member of Defenders. As a member and staff member of Defenders, I rely on Defenders to represent my personal and professional interests in protecting wildlife species and their habitats through advocacy, litigation, public education and outreach, and other means. Given my length of service to Defenders and my position within the organization, I am familiar with Defenders' broad scope of work across programs and across regions to advocate for the protection of public lands and waters both onshore and offshore from the ravages of fossil fuel and mineral exploration and extraction.

  2. Founded in 1947, Defenders of Wildlife is a non-profit 501(c)(3) membership organization dedicated to the protection and restoration of all native wild animals and plants in

their natural communities and the preservation of the habitats on which these species depend. Headquartered in Washington, DC, Defenders has regional and field offices in Alaska, Arizona, California, Colorado, Florida, Montana, New Mexico, North Carolina, Ohio, Oregon, Texas, Washington, and Wyoming. Defenders advocates for the sound management of our public lands and waters with a particular focus on the conservation of imperiled and protected species.

3. Defenders has 361,465 dues-paying members and nearly 2 million activists and supporters nationwide. Members of Defenders live near, travel to, recreate in, and otherwise use and enjoy federal lands and waters where oil and gas exploration and development is occurring or has been proposed, including coastal and offshore areas off the Atlantic Coast, the Gulf of Mexico, California, and Alaska, as well as federal lands across the country, including Alaska, California, and the Intermountain West. These members use and enjoy these areas for many aesthetic, recreational, scientific, commercial, and subsistence uses, such as camping, hiking, boating, wildlife viewing and photography, hunting and fishing, diving and swimming, scientific research and observation, and spiritual enjoyment.

4. As a resident of Bozeman, Montana, I regularly visit, use, and enjoy federal public lands within the states of Montana, Wyoming, and Idaho—including national forests, national wildlife refuges, and Bureau of Land Management lands—to hike, camp, fish, ski, view wildlife, and seek opportunities for solitude.

5. Defenders' members' use and enjoyment of these areas have been impaired by the impacts of past oil, gas, and mineral exploration and extraction. For example, in the Gulf of Mexico, following the *Deepwater Horizon* catastrophe, Defenders' members' use and enjoyment of areas affected by the nation's worst oil spill in history was substantially impaired not only by the oil and other chemicals present on the beaches and in the water but also by the diminished

opportunity to view wildlife resulting from the massive die-offs suffered by many species, including imperiled and protected species such as sea turtles and dolphins. Many of those impacts continue to this day. Defenders' members who have traveled across the Arctic Slope in Alaska have had their use and enjoyment of the Arctic ecosystem impaired by the extensive scarring across the landscape from past seismic exploration and other oil and gas activities. Despite many of these activities occurring decades ago, the tracks and depressions on the ground of this uniquely fragile landscape are still visible.

6. Defenders' members' use and enjoyment of areas currently proposed for lease sales are at risk from the impacts of future oil and gas exploration and development. Defenders' members are concerned about the wide-ranging impacts of fossil fuel exploration and extraction on federal lands and in federal waters, including air and water pollution, chemical releases and spills, ground disturbance, direct and indirect impacts to species, including habitat alteration and destruction, noise and disturbance, and invasive species introductions, and especially the release of heat-trapping gases responsible for climate change. These impacts diminish their enjoyment of these areas and adversely affect their ability to engage in the aesthetic, recreational, scientific, commercial, and subsistence pursuits these areas afford them. My use and enjoyment of federal lands in Montana and Wyoming will be acutely impacted by oil and gas development activities, particularly my ability to view and experience wildlife in their natural habitats, such as greater sage-grouse lekking, or the migration of mule deer.

7. Defenders advocates on behalf of its members and on behalf of imperiled and protected species that cannot advocate for themselves to protect them from the impacts of fossil fuel exploration and extraction on federal lands and in federal waters. Fossil fuel activities affect habitats and species through multiple pathways. First, because federal lands account for nearly

25 percent of U.S. greenhouse gas emissions, they are implicated in global changes to climate and habitat patterns. Second, industrial development associated with fossil fuels destroys and diminishes habitat and leads to increased pollution and disturbance. This is of special concern for biodiversity in the United States where development footprints and effect zones overlap habitat for imperiled and protected species. Third, even once extraction has ended, improperly plugged or abandoned wells can leak methane into the air, discharge oil into the ocean, and otherwise contaminate soils and water.

