# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, JEFF LANDRY, et al., | Civ. No.:       2:21-cv-00778-TAD-KK |
| *Plaintiffs,* | Judge:        Terry A. Doughty |
| *v.* | Mag. Judge:   Kathleen Kay |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al., | |
| *Defendants,* | |
| and | |
| HEALTHY GULF, et al., | |
| *Intervenor-Defendants.* | |

**DECLARATION OF SARAH CHASIS**

I, Sarah Chasis, declare as follows:

1.      The statements I make are true and correct to the best of my knowledge, and, if called upon, I would state the same.

2.      I am Senior Strategist for Oceans at the Natural Resources Defense Council ("NRDC"), and, prior to assuming that role, served as director of NRDC's Oceans Division. I have worked as an oceans advocate at NRDC for more than forty years and have been engaged throughout that time in the organization's work on offshore oil and gas leasing, exploration, and production.

3.      NRDC is a non-profit environmental membership organization with hundreds of thousands of members nationwide, including many hundreds of members in each of the Plaintiff States. In particular, NRDC has approximately 1,700 members in Alabama, 1,100 in Alaska,

1,400 in Arkansas, 5,400 in Georgia, 1,400 in Louisiana, 600 in Mississippi, 5,400 in Missouri, 2,000 in Montana, 1,500 in Nebraska, 1,600 in Oklahoma, 12,800 in Texas, 2,800 in Utah, and 1,100 in West Virginia. NRDC also has approximately 17,100 members in Florida, a State that lies proximate to certain of the offshore leasing activities that are the subject of this litigation.

4.       NRDC's mission is to safeguard the earth—its people, its plants and animals, and the natural systems on which all life depends. Through its Oceans Division, the organization has demonstrated a longstanding commitment to the protection of vulnerable marine ecosystems. For more than five decades, we have advocated for the protection and long-term sustainability of our ocean resources on behalf of our members. This includes work to prevent and combat damage from extractive activities in federal waters on the Outer Continental Shelf. Another essential part of our mission is to end the country's dependence on fossil fuels and to encourage transition to a clean energy future, which we carry forward through our Climate and Clean Energy Program and through myriad projects across the organization.

5.       NRDC's Trustees, staff, and members use and enjoy federal waters where oil and gas development is occurring or has been proposed, including in the Gulf of Mexico and Cook Inlet, Alaska. Their activities include recreational and aesthetic activities, such as boating, fishing, photography, and whale-watching and other wildlife viewing; commercial activities, such as fishing and wildlife touring; and scientific study. For example, one of NRDC's members based in New Orleans, Louisiana, regularly flies over the northern Gulf of Mexico to assess wildlife habitat and distribution and to support environmental research. Continued offshore oil and gas leasing activities, with their attendant pollution and disturbance of wildlife and their contribution to climate change, are inimical to the healthy marine environment sustaining our Trustees', staff, and members' use and enjoyment of outdoor environments. They are also

2

inimical to NRDC's mission of ensuring the sustainability of the ocean and transitioning rapidly

from fossil fuels to clean energy.

6.       NRDC's recent advocacy on offshore oil and gas leasing has included legislative

outreach; administrative advocacy, including the filing of successive comments on the current

leasing program and on the 2017 draft proposed leasing program; and extensive participation in a

public campaign with other environment organizations aimed at keeping fossil fuels in the

ground. We have also defended President Obama's permanent withdrawal of areas in the Arctic

and Atlantic Oceans from leasing under the Outer Continental Shelf Lands Act. *LCV v. Trump*,

363 F.Supp.3d 1013 (D. Alaska 2019), *appeal dismissed sub nom. LCV v. Biden*, 2021 WL

1392149 (9th Cir. 2021). Publicly, and in letters to the new administration, we have called for the

cancellation of scheduled offshore lease sales, including Lease Sale 257 in the Gulf of Mexico

and Lease Sale 258 in Cook Inlet, which were recently postponed through President Biden's

January 27 Executive Order on Tackling the Climate Crisis at Home and Abroad.

