# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, JEFF LANDRY, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; et al.,<br><br>DEFENDANTS. | CIV. NO. 2:21-CV-00778-TAD-KK |

**PLAINTIFF STATES' MEMORANDUM IN OPPOSITION TO CONSERVATION GROUPS' MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................ii

INTRODUCTION.....................................................................................................................................1

ARGUMENT..............................................................................................................................................1

    I.    THIS COURT SHOULD DENY CONSERVATION GROUPS' MOTION TO INTERVENE AS OF RIGHT BECAUSE THE FEDERAL DEFENDANTS ADEQUATELY REPRESENT THE GROUPS' INTEREST IN THIS LAWSUIT ...........................................................................................................1

        A.    The Conservation Groups and the Federal Defendants Share the Same Ultimate Objective in this Lawsuit, so a Presumption of Adequate Representation Applies ..........3

        B.    Conservation Groups Have Failed to Overcome the Presumption of Adequacy Because They Have Not Shown an Adversity of Interest Between Them and the Federal Defendants in this Suit .....................................................................................................5

    II.    THIS COURT SHOULD ALSO DENY CONSERVATION GROUPS' ALTERNATIVE REQUEST FOR PERMISSIVE INTERVENTION ................................................................................................8

CONCLUSION.........................................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. City of Monroe*,
   314 F.R.D. 422 (W.D. La. 2016) ............................................................................................. 8

*Bush v. Viterna*,
   740 F.2d 350 (5th Cir. 1984) ................................................................................................ 2, 7

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
   788 F.3d 312 (D.C. Cir. 2015) .................................................................................................. 2

*Edwards v. City of Houston*,
   78 F.3d 983 (5th Cir. 1996) ...................................................................................................... 2

*Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*,
   817 F.3d 198 (5th Cir. 2016) ................................................................................................ 4, 7

*G & H Dev., LLC v. Penwell*,
   No. 13-CV-0272, 2014 WL 12663199 (W.D. La. Sept. 4, 2014) ............................................. 8

*Golden Nugget Lake Charles, LLC v. W.G. Yates & Sons Constr. Co.*,
   No. 15-CV-2751, 2016 WL 8200623 (W.D. La. May 16, 2016) ............................................. 8

*Hopwood v. State of Tex.*,
   21 F.3d 603 (5th Cir. 1994) .................................................................................................. 2, 9

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
   806 F.2d 1285 (5th Cir. 1987) ......................................................................................... 2, 4, 8

*Sec. & Exch. Comm'n v. Blackburn*,
   No. CV 15-2451, 2020 WL 1166995 (E.D. La. Mar. 11, 2020) .............................................. 4

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
   914 F.3d 969 (5th Cir. 2019) ........................................................................................... 1, 2, 3

*Staley v. Harris Cty. Tex.*,
   160 F. App'x 410 (5th Cir. 2005) ........................................................................................ 4, 9

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*,
   2000 WL 127281 (N.D. Tex. Feb. 2, 2000) ........................................................................... 10

*Terrebonne Par. Branch NAACP v. Jindal*,
   2016 WL 2743525 (M.D. La. May 11, 2016) ........................................................................ 10

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) ................................................................................................ 4, 5

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ............................................................................................................ 2, 6

*Veasey v. Perry*,
    577 F. App'x 261 (5th Cir. 2014) ...................................................................................... 2, 7, 9

**Rules**

FED. R. CIV. P. 24(a)(2) ................................................................................................................ 1, 3

**Regulations**

86 Fed. Reg. 7619 .............................................................................................................................1

## INTRODUCTION

This suit involves a challenge by Louisiana and twelve other Plaintiff States to the lawfulness of President Biden's January 27, 2021 Executive Order and any agency action attempting to implement its *ultra vires* command to indefinitely halt leasing of federal lands for natural resource development. Nine conservation groups ("Conservation Groups" or "the Groups") now seek to intervene. Doc.73. The Groups' motion to intervene as of right should be denied because the Federal Defendants adequately represent the Groups' interests in this suit. For similar reasons, this Court should also exercise its discretion to deny the Groups' alternative request for permissive intervention.

