UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE STATE OF LOUISIANA, By and through its Attorney General, JEFF LANDRY, et al., <br>                              *Plaintiffs,* <br>        v. <br> JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al., <br>                              *Defendants*, <br> and <br> HEALTHY GULF, et al., <br>                           *Intervenor-Defendants.* | Civ. No.:    2:21-cv-00778-TAD-KK <br><br> Judge:      Terry A. Doughty <br><br> Mag. Judge:  Kathleen Kay |

**INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO INTERVENE**

Conservation Groups have met all the requirements for intervention as a matter of right and, alternatively, for permissive intervention. Plaintiff States do not contest that Conservation Groups' Motion is timely or that the Groups and their members have legally cognizable interests that will be impaired if the States prevail. The States' only objection is their erroneous assertion that Federal Defendants adequately represent Conservation Groups' interests. But Conservation Groups have shown that they and Federal Defendants do not share the same ultimate objectives and that their interests diverge in ways germane to this litigation. Either showing establishes representation may be inadequate. The States' objection to permissive intervention is equally baseless. "Given the broad policy favoring intervention in [Fifth Circuit] precedent," the Court should grant Conservation Groups' Motion. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016).

I. **Conservation Groups' Interests May Not Be Adequately Represented by Federal Defendants.**

The Fifth Circuit has repeatedly reaffirmed that an intervenor's burden to show representation may be inadequate is "minimal." *E.g.*, *Wal-Mart*, 834 F.3d at 569; *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014).[1] Conservation Groups have met that burden. *See* Mem. Support Mot. Intervene 16–23, R. Doc. 73-1 [hereinafter Mem.]. Contrary to the States' assertion, no presumption of adequate representation applies here because Conservation Groups have different ultimate objectives from Federal Defendants. *Id.* at 17–18. Even if the ultimate-objective presumption applies, Conservation Groups overcome it because the parties' interests diverge in ways that are germane to this case. *Id.* at 18–23. The States' arguments to the contrary

---

[1] Both of these cases involve many of the same issues as in this case and were cited throughout Conservation Groups' opening brief, so it is notable that the States made no attempt to distinguish, address, or even cite this Fifth Circuit precedent in their opposition.

1

misrepresent the ultimate objectives and interests in this case, and attempt to construct an inappropriately higher burden for Conservation Groups to show that representation *will* be inadequate. *Cf. Brumfield*, 749 F.3d at 345 ("The movant need not show that the representation by existing parties will be, for certain, inadequate.").

> **A.  No Presumption of Adequate Representation Applies Because Conservation Groups and Federal Defendants Do Not Share the Same Ultimate Objectives.**

Conservation Groups and Federal Defendants have different ultimate objectives in this case, so no presumption of adequate representation applies. The States' argument to the contrary is premised on their assertion that Conservation Groups' true ultimate objective is something other than what the Groups say it is. Pl. States' Opp'n 4–5, R. Doc. 96 [hereinafter Opp'n] ("[W]hen forced to reveal their 'ultimate' objective in this suit, it is clear that theirs is the same as the Federal Defendants."). *But see Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("For the purposes of deciding the motion to intervene, we accept the [movants'] factual allegations as true."). They ignore that the Fifth Circuit has found that ultimate objectives are unlikely to be shared in similar situations. *Brumfield*, 749 F.3d at 346 ("[I]t is not evident that the ultimate-objective presumption of adequate representation even applies because the state has more extensive interests to balance than do the parents."). Conservation Groups' ultimate objectives are focused on a more comprehensive leasing pause and, for some Groups, a permanent end to leasing, neither of which is shared by Federal Defendants. Mem. 17–18. The States make two flawed arguments for why these are not Conservation Groups' "true" objectives.

