UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**STATE OF LOUISIANA ET AL**         **CASE NO. 2:21-CV-00778**

**VERSUS**                           **JUDGE TERRY A. DOUGHTY**

**JOSEPH R. BIDEN, JR. ET AL**       **MAG. JUDGE KATHLEEN KAY**

**MEMORANDUM ORDER**

The question before the Court is whether this matter should be transferred, or alternatively, partially transferred, to the District of Wyoming pursuant to the first-to-file rule. A Motion to Transfer Case, or Alternatively to Sever and Transfer Counts V-VIII [Doc. No. 71] was filed by Government Defendants[1] on April 27, 2021. An Opposition [Doc. No. 95] was filed by the Plaintiff States[2] on May 4, 2021. A Reply [Doc. No. 108] was filed by Government Defendants on May 6, 2021.

For the reasons set forth herein, Government Defendants' Motion to Transfer Case, or Alternatively Motion to Sever and Transfer Counts V-VIII is **DENIED**.

---

[1] Government Defendants consist of Joseph R. Biden, Jr. in his official capacity as President of the United States; Deb Haaland, in her official capacity as Secretary of the Interior; Michael Nedd, in his official capacity as Deputy Director of the Bureau of Land Management; Chad Padgett, in his official capacity as Director of the Bureau of Land Management Alaska Office; Raymond Suazo, in his official capacity as Director for the Bureau of Land Management Arizona Office; Karen Mouristen, in her official capacity as Director for the Bureau of Land Management California Office; Jamie Connell, in his official capacity as Director for the Bureau of Land Management Colorado Office; Mitchell Leverette, in his official capacity as Director for the Bureau of Land Management Eastern States Office; John Ruhs, in his official capacity as Director for the Bureau of Land Management Idaho Office; John Mehlhoff, in his official capacity as Director for the Bureau of Land Management Montana – Dakotas Office; Jon Raby, in his official capacity as Director for the Bureau of Land Management Nevada Office; Steve Wells, in his official capacity as Director for the Bureau of Land Management New Mexico Office; Barry Bushue, in his official capacity as Director for the Bureau of Land Management Oregon-Washington Office; Greg Sheehan, in his official capacity as Director for the Bureau of Land Management Utah Office; Kim Liebhauser, in her official capacity as Director for the Bureau of Land Management Wyoming Office; Amanda Lefton, in her official capacity as Director of the Bureau of Ocean Energy Management; Michael Celata, in his official capacity as Regional Director of the Bureau of Ocean Energy Management Gulf of Mexico Office; Lars Herbst, in his official capacity as Regional Director of Bureau of Safety and Environmental Enforcement Gulf of Mexico OCS Office; and Mark Fesmire, in his official capacity as Regional Director of the Bureau of Safety and Environmental Enforcement Alaska and Pacific Office.

[2] The Plaintiff States consist of the States of Louisiana, Alabama, Alaska, Arkansas, Georgia, Mississippi, Missouri, Montana, Nebraska, Oklahoma, Texas, Utah, and West Virginia.

**I.      BACKGROUND**

On March 24, 2021, Plaintiff States filed a Complaint [Doc. No. 1] against Government Defendants asking for declaratory and injunctive relief in regard to Section 208 of Executive Order 14008 (also known as Tackling the Climate Crisis at Home and Abroad, 86 FR 7619, hereinafter "Executive Order 14008"), which ordered the Secretary of the Interior to pause new oil and gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration of federal oil and gas leasing permitting and leasing practices.  This allegedly resulted in the halting of oil and gas lease sales in violation of the United States Constitution, the Administrative Procedures Act, ("APA"), the Outer Continental Shelf Lands Act ("OCSLA"), and the Mineral Leasing Act ("MLA").

A Motion for Preliminary Injunction [Doc. No. 3] was filed by Plaintiff States on March 31, 2021, requesting a preliminary injunction requiring the Government Defendants to continue holding OCSLA and MLA oil and gas leasing sales in accordance with applicable law.

 A Notice of Appearance [Doc. No. 70] was filed by the Government Defendants on April 27, 2021.  Said Government Defendants filed a Motion to Transfer Case, or Alternatively, Motion to Sever and Transfer Counts V-VIII [Doc. No. 71].

**II.     LAW AND ANALYSIS**

Government Defendants argue that based upon the first-to-file rule, this proceeding should be transferred to the District of Wyoming because a pending case[3]  in Wyoming will significantly overlap with the issues in this proceeding.[4]  Plaintiff States oppose Government Defendants' Motion.

---

[3] *Wyoming v. U.S. Dept. of the Interior*, No. 04-cv-56 (D. Wyo. March 24, 2021).
[4] The Wyoming lawsuit was filed 39 minutes before the Louisiana suit on March 24, 2021.

