**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| THE STATE OF LOUISIANA,<br>By and through its Attorney General,<br>JEFF LANDRY, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity<br>as President of the United States, et al.,<br><br>DEFENDANTS. | CIV. NO. 2:21-CV-00778-TAD-KK |

**PLAINTIFF STATES' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

ARGUMENT...........................................................................................................................1

   I.   THE BIDEN BAN ON NEW OCSLA AND MLA LEASING IS FINAL AGENCY ACTION. ..............1

   II.   EACH LEASE-SALE CANCELLATION IS FINAL AGENCY ACTION AND SETTING IT ASIDE
      WOULD REDRESS PLAINTIFF STATES' INJURY. ..........................................................4

   III.   PLAINTIFF STATES' §706(1) CLAIM IS LIKELY TO SUCCEED.........................................6

   IV.   DEFENDANTS FAIL TO REBUT PLAINTIFF STATES' MERITS ARGUMENTS.................................7

   V.   PLAINTIFF STATES WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION. ................9

   VI.   THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH IN FAVOR OF PLAINTIFF
      STATES. ..................................................................................................................10

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado, Inc. v. McAleenan,*
    394 F. Supp. 3d 1168 (S.D. Cal. 2019) ......................................................................3

*Amadei v. Nielsen,*
    348 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................... 2, 3

*Amigos Bravos v. U.S. Bureau of Land Mgmt.,*
    2011 WL 7701433 (D.N.M. Aug. 3, 2011) ...............................................................5

*Bhd. of Locomotive Engineers & Trainmen v. FRRA,*
    972 F.3d 83 (D.C. Cir. 2020) ....................................................................................2

*BNSF Ry. Co. v. EEOC,*
    385 F. Supp. 3d 512 (N.D. Tex. 2018) ............................................................. 2, 3, 4

*Cf. Dunn-McCampbell Royalty Int., Inc. v. NPS,*
    2007 WL 1032346 (S.D. Tex. Mar. 31, 2007) ..........................................................8

*Clean Air Council v. Pruitt,*
    862 F.3d 1 (D.C. Cir. 2017) ......................................................................................7

*Clean Water Action v. EPA,*
    936 F.3d 308 (5th Cir. 2019) ....................................................................................8

*Dunn-McCampbell Royalty Int., Inc. v. NPS,*
    2007 WL 1032346 (S.D. Tex. Mar. 31, 2007) ..........................................................5

*El Paso County v. Trum,*
    982 F.3d 332 (5th Cir. 2020) ....................................................................................6

*Ensco Offshore Co. v. Salazar,*
    781 F. Supp. 2d 332 (E.D. La. 2011) ................................................................... 1, 7

*Env't Def. Ctr. v. BOEM,*
    2018 WL 5919096 (C.D. Cal. Nov. 9, 2018) ...........................................................1

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................................. 8, 9

*Gomez v. Trump,*
    485 F. Supp. 3d 145 (D.D.C. 2021) .........................................................................2

*Laub v. U.S. Dep't of Interior,*
    342 F.3d 1080 (9th Cir. 2003) ..................................................................................5

*NRDC v. Wheeler,*
  955 F.3d 68 (D.C. Cir. 2020) ........................................................................5

*Qureshi v. Holder,*
  663 F.3d 778 (5th Cir. 2011) .........................................................................2

*Rosa v. McAleenan,*
  2019 WL 5191095 (S.D. Tex. Oct. 15, 2019) ...............................................2

*SAS Inst., Inc. v. Iancu,*
  138 S. Ct. 1348 (2018)...................................................................................4

*State of La. v. DOE,*
  507 F. Supp. 1365 (W.D. La. 1981) ..............................................................5

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) .......................................................................10

*Texas v. United States,*
  2021 WL 723856 (S.D. Tex. Feb. 23, 2021) ........................................1, 9, 10

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) ..............................................................7, 9, 10

*Velesaca v. Decker,*
  458 F. Supp. 3d 224 (S.D.N.Y. 2020) ...........................................................2