8. Defenders' Federal Lands Program works to protect public lands and waters essential to wildlife conservation across the United States, including the 95 million acres of land and 760 million acres of submerged lands and waters of the National Wildlife Refuge System, the 193 million acres of the National Forest System, and the 84 million acres and 3,095 miles of coastline in the National Park System, as well as the 258 million acres of public lands under the jurisdiction of the Bureau of Land Management (BLM). Defenders advocates at the national, regional, unit and project-specific levels to ensure their protection from the adverse impacts of fossil fuel extraction.

9. The National Wildlife Refuge System is the world's largest system of protected areas dedicated first and foremost to conserving and restoring fish, wildlife, and plants, and their habitats. It provides habitat for more than 8,000 species, including more than 500 species listed under the Endangered Species Act (ESA) on at least 444 of the 568 wildlife refuges. Yet even national wildlife refuges are not fully protected from the adverse impacts of oil and gas operations. Over 200 national wildlife refuges collectively contain over 5,000 oil and gas wells, of which approximately 1,665 wells in more than 100 refuges are actively producing oil and gas. The estimated cost for cleaning up orphaned wells on national wildlife refuges currently stands at

between 67 and 484 million dollars. Defenders has long advocated for comprehensive regulations of fossil fuel extraction in the National Wildlife Refuge System, including by providing congressional testimony and submitting detailed comments on the U.S. Fish and Wildlife Service's proposed regulations to manage non-federal oil and gas development on refuge system lands as well as continuing to advocate for plugging abandoned wells, restoring sites to productive native wildlife habitats, and maintaining the general prohibition against federal oil and gas development on refuge system lands.

10. Defenders has a history of advocating for the proper consideration of wildlife and habitat protection in the administration of the federal oil and gas program. For example, in November 2020, we provided comment to the U.S. Forest Service on proposed revisions to that agency's Oil and Gas Resources regulations (36 C.F.R. Part 228, Subpart E RIN 0596-AD33) that would have facilitated greater fossil fuel development on National Forest System lands to the detriment of imperiled wildlife, including species protected under the ESA. Defenders has also participated in every phase of the National Sage-Grouse Planning Strategy since its inception in 2011, including the 2015 Greater Sage-grouse Plans, which included a requirement that the BLM prioritize oil and gas leasing outside of sage-grouse priority and general habitat areas before considering leasing proposals within those designated habitat areas. Defenders has consistently advocated for application of the best available science to limit oil and gas development in sage-grouse priority habitat because the sagebrush steppe is among the most imperiled landscapes in North America and sagebrush habitat continues to be degraded and fragmented by gas and oil drilling and associated infrastructure. Defenders advocated against provisions in the 2018 Resource Management Plan Amendments that undermined the prioritization policy established in the 2015 Plan. Most recently, Defenders submitted

information to the Department of the Interior for consideration in DOI's review of the federal oil and gas program.

11. Across the nation, Defenders has long worked to protect iconic landscapes and species from fossil fuel extraction. Defenders has worked for 30 years to protect the Arctic National Wildlife Refuge from oil and gas drilling in the halls of Congress, before federal agencies, and in the courtroom. Defenders has fought repeated legislative efforts to open the Refuge's Coastal Plain to oil drilling while simultaneously advocating for permanent protections under the Wilderness Act.

12. Over the last three years, our most urgent goal for the Arctic Refuge has been to restore protections lost on account of the Tax Bill Congress enacted in December 2017. That Act mandates opening the Coastal Plain to destructive oil leasing and drilling, despite opposition from close to 70 percent of Americans. Defenders drafted technical comments focused on polar bear and other wildlife for administrative processes related to this mandate and, together with our Indigenous and conservation allies, sued the Bureau of Land Management and the U.S. Fish and Wildlife Service over their unlawful National Environmental Policy Act (NEPA) and ESA documents on its leasing program. The grossly inadequate environmental analyses underscore the need for a comprehensive re-evaluation of the federal government's policies and practices of permitting fossil fuel extraction on some of the most biologically significant landscapes in our nation—indeed, the world.