7.       Our work on offshore oil and gas leasing, exploration, development, and

production activities consists of a long record of institutional advocacy for regulation and

constraint of offshore oil and gas development. NRDC's engagement began more than four

decades ago, when we legally challenged the first lease sale scheduled on the Atlantic Outer

Continental Shelf, lobbied to strengthen the Outer Continental Shelf Lands Act through its 1978

Amendments, and successfully challenged the first Five-Year Leasing Program issued under the

Act. Over the next twenty-five years, we advocated in Congress for the adoption of the annual

leasing moratoria that were in place from 1981 to 2008 to protect the east and west coasts,

Bristol Bay, Alaska, and the eastern Gulf of Mexico. In 2010, in recognition of our record and

expertise on offshore oil and gas development, Frances Beinecke, NRDC's then-President, was

asked to serve on President Obama's National Oil Spill Commission in the wake of the

*Deepwater Horizon* disaster in the Gulf of Mexico. In 2019, we filed a lawsuit against the

Interior Department's revision and partial repeal of the well control and blowout preventer rule

which weakened protections adopted following the *Deepwater Horizon* disaster.

8.       In addition, NRDC has worked since the 1990s to protect marine life from the

disruptive seismic exploration activities associated with offshore oil and gas leasing and

development, including within the regions where lease sales have been paused under the

President's Executive Order. For example, we have advocated to protect Rice's whale, a species

unique to the Gulf of Mexico, both by petitioning for its listing as an endangered species under

the Endangered Species Act (84 Fed. Reg. 15,446 (Apr. 15, 2019)) and by litigating to safeguard

its habitat from the region's extensive oil and gas surveys (*NRDC v. Haaland*, Civ. No. 2:10-cv-

01882 (E.D. La.)). Similarly, we have litigated to protect the Cook Inlet beluga whale from high-

energy seismic surveys within its limited range (*Native Village of Chickaloon v. NMFS*, 947

F.Supp.2d 1031 (D. Alaska 2013)). NRDC and its members are profoundly concerned about the

wildlife impacts associated with the lease sales proposed for these regions, including with the

recently postponed Lease Sales 257 and 258.

9.       NRDC and its Trustees, staff, and members benefit significantly from the pause in

offshore oil and gas leasing established in the President's January 27 Executive Order. For

decades, offshore leasing has proceeded in the Gulf of Mexico and Cook Inlet without

consideration of the activity's contributions to global warming commensurate with its impacts

and without due regard for ocean health. The pause will ensure that our federal leasing practices

take full account of the activity's climate and other impacts and reflect the Interior Department's

broad stewardship responsibilities for our oceans. Should the pause be invalidated, lease sales

4

would proceed in the Gulf of Mexico and Cook Inlet without this comprehensive review and without appropriate measures to protect the climate and other resources, which the review is intended to provide. Further, the rescheduling of lease sales would increase the likelihood that harmful activities associated with leasing, such as high-energy seismic exploration, will occur in areas where our Trustees, staff, and members conduct research, recreate, and engage in commercial activities that are dependent on the availability of marine wildlife.

10.     NRDC's interests may not be adequately represented by existing parties to this litigation. For decades, we have advocated for more rigorous regulation of the oil and gas industry, and have sued the federal government when it failed to comply with its obligations under the law or ignored the science supporting sound management of the environment. We have targeted interests in mitigating climate change, protecting ecosystems and species threatened by oil and gas development, and ensuring the long-term care and stewardship of our environment. By contrast, the Department of the Interior considers and represents a broader array of interests. In the course of our advocacy, we have seen that the Department of the Interior's and BOEM's interests are not always aligned with our own, and there may be instances in this action and in other contexts where our interests in regulating the oil and gas industry and environmental protection do not align. In this case, Plaintiffs have argued that the President and the Department of the Interior have acted outside of their authority under the Outer Continental Shelf Lands Act (OCSLA) and the Mineral Leasing Act (MLA) by issuing a temporary moratorium on lease sales on federal lands and in federal waters and by cancelling or delaying certain lease sales. They also argue that OCSLA and the MLA require continued development of onshore and offshore oil and gas. NRDC's position is that OCSLA and the MLA provide the President and Interior with ample authority to issue a temporary moratorium and to delay or cancel lease sales; and permit

5

even more stringent approaches to leasing and regulation. Based on prior experience, there is no guarantee that the attorneys defending the government will share our interpretation of these statutes. For these reasons, our interests are not adequately represented by the parties in this action.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 20th day of April, 2021.

_____
Sarah Chasis