More specifically, because the Groups and the Federal Defendants share the same ultimate objective in this litigation—defending the enforceability of Section 208 of Executive Order 14008, 86 Fed. Reg. 7619, and any agency action implementing its directives—a presumption of adequate representation arises that the Groups have failed to overcome. Any "adversity" of interests between the Groups and the Federal Defendants is either overly speculative or wholly outside the scope of this lawsuit. All Federal Defendants and the Groups want the same thing here: to deny Plaintiff States the relief they seek. Conservation Groups' participation in this suit will unnecessarily burden this Court and the parties without meaningfully aiding its development. The Groups' motion to intervene should therefore be denied.

## ARGUMENT

**I.   THIS COURT SHOULD DENY CONSERVATION GROUPS' MOTION TO INTERVENE AS OF RIGHT BECAUSE THE FEDERAL DEFENDANTS ADEQUATELY REPRESENT THE GROUPS' INTEREST IN THIS LAWSUIT**

Conservation Groups are not entitled to intervene as of right unless they have shown, among other things, that they have a legally protectable interest in this suit that is not adequately represented by an existing party. FED. R. CIV. P. 24(a)(2); *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019). As the proposed intervenors, Conservation Groups "have the burden of

demonstrating inadequate representation." *Hopwood v. State of Tex.*, 21 F.3d 603, 605 (5th Cir. 1994). Failure to carry this burden "precludes intervention as of right." *St. Bernard Par.*, 914 F.3d at 974 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)).

In a single footnote nearly 50 years ago, the Supreme Court remarked that a proposed intervenor's burden to show inadequacy of representation under Rule 24(a)(2) was "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). But the Fifth Circuit has emphasized that "[h]owever 'minimal' this burden may be, it cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). Put differently, the "requirement must have some teeth." *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014).

Part of what gives the "inadequate representation" requirement teeth—at least in the Fifth Circuit—is the presumption that an existing party adequately represents a proposed intervenor's interests when they share the same "ultimate objective" in the suit. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987). Proposed intervenors bear the burden of overcoming this presumption by establishing either that the existing party with whom they are aligned has engaged in collusion or malfeasance or, alternatively, that an "adversity of interest" exists between them and the party with whom they share the same ultimate objective. *Id.*[1]

Conservation Groups do not argue that the Federal Defendants have engaged in collusion or malfeasance. Doc. 73-1, at 16-23. Instead, they argue that there is adversity of interest between them and the Federal Defendants. *Id.*, at 18. Additionally, citing to a pair of cases from the Ninth and Tenth circuits, the Groups suggest that they are entitled to intervene as of right in this case simply because,

---

[1] Conservation Groups quote language from one D.C. Circuit case for the proposition that they are entitled to intervene as of right unless it is "clear" that the Federal Defendants will not provide adequate representation. Doc. 73-1, at 16-17 (quoting *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015)). This is not the law in the Fifth Circuit, where Conservation Groups must overcome the presumption of adequacy. *St. Bernard Par.*, 914 F.3d at 974.

2

in the past, they have advocated in a general policy sense for a pause in the federal leasing program. Doc. 73-1, at 13. Even if that rule exists in those circuits, it does not exist in the Fifth Circuit. Here, proposed intervenors are *precluded* from intervention as of right *unless* they make four separate showings, one of which is inadequacy of representation by the existing parties. *St. Bernard Par.*, 914 F.3d at 974.

As detailed below, the Groups have failed to make this necessary showing. Because the presumption of adequacy applies based on a shared ultimate objective and Conservation Groups have failed to establish adversity of interest, they are not entitled to intervene as of right under Rule 24(a)(2).

    **A.**    **The Conservation Groups and the Federal Defendants Share the Same Ultimate Objective in this Lawsuit, so a Presumption of Adequate Representation Applies**

Conservation Groups and the Federal Defendants have the same ultimate objective in this suit: upholding the enforceability of Executive Order 14008 and any agency action implementing its commands. *See* Doc. 73-1, at 17 (conceding a shared objective with the Federal Defendants). Because the Groups and the Federal Defendants share the same ultimate objective, the Fifth Circuit's presumption of adequacy applies, which Conservation Groups can only overcome by showing adversity of interest.