First, the States wrongly assert that Conservation Groups cannot have more than one ultimate objective. Opp'n 4. It is not clear why that matters to whether they share the same ultimate objective as Federal Defendants. In any event, none of the cases cited by the States support their proposition. That some cases speak to "ultimate objective" in the singular simply

2

reflects the unremarkable fact that when there is just one ultimate objective at issue, parties share that same ultimate objective, triggering the presumption. *E.g.*, *Texas*, 805 F.3d at 661; *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987). Conversely, the Fifth Circuit has explained that "[t]he lack of unity in all objectives"—plural—shows representation may be inadequate. *Brumfield*, 749 F.3d at 346. Even if it were true that "a party can only have one 'ultimate' objective," Opp'n 4, there are nine different parties in the cohort of Conservation Groups. There is nothing about identifying that certain Conservation Groups have different ultimate objectives related to the States' arguments that conflicts with governing law.

Second, the States claim Conservation Groups' stated objectives are irrelevant because they are outside the scope of this lawsuit. *Id.* at 4–5. Again, none of the cases cited by the States hold or even suggest that the "'ultimate objective' must be specific to *this* lawsuit." *Id.* at 4. They merely show that an ultimate objective that *is* specific to a given lawsuit is relevant to this inquiry. If it were true that the litigation objective—*i.e.*, to defeat a plaintiff's requested relief—were the only relevant objective, then the presumption would apply in every case where a party sought to intervene as a defendant. But it does not. So courts must look to the intervenor's *ultimate* objective(s), which may not be the same as its litigation objective. *Contra* Opp'n 3 (focusing on Conservation Groups' purported litigation objective to defend the Executive Order).

Even if the States were correct that objectives must be specific to a lawsuit, Conservation Groups' ultimate objectives *are* relevant to the scope of this lawsuit. *See* Mem. 15–16 (describing how disposition of suit could impede Conservation Groups' ultimate objectives). While Conservation Groups reject the States' legal theories, the purported objectives the States claim are irrelevant actually fit within the case they have filed. The States assert that questions about a permanent ban on new leasing are beyond the scope of this suit, Opp'n 5, while

3

simultaneously arguing this case is about a "Biden Ban" for which the "only discernable rationale is to follow through on campaign promises to kill domestic energy production," Mot. Prelim. Inj. 8, R. Doc. 3-1. The States also complain that Conservation Groups' "ambitious goal of halting the issuance of new drilling permits is simply outside the scope of anything that could result from this lawsuit." Opp'n 5. That is not one of Conservation Groups' stated ultimate objectives, nor does the Executive Order affect permitting. But the States themselves are trying to bring permitting into the scope of this case. *See* Compl. ¶¶ 68–69 & n.4, 72 & n.5, R. Doc. 1 (challenging Executive Order as "comprehensively suspend[ing] BOEM and BLM's authority to take any action regarding the oil and gas leasing *and permitting* process" (emphasis added) and asserting States will take discovery on permitting issue). Based on the States' framing of their own case, Conservation Groups' ultimate objectives are well within the scope of this litigation.

The Court should decline the States' invitation to disregard Conservation Groups' stated objectives and create novel rules for the ultimate-objective presumption that are inconsistent with Fifth Circuit caselaw. Conservation Groups have properly asserted different ultimate objectives than Federal Defendants. That is sufficient to avoid a presumption of adequate representation.

> **B. Conservation Groups Overcome Any Presumption Because Their Interests Diverge from Federal Defendants' in a Manner Germane to the Case.**

Even if the ultimate-objective presumption applies, however, Conservation Groups have overcome it. An intervenor "show[s] adversity of interest" to overcome the presumption if it "demonstrate[s] that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. This standard is met when an intervenor "specif[ies] the particular way in which [its] interests diverge from the Government's" and "identif[ies] the particular way in which these divergent interests . . . impact[] the litigation." *Id.* at 662–63. Conservation Groups have made both showings.