Under the first-to-file rule, when related cases are pending before two Federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999). The rule rests on principles of comity and sound judicial administration. *Id*. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO, 751 F.2d 721, 729 (5th Cir. 1985). Within the Fifth Circuit, once it has been demonstrated that there is a likelihood of substantial overlap between the two suits, the general rule is that the court in which an action is first filed is the appropriate court to determine whether substantially similar issues should proceed. Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971); Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997). When faced with duplicate litigation, in addition to outright dismissal, it sometimes may be appropriate to transfer the action or stay it. West Gulf Maritime Ass'n, 751 F.2d at 729 n.l. In deciding if a substantial overlap exists, the Fifth Circuit has examined factors such as whether "the core issue ... was the same" or if "much of the proof adduced … would be identical" between the two lawsuits. Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp., 665 F.3d 671, 678 (5th Cir. 2011). Where overlap between two suits is less than complete, the judgment is made case-by-case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage, and the interest of each forum in resolving the dispute. Save Power Ltd., 121 F.3d at 951.

Even if substantial overlap exists, courts may exercise discretion and decline application of the first-to-file rule in light of "compelling circumstances." Mann Mfg., Inc., 439 F.2d at 407.

An ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts. Bindczyck v. Finucane, 342 U.S. 76, 182, 72 S. Ct. 130, 96 L. Ed. 100 (1951).

A second-filed court plays a limited roll when presented with a motion to transfer or stay based on the first-to-file rule. Cadle Co., 174 F.3d at 605. This role is to decide whether the moving party in the second-filed court has demonstrated a "substantial overlap" between the two suits. Id.

Several District Courts and the Fifth Circuit have found that the issues substantially overlapped and transferred the case pursuant to the first file rule. Mann Mfg., Inc., 439 F.2d 403 (where two suits were filed over the infringement or non-infringement of the same patent); Save Power Ltd., 121 F.3d 947 (two suits filed over ranking of security interests against the same debtor by the same parties); Sutter Corp. v. P & P Industries, Inc., 125 F.3d 499 (5th Cir. 2019) (two suits over the appeal of the same agency ruling); Cadle Co., 174 F.3d 599 (two suits over the same issue in a collective bargaining agreement); West Gulf Maritime Ass'n, 751 F.2d 721 (two suits over the same provision in a union collective bargaining agreement); United States Risk Mgmt., L.L.C. v. U. S. Risk Ins. Grp., Inc., No. CV 11-2706, 2012 WL 13001312 (E.D. La. Jan. 25, 2012) (two trademark suits over the same trademark); Stannard v. Nat'l Indoor RV Centers, LLC, No. 4:18-CV-00366, 2018 WL 3608560 (E.D. Tex. July 27, 2018) (two suits over warranty issues over purchase of the same Newmar Mountain Aire motor home); Texas Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co., Inc., 380 F. Supp. 3d 580 (E.D. Tex. 2019) (two suits over the same arbitration award); and Brocq v. Lane, 2017 WL 1281129 (N.D. Texas April 6, 2017) (two suits over issues of lawyer departing from law firm over unauthorized electronic transfers).

Less than complete overlap of the issues was found in the International Fidelity Ins. Co., 665 F.3d 671 (two suits over the same surety bond over customs accessed against the principal;

the core issues were different); Hart v. Donostia LLC, 290 F. Supp. 3d 627 (W.D. Tex. 2018) (class action where plaintiff opted in regarding FLSA violation and separate suit with additional issues); Salazar v. Bloomin' Brands, Inc., No. 2:15-CV-105, 2016 WL 1028371 (S.D. Tex. Mar. 15, 2016) (class action over FSLA claims against Outback and Title VII and other claims in second suit); Gonzalez v. Unitedhealth Grp., Inc., No. 6:19-CV-00700-ADA, 2020 WL 2992174 (W.D. Tex. June 3, 2020) (two suits over violation of the Telephone Consumer Protection Act where first suit was a class action and second suit against United Healthcare and its affiliates); and N. Cypress Med. Ctr. v. Cigna Healthcare, No. 09-CV-02556, 2010 WL 11468609 (S.D. Tex. July 8, 2010) (ERISA violations in both suits, where the issues did not squarely overlap).

### 1. SUBSTANTIAL OVERLAP

In accordance with its limited role as a second-filed court, this Court must determine whether there is a "substantial overlap" between the two cases. Government Defendants concede that the overlap is less than complete.

#### A. WYOMING SUIT

The first-filed suit in Wyoming is by the State of Wyoming against the United States Department of Interior ("DOI"); DOI Secretary Deb Haaland; the United States Bureau of Land Management ("BLM"); the BLM acting director, Nada Culver; and the BLM Wyoming State Bureau of Land Management director, Kim Liebhauser.