*Venetian Casino Resort, L.L.C. v. E.E.O.C.,*
  530 F.3d 925 (D.C. Cir. 2008) ......................................................................2

*W. Energy All. v. Jewell,*
  2017 WL 3600740 (D.N.M. Jan. 13, 2017) ............................................1, 3, 6

*Whitman v. Am. Trucking Associations,*
  531 U.S. 457 (2001) .......................................................................................2

*WildEarth Guardians v. Bernhardt,*
  2020 WL 6799068 (D.N.M. Nov. 19, 2020) ..................................................6

**Statutes**

30 U.S.C. §226 .......................................................................................................6

43 U.S.C. §1337(g)(5)(A)(i) ..................................................................................9

**Regulations**

85 Fed. Reg. 73,508 ..............................................................................................8

## ARGUMENT

Defendants conjure several procedural barriers to try to shield the Biden Ban on new oil and gas leasing from judicial review. Their arguments, however, do not rebut these very simple facts: a moratorium on leasing exists; it is final; and it violates the MLA, OCSLA, and APA. The Court should grant Plaintiff States' motion for a preliminary injunction.

## I.    THE BIDEN BAN ON NEW OCSLA AND MLA LEASING IS FINAL AGENCY ACTION.[1]

Defendants' entire argument rests on the premise that no oil and gas leasing moratorium is in place. That premise contradicts EO 14008's explicit direction to the Secretary of the Interior to "pause new oil and natural gas leases on public lands or in offshore waters." And it cannot be reconciled with the cancellation of all oil and gas lease sales since President Biden assumed office. In short, Defendants' premise is false: a moratorium exists and is a discrete, final agency action of the type courts routinely review. *See, e.g.*, *Texas v. United States*, 2021 WL 723856, at *32 (S.D. Tex. Feb. 23, 2021) (100-day pause of deportations is final agency action); *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 334, 336 (E.D. La. 2011) ("blanket moratorium on deepwater drilling in the Gulf of Mexico" is a "final agency action"); *Env't Def. Ctr. v. BOEM*, 2018 WL 5919096, at *5 (C.D. Cal. Nov. 9, 2018) (NEPA document that "effectively lift[ed] [a] moratorium" constitutes final agency action); *Dunn-McCampbell Royalty Int., Inc. v. NPS*, 2007 WL 1032346, at *5 (S.D. Tex. Mar. 31, 2007) ("Plan 'effectively clos[ing]' ... areas to drilling operations, does constitute 'final agency action.'"); *W. Energy All. v. Jewell*, 2017 WL 3600740, at *14 (D.N.M. Jan. 13, 2017); *Velesaca v. Decker*, 458 F. Supp. 3d 224,

---

[1] Defendants' assertion (at 8) that Plaintiff States seek "*per se* improper" final relief is meritless. *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 240 (S.D.N.Y. 2020) ("[W]hile an injunction forbidding Defendants from acting upon any 'No-Release Policy' may very well cause the government to affirmatively change its behavior, this change is in essence an injunction against an aberration from ICE policy (and the APA), rather than an injunction mandating some new form of court-conjured behavior."); *see also, e.g.*, *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332 (E.D. La. 2011).

240 (S.D.N.Y. 2020) (no-release policy is final agency action); *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 164 (E.D.N.Y. 2018) ("policy or routine practice of CBP conducting identification searches of disembarking domestic airline passengers" constitutes final agency action); *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 931 (D.C. Cir. 2008) ("adopting a policy of permitting employees to disclose confidential information without notice is surely" final agency action).