13. Although President Biden temporarily halted activities relating to the Arctic Refuge leasing program pursuant to executive order, the Refuge and other federal lands in Alaska are at continuing risk of the impacts of fossil fuel exploration and development both on- and offshore. For example, within the National Petroleum Reserve-Alaska (NPR-A), BLM

recently approved ConocoPhillips' Willow Master Development Plan, a project that may include as many as 5 drill sites, 37 miles of gravel roads, a gravel mine, up to 700 miles of ice roads during construction, hundreds of miles of pipelines, airstrips, and an operations center. If fully built out, the project will produce 590 million barrels of oil and add roughly 260 million metric tons of greenhouse gases over its 30-year lifespan. It will adversely affect the Southern Beaufort Sea stock of polar bears, one of the most gravely imperiled polar bear populations of this threatened species and degrade designated critical habitat for the species. It will significantly impact the Teshekpuk Lake Special Area, which contains the largest wetlands complex in the circumpolar Arctic and provides globally significant habitat for migratory birds, with the greatest density of shorebird nesting in the circumpolar Arctic. It also provides important calving and insect relief habitat and migratory corridors for the Teshekpuk caribou herd, a critical subsistence resource for Arctic Slope Indigenous communities. As with the Arctic Refuge, Defenders has invested years of effort into protecting the NPR-A through advocacy to the legislative and executive branches. Now that the Willow Project has been approved, Defenders has gone to court to challenge the federal agencies' unlawful NEPA and ESA documents.

14. Defenders has also spent years opposing offshore oil and gas leasing and development on the Outer Continental Shelf and challenging the federal government's repeated violations of federal environmental law in connection with offshore leasing and permitting of the various stages of exploration and development.

15. In the Gulf of Mexico and its bordering states, Defenders has spent decades advocating for coastal and marine imperiled and protected species that have suffered or are at risk of suffering significant adverse impacts from fossil fuel exploration and production, such as fish, corals, sea turtles, shorebirds, and marine mammals such as whales, dolphins, and manatees.

In the wake of the *Deepwater Horizon* catastrophe in the Gulf of Mexico in 2010, Defenders and its conservation allies filed a number of suits against the Bureau of Ocean Energy Management for failing to conduct adequate environmental reviews for exploration plans, *Defenders of Wildlife v. BOEM*, 684 F.3d 1242 (11th Cir. 2012), new Lease Sale 213, *Defenders of Wildlife v. BOEM*, 871 F. Supp. 2d 1312 (S.D. Ala. 2012), and new Lease Sale 216/222, *Oceana v. BOEM*, 37 F. Supp. 3d 147 (D.D.C. 2014).

16. More recently, Defenders and its conservation allies have challenged the Bureau of Safety and Environmental Enforcement's unlawful decision in 2019 to roll back safety regulations promulgated in 2016 that required significant safety improvements to well control and blowout preventer systems that had failed so disastrously in the *Deepwater Horizon* catastrophe, leading to significant loss of human life. The catastrophe was the largest and most destructive offshore oil spill in U.S. history. It irretrievably degraded the Gulf of Mexico, and indeed continues to do so. That case is pending in federal district court in the Eastern District of Louisiana. *Sierra Club v. Angelle*, Civ. No. 19-cv-13966-BWA-MBN (E.D. La.).

17. In the Atlantic, Defenders has had to invest significant advocacy and litigation efforts into opposing offshore leasing and exploration in the Atlantic Ocean that posed substantial threats to endangered North Atlantic right whales and other marine life such as sea turtles and pilot whales. Defenders submitted comments opposing applications for permits under the Outer Continental Shelf Lands Act (OCSLA) and the Marine Mammal Protection Act (MMPA) to conduct exploratory seismic surveys for undersea deposits of fossil fuels in the OCS off the Atlantic Coast in federal waters from Delaware to Florida, a significant portion of the right whale's migratory habitat and an area that encompasses the species' only known calving habitat in the warm, shallow waters from South Carolina to Florida. Seismic surveys for oil and

gas blast the water column with dozens of high-volume airguns towed in arrays that fire off blasts as often as every 10 seconds around the clock for months on end. Noise from these blasts can disturb, injure, and even kill animals across the entire marine ecosystem, from the smallest zooplankton to the largest whales. Defenders and its conservation allies filed a complaint and preliminary injunction based on the permitting agency's violations of the ESA, MMPA, and NEPA. *South Carolina Conservation League v. Nat'l Marine Fisheries Service*, Civ. No. 2:18-cv-3326-RMG (D.S.C.). Although that case was successfully concluded following the expiration of the challenged permits, continued or expanded offshore lease sales will perpetuate the demand for seismic surveys that kill and injure marine species throughout the food web, damaging marine ecosystems.