The Groups nevertheless argue that they do *not* in fact share the same ultimate objective as the Federal Defendants. Doc. 73-1, at 17. The Groups identify their ultimate "objectives," plural, as "much further reaching" than those of the Federal Defendants. *Id.* For example, they identify one "ultimate objective" as "ensuring Interior does not hold new lease sales *at least* until it has had an opportunity to implement an approach to oil and gas development on federal lands and waters that is sufficiently protective of the climate, environment, and public health." *Id.* (emphasis in original). They then state that a subset of their cohort has an ultimate objective of establishing "a *permanent* end to

3

new leasing of federal lands and water." *Id.* (emphasis in original). Finally, they claim without support that "even the shared objective of defending Interior's actions regarding the particular lease sales is not assured at this point." *Id.* at 18. These stated "objectives" reflect a fundamental misunderstanding of governing law.

First, according to the Fifth Circuit and basic rules of grammar, a party can only have one "ultimate" objective in a particular lawsuit. *Kneeland*, 806 F.2d at 1288 ("This circuit holds that when the party seeking to intervene has *the same ultimate objective* as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene . . . .") (emphasis added); *see Sec. & Exch. Comm'n v. Blackburn*, No. CV 15-2451, 2020 WL 1166995, at *4 (E.D. La. Mar. 11, 2020) (holding that only one person could hold "ultimate" authority for a statement); *Ultimate*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/ultimate (defining "ultimate" as "incapable of further analysis, division, or separation."). Cases that Conservation Groups rely on to support their motion actually *support* this fundamental principle. *Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (presumption applies "when the would-be intervenor has *the same ultimate objective* as a party to the lawsuit") (emphasis added); *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015) (referencing the "same ultimate objective" presumption). The Groups' attempt to muddy the applicable law is just an effort to wiggle out of an inescapable conclusion: when forced to reveal their "ultimate" objective in this suit, it is clear that theirs is the same as the Federal Defendants.

Second, the "ultimate objective" must be specific to *this* lawsuit. *Kneeland*, 806 F.2d at 1288 (recognizing that the defendants and proposed intervenors both shared the "same ultimate objective" of preventing the disclosure of documents in a suit seeking public records under Texas law); *Staley v. Harris Cty. Tex.*, 160 F. App'x 410, 413 (5th Cir. 2005) (recognizing that the defendant and the

proposed intervenor shared the same "ultimate goal" of preserving a monument in a suit by a plaintiff seeking an order removing a display of the King James Bible in front of a county courthouse). Here, Plaintiff States have challenged Executive Order 14008 and various agency actions implementing its moratorium on the leasing of public lands and the Outer Continental Shelf for natural resource development. *See* Doc. 1. That some Conservation Groups have the grand goal of permanently dismantling the statutory regime governing federal land leasing, Doc. 73-1, at 17, or the similarly ambitious goal of halting the issuance of new drilling permits, *id.*, at 21, is simply outside the scope of anything that could result from this lawsuit. The Groups' wide-ranging policy objectives are immaterial here; it is their *litigation* objective that is key for determining whether the adequate representation presumption applies.

Conservation Groups cannot seriously dispute that their *ultimate* objective in this suit would be to defend the enforceability of Executive Order 14008 and the agency action purporting to implement it. Accordingly, the presumption of adequacy applies.

**B.   Conservation Groups Have Failed to Overcome the Presumption of Adequacy Because They Have Not Shown an Adversity of Interest Between Them and the Federal Defendants in this Suit**

Conservation Groups concede that to overcome any presumption of adequacy they must establish an adversity of interest between them and the Federal Defendants "in a manner germane to the case." Doc. 73-1, at 18 (citing *Texas*, 805 F. 3d at 662). Here, they have failed to do just that, instead broadly framing the interests of various parties in ways that have no bearing on the relief sought by Plaintiff States in this lawsuit.