4

                                1.        *Conservation Groups' Interests Diverge from Federal Defendants'.*

Conservation Groups have specified multiple ways in which their interests diverge from Federal Defendants'. Mem. 18–20. In particular, Federal Defendants' obligations under the Outer Continental Shelf Lands Act (OCSLA), Mineral Leasing Act (MLA), and Federal Land Policy and Management Act (FLPMA) require them to balance multiple interests related to the subject of this litigation, whereas Conservation Groups' interests are more narrowly focused on abating the climate crisis and protecting wildlife, water and air quality, public health, and cultural resources. *Id.* The Fifth Circuit has routinely held that such differences in the scope of interests between a private litigant and the government show inadequacy of representation. *E.g.*, *Wal-Mart*, 834 F.3d at 569 & n.9; *Texas*, 805 F.3d at 663; *Brumfield*, 749 F.3d at 346; *John Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 539 (1972) ("[T]he Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.").[2] In fact, the States, concede that Conservation Groups have shown Federal Defendants' interests "do not completely overlap with the interests of the *nine* groups seeking to intervene in this case." Opp'n 7. That is all that is required to show divergence.

---

[2] The States claim *Trbovich* is irrelevant due to the "posture of the case." Opp'n 6. But that does not affect the opinion's general "*principle* that the government cannot adequately represent a specialized set of interests," Mem. 20 (emphasis added), as recognized by Fifth Circuit cases citing *Trbovich*, *e.g.*, *Wal-Mart*, 834 F.3d at 569 n.9; *Texas*, 805 F.3d at 663. Insofar as the States suggest the Fifth Circuit's "presumption of adequacy" abrogates *Trbovich*, Opp'n 6, a court of appeals does not have "license to disregard or overrule that precedent," *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549–50 (5th Cir. 2020). So the presumption must be applied consistent with the *Trbovich* principle, as in *Wal-Mart*, *Texas*, and other cases.

5

The States nonetheless assert that this divergence is somehow "immaterial" to this case. *Id.* Yet the States themselves frame their claims around Interior's duty to balance and account for multiple, disparate interests and needs in administering the leasing programs. *See, e.g.*, R. Doc. 1 ¶¶ 44, 46–47, 53 (asserting Interior must "take into account economic, social, and environmental values in making its leasing decisions"), 63, 76, 79; R. Doc. 3-1, at 1 (asserting "each interest fell silent victim to the President's insistence that he knows better"), 11–12 (stating OCLSA "require[es] the Secretary to take [states'] input"), 15–17 (arguing rescission of Lease Sale 257 Record of Decision failed to properly balance interests). The divergence between Federal Defendants' interests in balancing multiple considerations and Conservation Groups' more focused interests is directly implicated by the States' case. There is nothing "purely speculative" about that divergence when the States' own filings raise the interest balancing issue. *Contra* Opp'n 7–8 (citing *Golden Nugget Lake Charles, LLC v. W.G. Yates & Sons Constr. Co.*, No. 15-CV-2751, 2016 WL 8200623, at *2 (W.D. La. May 16, 2016)).

The States attempt to detract from this clear divergence by conflating a purported litigation *objective* in this case ("defending an Executive Order") with Conservation Groups' *interests* in this case. *Id.* at 6. A shared objective does not mean shared interests for the purposes of a case, otherwise the ultimate-objective presumption could never be overcome. *Cf. Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) (finding district court erred in finding adequate representation based on "agree[ment] on the merits of the substantive issues to be litigated").[3] Rather, different fundamental interests may mean the parties make different arguments to defend a case, approach discovery differently, or have different appetites

---

[3] By way of analogy, it would mean the States would be barred from intervening in support of an industry challenge to the Executive Order and vice versa because, according to the States, they would have the same "interest" in overturning the Order.

6

for settlement, to name a few examples. *See* Mem. 18 (citing cases). Thus, the Fifth Circuit asks intervenors to also identify how the divergent *interests* may affect the case, notwithstanding a shared ultimate objective.