Wyoming petitions the court to review the DOI Secretary's *defacto* moratorium on all federal oil and gas lease sales in Wyoming and across the nation. The petition alleges the Secretary of the DOI's suspension of all federal oil and gas lease sales, in response to President Biden's Executive Order 14008, is unlawful and must be set aside. Wyoming further alleges that the stoppage of federal oil and gas lease sales violates the Federal Land Policy and Management Act

5

("FLPMA"), violates applicable Resource Management Plans ("RMP"), violates the Mineral Leasing Act ("MLA"), violates the National Environmental Policy Act ("NEPA") and violates the Administrative Protection Act ("APA").  The petition further alleges the Secretary of DOI's action is subject to judicial review as a final agency action.

The prayer of the State of Wyoming asks for (1) a declaration that the Secretary of DOI's action violates FLPMA, the MLA, NEPA, and the APA; (2) setting aside and vacating the Secretary of DOI's order; (3) to enjoin the Secretary of DOI from implementing a moratorium on federal oil and gas lease sales in Wyoming and across the nation; (4) compel the Secretary of DOI to hold quarterly lease sales, including the Wyoming federal oil and gas lease sales; and (5) grant other relief Wyoming may seek.

### B. LOUISIANA SUIT

The second-filed suit in Louisiana is filed by thirteen states, which are Louisiana, Alabama, Alaska, Arkansas, Georgia, Mississippi, Missouri, Montana, Nebraska, Oklahoma, Texas, Utah, and West Virginia.  All Plaintiff States allege significant interest in the federal oil and gas leasing programs and derive substantial revenues from oil and gas leasing.

The Defendants named are President Joseph R. Biden, Jr.; Deb Haaland, as Secretary of the Department of Interior (DOI); Michael Nedd, as Deputy Director of the Bureau of Land Management (BLM), along with twelve (12) Directors of Regional BLM offices: Chad Padgett (Alaska Office), Raymond Suazo (Arizona Office), Karen Mouritsen (California Office), Jamie Connell (Colorado Office), Mitchell Leverette (Eastern States Office), John Ruhs (Idaho Office), John Mehlhoff (Montana-Dakotas Office), Jon Raby (Nevada Office), Steve Wells (New Mexico Office), Barry Bushue (Oregon-Washington Office), Greg Sheehan (Utah Office), and Kim Liebhauser (Wyoming Office).

The Complaint also names as Defendants Amanda Lefton as Director of the Bureau of Ocean Energy Management, ("BOEM") along with BOEM Regional Director, Michael Celata (Gulf of Mexico Office).

Also, Lars Herbst, as Regional Director of the Bureau of Safety and Environmental Enforcement ("BSEE") (Gulf of Mexico Office) and Mark Fesmire, as BSEE Regional Director (Alaska and Pacific Office), are named as Defendants.

The Complaint first directly attacks both the constitutionality and the lawfulness of Section 208 of Executive Order 14008. The Complaint also attacks the alleged moratorium on federal oil and gas leasing and alleges violations of the Outer Continental Shelf Lands Act's ("OCSLA") four-step processes; violations of the OCSLA by BOEM in failing to conduct an analysis of economic, social and environmental interests in making leasing decisions before stopping the leasing; and violations of the Administrative Procedures Act ("APA"), the Mineral Leasing Act ("MLA"), the Federal Land Policy and Management Act ("FLPMA"). The Complaint attacks the postponement of leasing sales by each of the DOI offices, alleges ultra-vires actions, and makes specific requests with regard to Lease Sale 257, Lease Sale 258 and the cancellation of other March and April 2021 lease sales.

Plaintiff States make claims of unreasonable delay, failure to employ notice and comment, acting contrary to law, and, acting arbitrary and capricious under the APA. Further, Plaintiff States make claims under the OCSLA of acting contrary to law, unreasonable delay, acting arbitrary and capricious, and failure to employ notice under the APA. Finally, Plaintiff States also assert a citizen suit under the OCSLA and ultra-vires claims under the MLA and OCSLA.

Plaintiff States pray for (1) a declaratory judgment holding that the leasing moratoriums are contrary to OCSLA and MLA; (2) a declaratory judgment holding the leasing moratoriums are

7

procedurally invalid under the APA; (3) a declaratory judgment that the leasing moratoriums are arbitrary and capricious under the APA; (4) a declaratory judgment and permanent injunction finding the leasing moratoriums invalid and setting them aside; (5) an injunction prohibiting BOEM, BLM or the Secretary of the DOI from taking any actions based upon Section 208 of Executive Order 14008 as to any leasing moratorium; and (6) an order compelling defendants to proceed with leasing sales under OCSLA and MLA.