Defendants' assertion (at 10) that Plaintiff States have "failed to identify a single discrete agency action" ignores that the moratorium itself is the action. That an agency has not committed the moratorium to writing does not insulate it from judicial review. *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 479 (2001) ("Though the agency has not dressed its decision with the conventional procedural accoutrements of finality, its own behavior thus belies the claim that its interpretation is not final."); *see also Gomez v. Trump*, 485 F. Supp. 3d 145, 193 (D.D.C. 2021) ("cluster of guidance documents, cables, and directives, have ordered consular offices and embassies to cease processing and issuing visas for otherwise qualified applicants" constitutes final agency action). Rather, the final-agency-action inquiry is pragmatic and elevates substance over form. *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) ("The Supreme Court's interpretation of the APA's finality requirement is 'flexible' and 'pragmatic.'"); *see also BNSF Ry. Co. v. EEOC*, 385 F. Supp. 3d 512, 522 (N.D. Tex. 2018) ("Buoying this pragmatic framework is an increasing hesitance by the Supreme Court and lower courts alike to shelter agencies from judicial enforcement of congressional mandates."). Courts have thus consistently found that unwritten but clear and discrete policies constitute final agency action regardless of whether it is committed to a formal writing or published in the Federal Register. *See Bhd. of Locomotive Engineers & Trainmen v. FRRA*, 972 F.3d 83, 100 (D.C. Cir. 2020) (collecting cases holding that "[a]gency action generally need not be committed to writing to be final and judicially reviewable"); *see also Rosa v. McAleenan*, 2019 WL 5191095, at *19 (S.D. Tex. Oct. 15, 2019) (same); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 237 (S.D.N.Y. 2020) ("[A] number of cases have involved courts inferring from

2

a course of agency conduct that the agency has adopted a general policy, even in the face of agency denials of such policies existing."). This Court should reject Defendants' assertion that there is no oil and gas leasing moratorium in place despite (1) an Executive Order suspending oil and gas lease sales and (2) the Defendant agencies' subsequent suspension of such lease sales.

Denying judicial review here would allow the Executive Branch to make a major national decision in the most opaque manner possible. Finality is a pragmatic test precisely so the Executive Branch cannot circumvent APA review this way. *BNSF Ry. Co. v. EEOC*, 385 F. Supp. 3d 512, 523 (N.D. Tex. 2018) ("An agency cannot skirt its obligations by acting illegally and then claiming it has not acted at all."); *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206-07 (S.D. Cal. 2019) ("[A] contrary rule 'would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing.'").

Plaintiff States' suit comes nowhere close to the type of amorphous programmatic challenges cited by Defendants (at 10-12). Contrary to Defendants' assertion, this lawsuit does not ask this Court to dictate policy. Rather, it seeks to enjoin a discrete agency action—the Moratorium on oil and gas leasing—of the type that courts routinely issue. Unlike the challengers in *Lujan* and *Alabama-Coushatta Tribe of Texas*, Plaintiff States do not seek to enlist the Court in an ongoing supervision of the Department's administration of a program. And this suit is a far cry from the "blanket challenge" to *all* actions at issue in *Alabama-Coushatta*, 757 F.3d at 490, or the attempt in *Lujan* to obtain better management of BLM's land-withdrawal review program, 497 U.S. 871, 891 (1990). Instead, Plaintiff States challenge a discrete action—the leasing Moratorium—that sets a mandatory rule of decision in all lease sales. Indeed, *Lujan* specifically affirmed that a specific action "applying some particular measure across the board" would constitute final agency action. *Id.* at 890 n.2; *see also W. Energy All. v. Jewell*, 2017 WL 3600740, at *13 (D.N.M. Jan. 13, 2017) ("The Court agrees with WEA that requesting BLM conduct quarterly leases of eligible and available parcels is not a programmatic challenge, but a

request that this Court enforce a discrete, non-discretionary duty contained in a single statutory provision, unlike the situation in *Lujan*."); *Dunn-McCampbell Royalty Int., Inc. v. NPS*, 2007 WL 1032346, at *5 (S.D. Tex. Mar. 31, 2007) (challenge to closure of "acreage to drilling operations" is "not a broad-based 'programmatic challenge.'").