18. In Alaska, Defenders opposes offshore leasing because, among other reasons, of the significant risks to imperiled marine species such as the endangered Cook Inlet distinct population segment of the beluga whale and the threatened southwestern Alaska distinct population segment of the northern sea otter. Cook Inlet, located in southcentral Alaska, is adjacent to Alaska's largest population center and port—Anchorage—where along with other communities, over 65 percent of Alaska's human population resides.

19. Cook Inlet beluga whales face a wide range of threats from increasing industrialization, including climate impacts, noise pollution, toxic dumping, and habitat degradation from oil and gas development and other industrial activities. With only 279 surviving individuals, this population has declined over 75 percent from its historic population and continues to decline at a rate of 2.3 percent annually. The northern sea otter population, meanwhile, has experienced a 55 to 65 percent population decline since the mid-1980s, and faces

threats including oil spills, pollutants, disturbance from recreational and industrial activities, and killer whale predation.

20. The currently postponed Lease Sale 258 in the northern portion of the Cook Inlet Planning Area would encompass approximately a million acres. Defenders strongly opposed Lease Sale 258 because of the myriad unacceptable and unjustifiable environmental impacts development of this lease would entail, including exacerbating climate change and adversely affecting Cook Inlet belugas and northern sea otters through noise, oil spills and discharged waste, and degradation of designated critical habitat.

21. Defenders fully supports the current pause on oil and gas leasing on federal lands and waters resulting from Section 208 of President Biden's Executive Order 14008, "Tackling the Climate Crisis at Home and Abroad," (86 Fed. Reg. 7619 (Jan. 27, 2021)). Defenders has submitted comments to the Department of the Interior urging the federal government to undertake a comprehensive programmatic review to arrive at a course forward consistent with the United States' goal of limiting climate change to 1.5 degrees Celsius and President Biden's goal of protecting 30 percent of U.S. lands and waters by 2030. Defenders advocates that the federal government maintain this pause on oil and gas leasing during the pendency of the review process while aggressively starting to transition towards the goal of zero emissions from federal lands. Defenders supports the use of all existing legal mechanisms to remediate, mitigate, and prevent further harms to federal lands and waters and to the planet's climate from fossil fuel and mineral extraction activities, such as increasing bonding rates to reflect the true cost of reclamation and plugging, canceling improperly-let leases, and withdraw or reconsider decisions authorizations issued in violation of statutes such as the ESA, MMPA, NEPA, and others.

22.     The current pause on leasing protects Defenders' members' interests by preventing or reducing the adverse impacts from oil and gas exploration and extraction on federal lands and waters. The pause on leasing will ensure that these interests are not further impaired by additional air and water pollution, habitat destruction and modification, diminution in wildlife populations, and climate-altering emissions during the pendency of the programmatic review underway. In turn, the programmatic review will benefit Defenders and its members by providing information on the full scope of fossil fuel and mineral exploration and extraction on federal lands and waters and the ways in which the federal government must improve its management of our federal lands and waters to ensure that public resources and the public interest in these resources are vigorously protected for the benefit of all. Following the programmatic review, Defenders will in turn be better able to educate its members and the public on how existing laws and regulations must be implemented and strengthened to ensure the vibrancy and abundance of our public lands and waters that we hold in trust for future generations are restored, protected, and expanded.

23.     If, on the other hand, the current pause on leasing were to be enjoined on a temporary or permanent basis, Defenders and its members will be directly harmed by the continuation of and increase in oil and gas leasing on public lands and waters subject to the piecemeal, antiquated, and inadequate regulations and policies currently in place. The lease sale areas currently under the temporary pause will be inundated by oil and gas activity harming Defenders' and its members' aesthetic, recreational, scientific, commercial, and subsistence uses of these public lands and waters. These include areas within Montana and Wyoming where I recreate and otherwise use and enjoy federal lands.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23rd day of April, 2021.

_____
Peter Nelson