The Groups claim that the "Secretary of Interior must balance a wide variety of interests" that "often compromises environmental, cultural, and health protections . . . in favor of oil and gas development." Doc. 73-1, at 18-19. They further claim that they have "narrower interests: abating the

5

climate crisis and protecting wildlife, water and air quality, public health, and cultural resources from the harms that result from additional leasing on federal lands and in federal waters, and ensuring a leasing process that adequately addresses these harms." *Id.*, at 19.

Two points. *First*, there is nothing narrow about the Groups' purported interests. *Second*, they overlap entirely with those of the Federal Defendants for all relevant purposes in *this* case, in which the Federal Defendants are defending an Executive Order that by its own terms paused the federal land leasing program because of concerns about climate change so that the entire scheme could be reviewed. 86 Fed. Reg. 7619, 7624-25. Such overlapping interests are insufficient to show an adversity of interest to overcome the presumption of adequate representation.

Conservation Groups' reliance on the Supreme Court's opinion in *Trbovich v. United Mine Workers of America* is equally misplaced. Doc. 73-1, at 20. *First*, there was no presumption of adequacy applicable in that case, so the Court never determined whether any true "adversity of interest" existed. *See Trbovich*, 404 U.S. at 538–39. *Second*, the posture of the case was materially different. In *Trbovich*, no agency action was being challenged; instead, the ultimate issue was whether a union had conducted a lawful election of its officers. *Id.* at 530. If the Secretary of Labor succeeded on the merits as a plaintiff in overturning the election, the Secretary and the union member could conceivably disagree about various conditions that would have to be set on any future election. *See id.* at 537 n.8. Here, by contrast, Conservation Groups are seeking to align themselves with *defendants* tasked with defending specific regulatory action. In this case, the Groups and the Federal Defendants will ultimately want the same relief: dismissal of this suit, one way or another.

Perhaps recognizing these weaknesses in their position, Conservation Groups also argue that the purported "divergence of interests could manifest itself in this litigation either procedurally or in the substantive arguments." Doc. 73-1, at 22. In support, they speculate that "Federal Defendants

6

may make different legal arguments than Conservation Groups in terms of the scope of the government's authority under OCSLA or the MLA, or required processes under the Administrative Procedure Act." *Id.* But the Fifth Circuit has never relied on such vague speculations to find sufficient adversity of interest to overcome a presumption of adequacy. *See Veasey*, 577 F. App'x at 262 ("In all of our cases permitting intervention, the incongruity of interests was far more pronounced.").

For example, in *Entergy Gulf States Louisiana v. U.S. E.P.A.*, the key fact was that the proposed intervenor took a different position than the defendant about when certain documents should be disclosed in a lawsuit that was all about document disclosure. 817 F.3d 198, 204 (5th Cir. 2016); *but see id.* at 206 (Jones, J., dissenting) (explaining that the district court's denial of intervention should have been affirmed because the Sierra Club and the EPA's disagreement over litigation tactics was insufficient to overcome the presumption of adequacy based on their shared ultimate objective). Similarly, in *Texas v. United States*, the court carefully explained how the relevant defendant's position was "directly adverse" to that of the proposed intervenors. 805 F.3d at 663. There, the United States argued that states *could* refuse to issue driver's licenses to the proposed intervenors; meanwhile, the proposed intervenors argued that states *could not* make such refusals. *Id.*

Here, no such adversity exists. At best, all Conservation Groups can show is that when the Federal Defendants' interests are framed as broadly as possible, they do not completely overlap with the interests of the *nine* groups seeking to intervene in this case. This is no surprise. It's also immaterial to the question of whether adversity of interest exists *in this suit*. *Bush*, 740 F.2d at 356–57 (5th Cir. 1984) ("[A]dversity of interest must be shown *in the present proceeding* and may not be inferred from the possibility of adversity in some future proceeding.") (emphasis added). Proposed intervenors cannot rely on purely speculative positions to overcome the presumption of adequacy. *Golden Nugget Lake Charles, LLC v. W.G. Yates & Sons Constr. Co.*, No. 15-CV-2751, 2016 WL 8200623, at *2 (W.D. La.

7

May 16, 2016) (Kay, M.J.) (rejecting "purely speculative" argument raised by proposed intervenors seeking to show lack of adequacy of representation). Were the law otherwise, the presumption would be toothless.