2.  *The Divergent Interests May Impact the Litigation.*

Conservation Groups explained that this "divergence of interests could manifest itself in this litigation either procedurally or in the substantive arguments" to satisfy this second prong, Mem. 22; *see Texas*, 805 F.3d at 663, not as some sort of "recogni[tion] [of] weaknesses in their position," Opp'n 6. That divergence is germane to the litigation, which concerns Interior's scope of authority and discretion to make fossil fuel leasing decisions. The recent history of conflicts between Conservation Groups and Interior about the proper exercise of this authority highlights that the parties are unlikely to completely agree on how to approach the issues in this case. *See* Mem. 20–22. Conservation Groups also identified "particular way[s]" in which the differences might manifest in this case. *Id.* at 22. For example, they may make different arguments about the processes required by OCSLA, the MLA, or FLPMA, or the weight to be given to different factors under the statutes. Conservation Groups also may make different arguments about the scope of discretion to forego leasing, considering the ultimate objective of some Groups to end all new leasing. And given Conservation Groups' advocacy, they may make different arguments than Federal Defendants regarding the States' Administrative Procedure Act claims. Identifying potentially differing arguments is sufficient to show the divergence is germane to this case. *Wal-Mart*, 834 F.3d at 569; *Brumfield*, 749 F.3d at 346.

The States characterize Conservation Groups' identification of how divergent interests might manifest as "speculation." Opp'n 6–7. *But see id.* at 9 (claiming in opposing permissive intervention that Conservation Groups "will likely" make different arguments). But the Fifth

7

Circuit does not require certainty for this prong. As the Fifth Circuit explained in *Brumfield*, "We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." 749 F.3d at 346. Likewise, in *Heaton*, the court explained, "That the [intervenor] FDIC's interests and [defendant] Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue." 297 F.3d at 425; *see also Sierra Club v. Glickman*, 82 F.3d at 110 (similar). The States' assertion that "the Fifth Circuit has never relied on" assertions like those made by Conservation Groups is therefore plainly false. Opp'n 7. Indeed, it would make little sense to require an intervenor to predict with greater certainty how the divergence of interests may manifest, given that "intervention necessarily occurs before the litigation has been resolved" or any merits briefing has occurred. *Wal-Mart*, 834 F.3d at 569; *see also* Mem. 22 & n.13. In any event, Conservation Groups have shown it is not speculative that they will make different arguments than Federal Defendants.

      The cases cited by the States do not support their theory that more certainty is required. *Veasey v. Perry* is inapposite in this context because the quoted language was about whether interests diverged rather than whether any divergence might manifest in litigation. 577 F. App'x 261, 262 (5th Cir. 2014). If anything, *Veasey* supports Conservation Groups' argument because the court acknowledged that raising different arguments *is* sufficient to show inadequate representation. *Id.* at 263 (citing *Brumfield*, 749 F.3d at 346). The States' identification of cases finding that more pronounced differences in positions can demonstrate inadequate representation is similarly unhelpful. Opp'n 7 (citing *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 204 (5th Cir. 2016); *Texas*, 805 F.3d at 663). Just because such differences were found *sufficient* in those cases does show how much certainty is *necessary*.

The States also cite several cases for the unremarkable principle that intervention as of right is denied if there is no showing that representation may be inadequate. *Id.* at 8 (citing *Kneeland*, 806 F.2d at 1288 and others). Those cases do not suggest Conservation Groups have failed to make that showing here. Neither of the other two cases cited by the States involved "similar circumstances" as here, so they are inapposite. *Id.* (citing *Andrews v. City of Monroe*, 314 F.R.D. 422, 428 (W.D. La. 2016) (finding adequate representation because the intervenors' declarants were members of the school board that was already a defendant in the case); *G & H Dev., LLC v. Penwell*, No. 13-CV-0272, 2014 WL 12663199, at *3 (W.D. La. Sept. 4, 2014) (finding intervenor identified no meaningful way in which its interest in enforcing zoning regulations was different than the government defendants' interest in enforcement)). In fact, the Fifth Circuit regularly grants intervention to groups seeking to defend federal agency actions. *E.g.*, *Texas*, 805 F.3d 653; *Espy*, 18 F.3d at 1203; *Sierra Club v. Glickman*, 82 F.3d 106.

Conservation Groups have different ultimate objectives and interests from Federal Defendants related to the scope of Interior's leasing authority and discretion being challenged in this case. This "lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met." *Texas*, 805 F.3d at 663; *Brumfield*, 749 F.3d at 346.