### C. COMPARISON

None of the plaintiffs are the same. Only two of the defendants (Deb Haaland and Kim Liebhauser) are the same. The Wyoming suit only involves land-based oil and gas leases under the MLA, while the Louisiana suit involves both land-based oil and gas leases under the MLA and offshore production on the outer continental shelf under the OCSLA. Louisiana, Alabama, Alaska, Mississippi, and Texas have claims under both the OCSLA and the MLA.

Both the Wyoming and Louisiana suits make claims under the APA and the MLA regarding the oil and gas lease moratorium. Only the Wyoming suit makes claims under the FLPMA, the applicable Resource Management Plan, and under the NEPA.

Only the Louisiana suit makes direct claims to attack the constitutionality and validity of Section 208 of Executive Order 14008 and makes claims under the OCSLA. The Louisiana suit makes President Joseph R. Biden, Jr. a Defendant and names officials of BOEM and BSEE.

Although there is some overlap, there is not "substantial overlap." The primary issues will be whether each named Defendant federal agency had the authority and power to cancel and/or delay federal oil and gas lease sales. The federal agencies are not the same and the statutory authority is not the same. Specific lease sales are involved in the Louisiana suit but are not in the

8

Wyoming suit. The Wyoming suit is a much narrower challenge to one agency decision, while the Louisiana suit is a much broader claim against several agencies, and President Biden.

This Court finds the issues in the two lawsuits do not "substantially overlap." The Court will next examine "less than complete" overlap.

### 2. LESS THAN COMPLETE OVERLAP

Where there is less than complete overlap (as the Government Defendants concede), the determination is made on a case-by-case basis, based upon such factors as the extent of overlap, the likelihood of conflict, and the interest of each forum in resolving the suit.

The extent of overlap is not great. The Wyoming suit is narrower while the Louisiana suit is much broader. The only potential for conflict may be as to the land-based oil and gas leases under the MLA. There is no potential for conflict under the OCLSA and other statutes not relied upon in the Wyoming suit.

Some of the Plaintiffs States in the Louisiana suit have claims under both the MLA for land-based leases and under the OCLSA for offshore leases. Those states have a substantial interest in having the suits heard in a forum that handles both the MLA and the OCLSA. It would also be a burden to Wyoming to transfer this case there, because this case involves much broader claims based upon both land-based and offshore leases, under different statutes. Plaintiffs also allege a substantial financial interest in this suit. Louisiana is a state bordering on the Gulf of Mexico, which has both offshore and land-based leases. The interest in having the suit heard in Louisiana outweighs the interest in having the suit heard in Wyoming, which is only dealing with land-based federal leases.

This Court believes the factors weigh in favor of denying Government Defendants motion to transfer and in favor of allowing the case to proceed in the Western District of Louisiana.

### 3. SEVERANCE

9

Alternatively, Government Defendants ask to sever counts V-VIII, transferring the land-based portion of this litigation to Wyoming and keeping the offshore portion in Louisiana.

Severance is governed by a five-factor test, which factors are (1) whether the claims arise out of the same transaction or occurrence; (2) whether the posture of discovery suggests they should not be tried jointly; (3) whether the claims present common questions of law and fact; (4) whether the claims will require testimony of different witnesses and documentary proof; and (5) the prejudice to either party in the event separate trials are ordered.  Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air Conditioning, Inc., No. CIV.A. 07-8446, 2009 WL 382713 (E.D. La. Feb. 11, 2009).

Put simply, it would serve as an injustice to Plaintiff States that have both land-based and offshore leases to separate their claims between Louisiana and Wyoming courts.  The claims in Louisiana are much broader than the Wyoming claims.  Some of the Plaintiff States have both land-based and offshore leases.  It would be prejudicial to require these Plaintiff States to litigate their claims in two different courts.  This Court is not aware of the status of discovery in the Wyoming case, but discovery is likely not advanced since both suits were filed on March 24, 2021.

Also, as argued by Plaintiff States, the Louisiana case arises from a "thread of administrative law violations stemming from Executive Order 14008."  The Plaintiff States argue that the explanations of each agency are different and comparing the explanations would be important.  Plaintiff States maintain the issue in the Louisiana case needs to be tried together.

Additionally, this Court is not aware of any precedent under the first-to-file rule, which would require a severance and then a transfer to the first-filed-court, leaving part of the second-filed-suit behind.  To do this would defect the primary purposes of the first-to-file rule, defeat judicial efficiency, and result in piecemeal resolution of issues.

The Government Defendants' Motion to Sever and Transfer is **DENIED**.

### III. CONCLUSION

For the reasons set forth herein,

IT IS ORDERED that the Motion to Transfer Case, or Alternatively Motion to Sever and Transfer Counts V-VIII [Doc. No. 71] is **DENIED**.

MONROE, LOUISIANA, this 10th day of May, 2021.

                                                 TERRY A. DOUGHTY
                                           UNITED STATES DISTRICT JUDGE