Sheared of all sound and fury,[2] this is a straightforward issue. The Moratorium marks the consummation of a (flawed) decisionmaking process because it left agency officials without discretion to hold any oil and gas lease sales on public lands and in offshore waters. It alters the obligations of federal officials to hold such lease sales—and thereby the rights of bidders to engage in them and the States to obtain their statutorily vested right to proceeds from the sales. This is the heartland of APA review. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1359 (2018) ("If a party believes the Patent Office has engaged in 'shenanigans' by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act, which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations.'"); *see also BNSF Ry. Co.*, 385 F. Supp. 3d at 523 ("[N]either finality nor discretion provide agencies cover for illegality.").

## II.   EACH LEASE-SALE CANCELLATION IS FINAL AGENCY ACTION AND SETTING IT ASIDE WOULD REDRESS PLAINTIFF STATES' INJURY.

This Court also has jurisdiction to review the cancellations of the individual lease sales. Each BLM lease cancellation is the consummation of the decisionmaking process—each cancels a lease sale that was scheduled. Simply put, the cancellation of Q1 and Q2 lease sales means there will never be Q1 and Q2 lease sales. Defendants' only response is to again revert to empty form, calling those cancellations "interim" actions. But it remains black-letter law that an agency's labelling an action

---

[2] Defendants also cannot hide behind Executive Order 14008 to avoid judicial review because agency actions taken to implement executive orders are subject to APA review. *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[T]hat the Secretary's regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question.").

"interim" does not make it so. *See, e.g.*, *State of La. v. DOE*, 507 F. Supp. 1365, 1371 (W.D. La. 1981) ("The label an agency attaches to its action is not dispositive."). BLM did not merely "defer" the decisional process for Q1 and Q2 oil and gas lease sales. It cancelled them. No further decisional process for these lease sales exists. That the agency might one day make lands available again does not vitiate this finality. *NRDC v. Wheeler*, 955 F.3d 68, 79-80 (D.C. Cir. 2020) ("[A]s long as an agency has completed its decisionmaking on a challenged rule—even one interim in nature—the rule satisfies the first prong of the finality test.").

The Recission of Lease Sale 257's Record of Decision similarly marks the consummation of the agency's decisionmaking process. The ROD determined that Lease Sale 257 should proceed in accordance with the Five-Year Plan. The Recission vacated the ROD, ensuring that Lease Sale 257 would not go forward. Such RODs, and even their summaries, are routinely held to be final agency actions. *Amigos Bravos v. U.S. Bureau of Land Mgmt.*, 2011 WL 7701433, at *36 (D.N.M. Aug. 3, 2011) ("[I]n the leasing context, the ROD and the Forest Service's leasing decision constitute final agency action authorizing specific activities."); *Dunn-McCampbell Royalty Int., Inc. v. NPS*, 2007 WL 1032346, at *7 (S.D. Tex. Mar. 31, 2007) (same); *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1091 (9th Cir. 2003) ("[B]ecause the ROD pre-determines the future through the selection of a long-term plan (to the exclusion of others which will not be among the available options at the implementation phase), it is ripe for review.").

Both the BLM cancellations and Revision of Lease Sale 257 determine the rights of Plaintiff States and their citizens who wish to participate in lease sales, and obligate BLM offices and BOEM not to engage in the previously scheduled sales. Because legal consequences flow from these actions, both elements of finality are easily met.

Defendants also raise the oft-rejected argument that this Court cannot redress Plaintiff States' injuries. Defendants suggest that a court's only remedial power under the APA is a remand without

vacatur. But courts possess broad remedial powers to cure harms arising from illegal agency action. Plaintiff States' injuries would be remedied by vacatur of the lease sale cancellations, which would return the agency to its status quo statutory obligation to hold quarterly lease sales. *W. Energy All. v. Jewell*, 2017 WL 3600740, at \*11 (D.N.M. Jan. 13, 2017) ("[W]hen WEA member companies expend considerable resources in reliance on the BLM adhering to its statutory mandate, and the BLM then cancels those sales for allegedly illegal reasons, the member companies are harmed. The Court can redress this harm by ordering BLM to comply with the MLA."); *see also WildEarth Guardians v. Bernhardt*, 2020 WL 6799068, at \*19 (D.N.M. Nov. 19, 2020). The Court also has power to enjoin the agency from acting in compliance with an illegal and vacated agency action. *See, e.g.*, *Velesaca*, 458 F. Supp. 3d at 240. And, as discussed below, the Court clearly has power to compel unreasonably withheld lease sales.[3] *See infra* §III.