When proposed intervenors fail to overcome a presumption of adequate representation, their motion to intervene as of right should be denied—a decision that the Fifth Circuit has affirmed on multiple occasions. *Kneeland*, 806 F.2d 1285, 1288 (5th Cir. 1987) (affirming denial of intervention as of right where proposed intervenors failed to overcome presumption of adequacy that arose because of a shared ultimate objective); *Bush*, 740 F.2d at 357 (same); *Staley*, 160 F. App'x at 413–14 (same); *Lamar v. Lynaugh*, 12 F.3d 1099 (5th Cir. 1993) (same). Other divisions of this Court have denied motions to intervene as of right under similar circumstances. *Andrews v. City of Monroe*, 314 F.R.D. 422, 428 (W.D. La. 2016) (James, J.) (rejecting proposed intervenor's argument that adversity of interest existed to overcome presumption of adequacy based on same ultimate objective); *G & H Dev., LLC v. Penwell*, No. 13-CV-0272, 2014 WL 12663199, at *3 (W.D. La. Sept. 4, 2014) (Hornsby, M.J.) (rejecting proposed intervenor's argument that its more specific interests were sufficient to show an adversity of interests to overcome the ultimate objective presumption). This Court should do the same and hold that Conservation Groups are not entitled to intervene as of right because the Federal Defendants adequately represent them in this case.

## II. THIS COURT SHOULD ALSO DENY CONSERVATION GROUPS' ALTERNATIVE REQUEST FOR PERMISSIVE INTERVENTION

Conservation Groups devote substantial portions of their memorandum in support of their motion to intervene to discussing circumstances or desires that have nothing to do with this case. *E.g.*, Doc. 73-1, at 3-4 (highlighting alleged "well-established problems with the federal and oil and gas program" by citing to various Government Accountability Office reports); *id.*, at 17 (advancing an interest in permanently ending the federal land leasing program); *id.*, at 21 (referencing an "adversarial

history between Conservation Groups and Interior"); *id.*, at 21 (mentioning "pending litigation with BOEM about recent leasing decisions in the Gulf"); and *id.*, at 21 (expressing an interest in pausing "approvals of new drilling permits"). This is window into the future: if Conservation Groups are permitted to intervene in this suit, they will likely continue to try to turn this lawsuit into something that it's not, resulting in a litigation morass for the Court and the parties. If Conservation Groups want to end the federal land leasing program, that desire is perfectly within their rights; but they must turn to *Congress*, not this Court, to advocate for such change.

The Fifth Circuit has consistently affirmed the denial of requests for permissive intervention when an existing party adequately represents the proposed intervenors. *E.g.*, *Hopwood*, 21 F.3d at 606; *Staley*, 160 F. App'x at 414. Because Conservation Groups' interests are adequately represented by the Federal Defendants in this case, allowing them to permissively intervene would only result in duplicative briefing that will waste the resources of this Court and the parties. The fact that this Court has already set a briefing schedule on Plaintiff States' motion for preliminary injunction in this fast-moving litigation only counsels further against adding nine new parties to this suit. Finally, the idea that Conservation Groups somehow possess "expertise and familiarity" with the federal leasing program that the institutional defendants in this case lack is both unsupported and difficult to fathom. *See* Doc. 73-1, at 23-24. Because Conservation Groups are adequately represented by the Federal Defendants in this case and have not shown how they could bring unique arguments or insight into it, this Court should deny the Groups' request for permissive intervention.

What this Court could do, however, is allow the Groups to participate as *amici curiae* should they seek leave to do so. *See Bush*, 740 F.2d at 359 ("[W]here, as here, the intervenor merely underlines issues of law already raised by the primary parties . . . a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention."); *Veasey*,

577 F. App'x at 262 ("Moreover, [the proposed intervenor] will be able to assist the district court and promote its interests to the extent that it is permitted to participate as *amicus curiae*."); *Terrebonne Par. Branch NAACP v. Jindal*, 2016 WL 2743525, at *6 (M.D. La. May 11, 2016) (denying a proposed intervenor's motion to intervene permissively but inviting the party to seek leave to participate as *amicus curiae*); *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 2000 WL 127281, at *1 (N.D. Tex. Feb. 2, 2000) ("Although common questions of law and fact are present here, [the proposed intervenor's] status as *amicus curiae* will provide it with ample opportunity to file briefs with this court and to raise issues not addressed by [the parties]."). In sum, the only potentially appropriate role for the Groups in this lawsuit is as *amici curiae*.