## II.   Alternatively, the Court Should Permit Permissive Intervention.

Alternatively, this Court should exercise its broad discretion to grant permissive intervention because Conservation Groups' "intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(2)).

The States do not contest that Conservation Groups satisfy at least the first two factors.

The States point to Conservation Groups' efforts to meet the intervention standards as proof that they will disrupt this litigation by injecting inappropriately new arguments and perspectives in other briefing. Opp'n at 8–9. But in the very next paragraph, the States contradict themselves and assert that Conservation Groups would merely duplicate Federal Defendants' briefing. *Id.* at 9. The States cannot have it both ways: Conservation Groups' interests cannot be both too different so as to lead to differing arguments *and* adequately represented so as to lead to duplicative arguments. Conservation Groups' participation will instead involve a middle ground of contributing distinct but relevant legal and factual arguments. *See* p. 7, *supra*.

There is similarly no merit to the States' conjecture that Conservation Groups' participation will interfere with current proceedings. The States do not contest that the Motion to Intervene is timely, and Conservation Groups promptly filed their Motion to avoid disruption of the preliminary injunction briefing schedule set by the Court. *See* Mem. 2; R. Doc. 85 (setting expeditious schedule for intervention briefing). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained," as here. *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F. Supp. 3d 656, 669 (E.D. La. 2016) (citing *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir.2005)). The suggestion that Conservation Groups may participate as *amicus curiae* is, as one court stated, "no substitute for the right to intervene as a party in the action." *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996). Amici cannot participate as parties in hearings, file motions, object to settlements, raise defenses, or appeal adverse decisions. In short, Conservation Groups cannot adequately protect their concrete interests that may be impaired by this case by participating as amici.

For the above reasons, the Court should grant Conservation Groups' intervention.

Respectfully submitted this 6th day of May, 2021.

/s/ Corinne Van Dalen
Corinne Van Dalen (LA Bar # 21175)
Earthjustice
900 Camp Street, Unit 303
New Orleans, LA 701
T: 415-283-2335 F: 415-217-2040
cvandalen@earthjustice.org

/s/ Christopher Eaton
Christopher Eaton (*pro hac vice*)
Shana E. Emile (*pro hac vice*)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
T: 206-343-7340 F: 415-217-2040
ceaton@earthjustice.org
semile@earthjustice.org

/s/ Thomas R. Delehanty
Thomas R. Delehanty (*pro hac vice*)
Michael S. Freeman (*pro hac vice*)
Earthjustice
633 17th St., Suite 1600
Denver, CO 80202
T: 303-623-9466 F: 720-550-5757
tdelahanty@earthjustice.org
mfreeman@earthjustice.org

/s/ Erik Grafe
Erik Grafe (*pro hac vice*)
Earthjustice
441 W 5th Ave., Suite 301
Anchorage, AK 99501
T: 907-277-2500 F: 907-277-1390
egrafe@earthjustice.org

*Counsel for Intervenor-Defendants Healthy Gulf, Center for Biological Diversity, Cook Inletkeeper, Defenders of Wildlife, Friends of the Earth, Oceana, Sierra Club, and The Wilderness Society*

/s/ Joel Waltzer
Joel Waltzer (LA Bar #19268)
Waltzer, Wiygul, and Garside
3201 General De Gaulle Dr., Ste. 200
New Orleans LA, 70114
T: 504-340-6300 F: 504-340-6330
joel@wwglaw.com

/s/ Robert Wiygul
Robert Wiygul (LA Bar #17411)
Waltzer, Wiygul, and Garside
1011 Iberville Dr.
Ocean Springs, MS 39564
T: 228-872-1125 F: 228-872-1128
robert@wwglaw.com

s/ Brad Sewell
Brad Sewell (*pro hac vice*)
Irene Gutierrez (*pro hac vice*)
Natural Resources Defense Council
40 W. 20th St., 11th Fl.
New York, NY 10011
T: 212-727-2700
bsewell@nrdc.org
igutierrez@nrdc.org

*Counsel for Intervenor-Defendant Natural Resources Defense Council*