## III.   PLAINTIFF STATES' §706(1) CLAIM IS LIKELY TO SUCCEED.

In Defendants' telling, the MLA and OCSLA impose no mandatory duties upon the Secretary. Not so. The MLA unambiguously commands the Secretary to hold quarterly lease sales of eligible lands: "Lease sales shall be held for each State where eligible lands are available at least quarterly." 30 U.S.C. §226(b)(1)(A). BLM undertook analysis, collected parcel nominations, and scheduled quarterly lease sales. BLM has *not* determined that any of the lands previously scheduled for sale are no longer "eligible" and "available." Rather, to the extent BLM has explained the delay, it has issued tentative statements regarding litigation and compliance with EO 14008. Because BLM has made no formal determination that the previously scheduled lease parcels are no longer eligible and available, it lacks discretion to hold quarterly lease sales for those parcels.

---

[3] Defendants' reliance on *El Paso County v. Trump* is misplaced because, unlike the statutory revenue entitlements here, "Congress did not directly appropriate" money for El Paso's project. 982 F.3d 332, 341 (5th Cir. 2020).

Apart from a glancing reference to the Secretary's general "discretion" to administer OCS leasing, Defendants mount no serious argument that this Court lacks the power to compel the Department to act on OCSLA lease sales. "OCSLA's mandate of expeditious development" means that the Secretary has a nondiscretionary duty to "act expeditiously to advance development in the Outer Continental Shelf, and not to curtail drilling unpredictably or indefinitely." *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 336–37 (E.D. La. 2011). This holding fits the Leasing Moratorium and Recission of Lease Sale 257 at issue here just as it fit the Department's slow-walking of drilling permits after Deepwater Horizon.

## IV.   DEFENDANTS FAIL TO REBUT PLAINTIFF STATES' MERITS ARGUMENTS.

Defendants do not respond to Plaintiff States' arguments demonstrating why the moratorium on BLM public land lease sales and the cancellation of individual lease sales are contrary to law, taken without the procedure mandated by law, and are arbitrary and capricious. Their sole merits argument is that the Recission of Lease Sale 257 was acceptable because the President said so. Indeed, Defendants avoid (at 16) even discussing most of Plaintiff States' arguments by baldly asserting that the Secretary was not bound by the APA's contrary-to-law and procedures-required-by-law requirements because "nothing in OCSLA limits the Secretary's institutional authority to reconsider h[er] decisions." Of course agencies can reconsider their decisions—but when they do so they must follow the procedures prescribed by law and the APA. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (rejecting agency claim of "inherent power" to suspend action in absence of statutory authorization). In the OCSLA context, this means that the Secretary cannot cancel lease sales by fiat.

Lease Sale 257's ROD was a substantive rule because it altered the substantive rights and obligations of federal officers, the States, and private parties. *See Texas v. United States*, 809 F.3d 134, 176-77 (5th Cir. 2015) (rule is substantive if it "'change[s] the substantive standards by which the [agency] evaluates' applications which seek a benefit that the agency has the power to provide"). Given

7

its substantive nature, the ROD was issued only after a public comment period.[4] And the ROD complied with OCSLA's requirement that the Secretary consult with the States. 85 Fed. Reg. 73,508 ("With regard to oil and gas leasing on the OCS, the Secretary of the Interior, pursuant to Section 19 of the Outer Continental Shelf Lands Act, provides governors of affected states the opportunity to review and comment on the Proposed NOS."). So to rescind this ROD, the Secretary was required to go through a public comment period in accordance with the APA, and specifically notify the States of their opportunity for comment under OCSLA. *See Clean Water Action v. EPA*, 936 F.3d 308, 312 (5th Cir. 2019) (agency "must provide a reasoned explanation for its revisions and follow the same process to revise a rule as it used to promulgate it").