## CONCLUSION

This Court should deny Conservation Groups' motion to intervene as of right because the Federal Defendants adequately represent their interests in this suit. For similar reasons, this Court should also deny the Groups' alternative request for permissive intervention. If the Groups wish to share their broad policy views with the Court, they can do so in this suit only by seeking leave to file an amicus brief.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 4, 2021 | /s/     Elizabeth Murrill |

TYLER R. GREEN
DANIEL SHAPIRO
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423


OTHER COUNSEL:

STEVE MARSHALL
  Attorney General of Alabama
Edmund G. LaCour Jr.*
  Solicitor General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Tel: (334) 353-2196
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAg.gov
*Counsel for the State of Alabama*

TREG TAYLOR
  ATTORNEY GENERAL
Ronald W. Opsahl* (Colo. Bar No. 35662)
  Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov
*Counsel for the State of Alaska*

LESLIE RUTLEDGE
  Attorney General of Arkansas
Nicholas J. Bronni*
  Solicitor General
Dylan L. Jacobs*
  Assistant Solicitor General

JEFF LANDRY
  Attorney General
ELIZABETH B. MURRILL (LSBN 20685)
  Solicitor General
JOSEPH S. ST. JOHN (LSBN 36682)
  Deputy Solicitor General
BENJAMIN WALLACE* (LSBN 39516)
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov
wallaceb@ag.louisiana.gov

*Counsel for Plaintiff States*

* *Motion to enroll pending*

Office of Arkansas Attorney General Leslie Rutledge
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Nicholas.bronni@arkansasag.gov
*Counsel for the State of Arkansas*

CHRISTOPHER M. CARR
   Attorney General of Georgia
Andrew A. Pinson*
   Solicitor General
Office of the Attorney General
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3409
apinson@law.ga.gov
*Counsel for the State of Georgia*

LYNN FITCH
   Attorney General of Mississippi
Justin L. Matheny**
   Assistant Solicitor General
State of Mississippi
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
*Counsel for the State of Mississippi*

ERIC S. SCHMITT
   Attorney General of Missouri
D. John Sauer*
   Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-0304
Fax: (573) 751-0774
John.Sauer@ago.mo.gov
*Counsel for the State of Missouri*

AUSTIN KNUDSEN
   Attorney General of Montana

12

David M.S. Dewhirst*
  Solicitor General
Montana Attorney General's Office
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
406.444.4145
david.dewhirst@mt.gov
*Counsel for the State of Montana*

DOUGLAS J. PETERSON
  Attorney General of Nebraska
James A. Campbell*
  Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov
*Counsel for the State of Nebraska*

MIKE HUNTER
  Attorney General of Oklahoma
Mithun Mansinghani*
  Solicitor General
Oklahoma Office of Attorney General
313 N.E. 21ST Street
Oklahoma City, OK 73105
Phone: (405) 522-4392
mithun.mansinghani@oag.ok.gov
*Counsel for the State of Oklahoma*

KEN PAXTON
  Attorney General of Texas
Judd E. Stone II*
  Solicitor General
Office of the Attorney General
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Tel.: (512) 463-4139
Fax: (512) 474-2697
Judd.Stone@oag.texas.gov
*Counsel for the State of Texas*

SEAN D. REYES
  Attorney General of Utah

Melissa A. Holyoak*
  Solicitor General
Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
385.271.2484
melissaholyoak@agutah.gov
*Counsel for the State of Utah*

PATRICK MORRISEY
  West Virginia Attorney General
Lindsay S. See*
  Solicitor General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Lindsay.s.see@wvago.gov
*Counsel for the State of West Virginia*

*\*Admitted pro hac vice*
*\*\* Motion for pro hac vice admission forthcoming*