Defendants' only remaining argument—that the Recission is not arbitrary and capricious based solely upon Executive Order 14008—lacks merit. A decision supported by *no reasoning whatsoever* in the record cannot be saved merely because it invokes an executive order. And here, Defendants cite to nothing that justifies the Recission. This is particularly egregious given the detailed findings in the ROD. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate ... when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy"). For example, the ROD found that the No Action Alternative—or what the Recission effectively implements—would have "negative environmental impacts" including the "risks of spills from the transportation of comparable levels of negative environmental impacts." The new

---

[4] It is irrelevant that the Administration was able to claw back the Final Notice of Sale after it had been submitted to the Federal Register. *Cf. Dunn-McCampbell Royalty Int., Inc. v. NPS*, 2007 WL 1032346, at *8 (S.D. Tex. Mar. 31, 2007) ("It is sufficient to say that the language used by King in the summary ROD does persuade the Court that the mere fact that the Plan was not published, as it does not seem to have been, in the Code of Federal Regulations does not doom its classification as 'final agency action.'").

administration was free to change course. But it could not do so by ignoring these previous findings or without providing any reasoning grounded in OCSLA's factors. *See Fox Television*, 556 U.S. at 515.

## V.    PLAINTIFF STATES WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

The denial of the bonus-bid revenues to which the States are entitled under both OCSLA and the MLA is a paradigmatic irreparable financial harm. *See* 43 U.S.C. §1337(g)(5)(A)(i) (Coastal States entitled to 27 "percent of all bonuses, rents, and royalties" under OCSLA); 30 U.S.C.A. §191(a) (State in which land located entitled to 50 percent of "sales, bonuses, royalties ..., and rentals" under MLA). A "bonus bid is paid at the outset regardless of future activity or production." BOEM, *2017-2022 Outer Continental Shelf Oil and Gas Leasing Proposed Final Program* 10-20 (Nov. 2016). And they are "received by the Government immediately." *Id.*

Defendants dismiss Plaintiff States' injury from the loss of those revenues by labelling it a mere delay. Despite boilerplate assertions that the Moratorium is only a pause, it is in actuality a cancellation. In any event, Plaintiff States are not required to establish that the harm is "inevitable"— perhaps someday the government may resume its legal duties—but must show only that they are "*likely* to suffer irreparable harm in the absence of preliminary relief.*" Texas*, 2021 WL 723856, at *48. Given the great difficulties in recovering monetary damages from the federal government, the loss of funds here constitutes irreparable harm. *See Texas*, 809 F.3d at 186; *Texas*, 2021 WL 723856, at *50.

Plaintiff States have submitted substantial evidence of harms to their economies and their citizens' jobs. Defendants assert that Plaintiff States will not suffer economic harm because the government (purportedly) has not slowed down OCSLA permit approval. But Plaintiff States' expert opined that the States will be harmed not only by production slowdowns, but also by the halt of exploration activities for new leases. Dismukes Decl. ¶42 ("GOM offshore oil and gas support and services are concentrated in five Louisiana parishes: Iberia; Lafayette; Lafourche; St. Mary; and Terrebonne. Collectively, these parishes will be most affected by reductions in employment and

economic activity due to reduced offshore oil and gas exploration and production."). And Defendants ignore that a halt in leasing inevitably and imminently leads to a decline in investment in Plaintiff States' economies. Dismukes Decl. ¶35. These economic harms are also irreparable. *See, e.g.*, *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016).

## VI.   THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH IN FAVOR OF PLAINTIFF STATES.

The balance of harms here is straightforward. Plaintiff States seek an injunction to preserve the status quo—the orderly process of lease sales in compliance with OCSLA and the MLA—while Defendants seek to perpetuate an abdication of statutorily-imposed duties. An injunction would not be the source of an "irreversible and irretrievable commitment of resources." Instead, it would vacate illegal agency actions and compel Defendants to follow the law. Such relief harms neither the government nor the public. The "status quo" is the situation before the complained-of actions. *See, e.g.*, *Texas*, 809 F.3d at 187 & n.205. Accordingly, the public interest in seeing that "the law is followed" outweighs any potential harm to Defendants. *See Texas*, 2021 WL 723856, at *51; *see also Texas*, 809 F.3d at 187; *Texas*, 829 F.3d at 435-36.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff States' motion for a preliminary injunction.

Respectfully submitted,

Dated: May 28, 2021

TYLER R. GREEN
DANIEL SHAPIRO
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423

  */s/ Elizabeth B. Murrill*

JEFF LANDRY
Attorney General
ELIZABETH B. MURRILL (LSBN 20685)
 Solicitor General
JOSEPH S. ST. JOHN (LSBN 36682)
 Deputy Solicitor General
BENJAMIN WALLACE (LSBN 39516)
 Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov
wallaceb@ag.louisiana.gov

*Counsel for Plaintiff States*

OTHER COUNSEL:

STEVE MARSHALL
  Attorney General of Alabama
Edmund G. LaCour Jr.
  Solicitor General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130
Tel: (334) 353-2196
Fax: (334) 353-8400
Edmund.LaCourt@AlabamaAg.gov
*Counsel for the State of Alabama*

TREG TAYLOR
 ATTORNEY GENERAL
Ronald W. Opsahl (Colo. Bar No. 35662)
  Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov
*Counsel for the State of Alaska*

11

LESLIE RUTLEDGE
   Attorney General of Arkansas
Nicholas J. Bronni
   Solicitor General
Dylan L. Jacobs
   Assistant Solicitor General
Office of Arkansas Attorney General Leslie
Rutledge
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Nicholas.bronni@arkansasag.gov
*Counsel for the State of Arkansas*

CHRISTOPHER M. CARR
   Attorney General of Georgia
Andrew A. Pinson
   Solicitor General
Office of the Attorney General
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3409
apinson@law.ga.gov
*Counsel for the State of Georgia*

LYNN FITCH
   Attorney General of Mississippi
Justin L. Matheny*
   Assistant Solicitor General
State of Mississippi
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
*Counsel for the State of Mississippi*

ERIC S. SCHMITT
   Attorney General of Missouri
D. John Sauer
   Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102

12

Tel: (573) 751-0304
Fax: (573) 751-0774
Justin.Smith@ago.mo.gov
*Counsel for the State of Missouri*

AUSTIN KNUDSEN
   Attorney General of Montana
David M.S. Dewhirst
   Solicitor General
Montana Attorney General's Office
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
406.444.4145
david.dewhirst@mt.gov
*Counsel for the State of Montana*

DOUGLAS J. PETERSON
   Attorney General of Nebraska
James A. Campbell
   Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov
*Counsel for the State of Nebraska*

MIKE HUNTER
   Attorney General of Oklahoma
Mithun Mansinghani
   Solicitor General
Oklahoma Office of Attorney General
313 N.E. 21ST Street
Oklahoma City, OK 73105
Phone: (405) 522-4392
mithun.mansinghani@oag.ok.gov
*Counsel for the State of Oklahoma*

KEN PAXTON
   Attorney General of Texas
Judd E. Stone II
   Solicitor General
Office of the Attorney General
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Tel.: (512) 463-4139

13

Fax: (512) 474-2697
Patrick.Sweeten@oag.texas.gov
Judd.Stone@oag.texas.gov
*Counsel for the State of Texas*

SEAN D. REYES
   Attorney General of Utah
Melissa A. Holyoak
   Solicitor General
Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
385.271.2484
melissaholyoak@agutah.gov
*Counsel for the State of Utah*

PATRICK MORRISEY
   West Virginia Attorney General
Lindsay S. See
   Solicitor General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Lindsay.s.see@wvago.gov
*Counsel for the State of West Virginia*

*\* Motion for pro hac vice admission forthcoming*