**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| STATE OF LOUISIANA, ET AL. | |
| Plaintiffs, | Case No. 2:21-cv-00778 |
| v. | |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, ET AL. | Honorable Judge Terry A. Doughty |
| | Magistrate Judge Kathleen Kay |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE AND COMPEL
COMPLIANCE WITH PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    A.    Offshore Leasing................................................................................... 2

    B.    Onshore Leasing .................................................................................. 5

STANDARD OF REVIEW .............................................................................................. 5

ARGUMENT .................................................................................................................... 6

    I.    Plaintiffs Have Not Established Even A Prima Facie Case Of Contempt, Let Alone A Clear And Convincing Case Of Contempt ................................................. 6

    II.    Plaintiffs' Compliance Motion Improperly Requests That The Court Modify Its Injunction To Exceed Its Jurisdiction ............................................................. 11

CONCLUSION................................................................................................................ 16

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Lung Ass'n v. Env't Prot. Agency,*
  985 F.3d 914 (D.C. Cir. 2021) ................................................................ 4

*ConocoPhillips Co. v. U.S. EPA,*
  612 F.3d 822 (5th Cir. 2010) ............................................................... 13

*Crowe v. Smith,*
  151 F.3d 217 (5th Cir. 1998) ................................................................. 5

*Cutler v. Hayes,*
  818 F.2d 879 (D.C. Cir. 1987) ............................................................. 15

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
  710 F.3d 579 (5th Cir. 2013) ............................................................... 11

*Hornbeck Offshore Servs., L.L.C. v. Salazar,*
  713 F.3d 787 (5th Cir. 2013) ......................................................... 6, 8, 9

*In re Howard,*
  570 F.3d 752 (6th Cir. 2009) ............................................................... 15

*Nat'l Grain & Feed Ass'n, Inc. v. Occupational Safety & Health Admin.,*
  903 F.2d 308 (5th Cir. 1990) ............................................................... 15

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ....................................................................... 13, 14

*Oaks of Mid City Resident Council v. Sebelius,*
  723 F.3d 581 (5th Cir. 2013) ................................................. 6, 10, 11, 13

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ........................................................................... 5

*Schmidt v. Lessard,*
  414 U.S. 473 (1974) .......................................................................... 12

*Scott v. Schedler,*
  826 F.3d 207 (5th Cir. 2016) ............................................................... 12

*Telecomms. Rsch. & Action Ctr. v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) .............................................................. 15

*Travelhost, Inc. v. Blandford,*
  68 F.3d 958 (5th Cir. 1995) ................................................................. 5

*U.S. Steel Corp. v. United Mine Workers of Am.*,
   519 F.2d 1236 (5th Cir. 1975) ............................................................................. 12

*Whitfield v. Pennington*,
   832 F.2d 909 (5th Cir. 1987) ................................................................................. 5

**Statutes**

43 U.S.C. § 1349(c)(1) ............................................................................................. 15

**Other Authorities**

11A Wright & Miller, Federal Practice & Procedure § 2955 (3d ed.) ........................................ 12

86 Fed. Reg. 7619 (Jan. 27, 2021) ........................................................................... 12

# INTRODUCTION

When this Court's preliminary injunction decision issued on June 15, the Department of the Interior immediately announced it would comply with that decision, and it has.  Although Defendants respectfully disagree with the Court's ruling, they are proceeding with leasing consistent with the Court's injunction pending their appeal.  Over the last ten weeks, Interior has devoted more than 650 person-hours toward holding further proposed sales under the operative five-year program, including Lease Sales 257 and 258.  The agency has also directed considerable resources toward onshore leasing activities.  And that work has put Interior on track to publicly announce both onshore and offshore leasing activity by August 31.  Interior is complying with the June 15 Order (Doc. 140), and Plaintiffs have not justified the need for an order of enforcement, much less the extraordinary remedy of contempt.

Plaintiffs nonetheless argue that Interior has "acted as if this Court's findings, conclusions of law, and compulsory order do not exist," Doc. 149-1 at 4, and rely heavily on Secretary Haaland's testimony before the Senate Committee on Energy and Natural Resources despite her testifying at least six times that the Interior Department was complying with the Court's Order.  Neither Plaintiffs' assertions nor a proper read of the Secretary's testimony lend support to their motion.

Because Plaintiffs have no evidence that Interior has acted or failed to act in violation of the Court's Order, the Court should deny their motion.  The Court should also decline Plaintiffs' requests to modify its Order in ways that would exceed the Court's jurisdiction.

# BACKGROUND

After this Court issued its preliminary injunction decision on June 15, 2021, Interior

immediately stated its intention to "comply with the decision."[1]  And complying with that

decision is precisely what Interior has done: "Since the Court's Order, the Department has taken

no action implementing the pause of new oil and natural gas leases on public lands or in offshore

waters as set forth in Section 208, Executive Order 14008 or action implementing said pause

with respect to Lease Sale 257, Lease Sale 258 and to all eligible onshore properties."

Declaration of Principal Deputy Assistant Secretary for Land and Mineral Management Laura

Daniel-Davis (Daniel-Davis Decl.) ¶ 12.  Interior has also expended significant agency

resources, including many hundreds of employee-hours, preparing to hold oil and gas lease sales.

*Id.* ¶ 30, 36, 46–49.  Although Defendants have appealed the Court's preliminary injunction,

Doc. 152, they have indicated that they "will proceed with leasing consistent with the district

court's injunction during the appeal."[2]  And they presently intend to announce both onshore and

offshore lease sale activity within one week, *i.e.*, by August 31, 2021, Daniel-Davis Decl. ¶¶ 31,

48, as further explained below.

## A.    Offshore Leasing

Under the current five-year program, the process to hold an offshore lease sale "can take

between 3 and 5 years to complete, and contains [fifteen] steps and decision points."  2017–2022

Outer Continental Shelf Oil and Gas Leasing Proposed Final Program (Program), Nov. 2016,

Doc. 129-2, at 1-15 to 1-16.  Of these fifteen steps, Interior had taken only eleven with respect to

---

[1] Ex. A, *Louisiana judge blocks Biden administration's oil and gas leasing pause*, Washington Post, June 15, 2021, https://www.washingtonpost.com/climate-environment/2021/06/15/louisiana-judge-blocks-biden-administrations-oil-gas-leasing-pause/.
[2] Ex. B, Interior Issues Statement on Oil and Gas Leasing Program, Aug. 16, 2021, https://www.doi.gov/pressreleases/interior-issues-statement-oil-and-gas-leasing-program.

Lease Sale 257 at the time Executive Order 14,008 issued.  Daniel-Davis Decl. ¶ 19.  The remaining steps to occur include corresponding with the Governors of affected states, publishing the final notice of sale, and holding the lease sale.  *Id.* ¶ 20; Program, at 1-16.  The Bureau of Ocean Energy Management (BOEM) presently anticipates sending a new Record of Decision to the Federal Register by August 31, 2021, publishing the final notice of sale for Lease Sale 257 in September and holding the lease sale in October or November 2021.  Daniel-Davis Decl. ¶ 31.  That anticipated timeline accords with the schedule set out in the Program, which proposes holding Lease Sale 257 sometime in 2021, not any particular month in 2021:

**Table S-1:  2017–2022 Proposed Final Program Lease Sale Schedule**

|  | Year | Program Area | Sale Number |
|---|---|---|---|
| **8.** | 2021 | Gulf of Mexico | 257 |
| **9.** | 2021 | Cook Inlet | 258 |

Program, at S-4.

Consistent with the Program's recognition that some of the fifteen prelease "steps may . . . be repeated, based on the particular needs of the lease sale and area," *id.* at 1-15, Interior is currently in the process of preparing another Record of Decision and Final Notice of Sale for Lease Sale 257.  Daniel-Davis Decl. ¶ 31.  As Plaintiffs' Proposed Order recognizes, the prior Notice of Sale cannot simply be published, as it would need "appropriate amendments to reflect the new timeline."  Doc. 149-2, at 1.  Similarly, the March 17, 2021, date in the prior Record of Decision, Doc. 129-3, at 14, must be amended to account for the new sale date.  Additionally, key factual information in the prior Record of Decision was significantly outdated by the time the Court's Order issued on June 15, 2021.[3]

---

[3] For example, the prior Record of Decision "acknowledge[d] that recent, significant drops in oil prices may affect the number of leases sold in Lease Sale 257."  Doc. 129-3, at 5.  But that drop off in oil prices had largely subsided by the time the Court issued its decision.  (The Court can

Because certain aspects of the prior Record of Decision were outdated, BOEM has devoted significant effort to preparing a new Record of Decision for Lease Sale 257.  Since June 15, 2021, BOEM employees have devoted at least 525 person-hours to planning further proposed Gulf of Mexico sales under the Program, including Lease Sale 257, *i.e.* "over 13 person-hours of work per business day, on average, since the Court's Order."  Daniel-Davis Decl. ¶ 30.  That work "included (but has not been limited to), preparing possible new lease stipulations, evaluating potential sale areas, geographic information system ('GIS') analysis, review of [National Environmental Policy Act (NEPA)] analysis, and revision of documents."  *Id.* ¶ 32.  Again, BOEM anticipates submitting a new Record of Decision for publication within a week. *Id.* ¶ 31.  In sum, Interior is committed to continuing the process required by law before a lease may be issued.

Similarly, for Lease Sale 258, BOEM has spent at least 130 person-hours since June 15 preparing to advance Lease Sale 258 to the comment stage.  Daniel-Davis Decl. ¶ 36.  This "work has included reviewing and revising existing exploration and development scenarios to account for the May 2021 Oil and Gas Assessment (BOEM's annual estimate of undiscovered, technically and economically recoverable oil and natural gas resources outside of known oil and

---

take judicial notice that oil prices had risen by approximately 50% from January to June of this year.  Ex. C, *U.S. crude oil prices top $75 a barrel, the highest since 2018*, CNBC, July 1, 2021, https://www.cnbc.com/2021/07/01/us-crude-oil-prices-top-75-a-barrel-the-highest-since-2018.html.)  Additionally, the prior Record of Decision analyzed greenhouse gas emissions with respect to two scenarios based on the United States Environmental Protect Agency's (EPA's) rules: a scenario in which the Clean Power Plan was being implemented; and a scenario considering the "repeal of the Clean Power Plan and issuance of the Affordable Clean Energy Rule."  Doc. 129-3, at 6.  But by June 15, neither of those scenarios accurately reflected a world in which the D.C. Circuit had vacated the Affordable Clean Energy Rule and the Clean Power Plan was not in effect.  *Am. Lung Ass'n v. Env't Prot. Agency*, 985 F.3d 914, 995 (D.C. Cir. 2021); *see also* Ex. C, Feb. 22, 2021 Order (holding mandate for vacatur of Clean Power Plan repeal so that the Clean Power Plan was not reinstated).

gas fields on the outer continental shelf) and recalculating the probabilities of discharge as part of the Bureau's Oil Spill Risk Analysis." *Id.* ¶ 37 (footnote omitted).  Based on that substantial work, BOEM presently anticipates opening the public comment period for a revised Draft Environmental Impact Statement for Lease Sale 258 in September or October 2021.  *Id.* ¶ 38.

### B.    Onshore Leasing

Although Plaintiffs' motion does not address onshore leasing in any substance, Defendants have continued their progress in addressing the NEPA issues affecting the onshore leasing program.  In light of that progress, Bureau of Land Management (BLM) leadership recently directed BLM state offices to finalize parcel lists for upcoming sales, in order to publicly post those parcel lists for NEPA scoping by August 31, 2021.  Daniel-Davis Decl. ¶ 48. Following scoping, BLM anticipates publishing draft NEPA documents for public comment in October 2021, followed by a notice of sale published in December 2021.  *Id.*

## STANDARD OF REVIEW

Although federal courts have the inherent power to punish for contempt, that power "must be exercised with restraint and discretion" because it is "shielded from direct democratic controls." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980).  Rather than stemming from a "broad reservoir," it is an "implied power squeezed from the need to make the court function." *Crowe v. Smith,* 151 F.3d 217, 226 (5th Cir. 1998).

"The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987).  "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks and citation omitted).

"To obtain a civil contempt order, [a movant must] prove, by clear and convincing evidence, that: (1) the preliminary injunction was in effect at the time of the government's supposedly contemptuous conduct; (2) the injunction, neither vaguely nor ambiguously, required the government to perform or abstain from certain conduct; and (3) the government failed to comply with the injunction's requirement(s)." *Oaks of Mid City Resident Council v. Sebelius,* 723 F.3d 581, 585 (5th Cir. 2013) (internal references omitted).  Clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (internal reference omitted).

## ARGUMENT

I.   **Plaintiffs Have Not Established Even A Prima Facie Case Of Contempt, Let Alone A Clear And Convincing Case Of Contempt.**

Plaintiffs provide no evidence that Defendants have taken a single action in violation of the Court's Order; nor could they, as the Principal Deputy Assistant Secretary for Land and Minerals Management has confirmed that "[s]ince the Court's Order, the Department has taken no action implementing the pause."  Daniel-Davis Decl. ¶ 12.  Instead, Plaintiffs' Motion presents only (1) out-of-context snippets of Congressional testimony, Doc. 149-1, at 3, and (2) unfounded allegations about *inaction* by Interior, *id.*, at 2.  Neither argument demonstrates even a prima facie case of contempt, let alone provides the requisite "clear and convincing evidence" necessary to establish civil contempt.  *Hornbeck*, 713 F.3d at 792.

*First*, Plaintiffs claim that "Defendants' noncompliance with the Court's order" is established by the Secretary's statement during a budget hearing that "the [p]ause is still in place."  Mot. at 3.  That is incorrect.  The Secretary's testimony simply recognized that no

competitive lease sale had occurred since Executive Order 14,008 issued: "I mean you can say

that as soon as one lease sale happens, that the pause is over."  Doc. 148-1, at 59:50–59:57.  Her

statement about the pause being "in place" did not describe any agency policy, but instead

merely "technically . . . suppose[d] [what] you could say" about the lack of lease sales.  *Id.* at

1:00:15–1:00:21.  And she did not at all suggest that the Department was continuing to

implement the pause in contravention of this Court's Order.  To the contrary, she testified six

times during the same three-minute colloquy that the Department was complying with the

Court's Order. [4]  As she explained, although "there is a lot of work that goes into even having a

---

[4] The full colloquy between Senator Hyde-Smith and Secretary Haaland is set out below (Doc. 148-1, at 58:30–1:02:03):

> Q:  I'd like to discuss the report that your Department is set to release.  For clarification, is this report a final report or is it an interim report?
>
> A:  Senator, thank you for the question.  And the report that we are set to release is an interim report.  And it will be released soon.
>
> Q:  But it's totally an interim report.  And does this report bring the Department into compliance with current law?
>
> A:  We are actually in compliance with the Court Order currently.  We are complying with the Court order right now. As we speak, the Department is working.  As I mentioned, there is a lot of work that goes into even having a lease sale.  And so, they are complying with the Court order now, today.
>
> Q:  So the ban has been released?
>
> A:  I suppose that the pause that you're referring to—that President Biden ordered in his Executive Order—is, I suppose it's in effect.  I mean you can say that as soon as one lease sale happens, that the pause is over.  But what I can say is we are complying with the Court order and we are doing the work necessary to move in that direction.
>
> Q:  So the pause is not in place at this time?
>
> A:  Well, technically, I suppose you could say the pause is still in place.  However, we are complying with the Court order to move forward on releasing the report and moving this issue forward.
>
> Q:  Does the report contain formal binding decisions or anything that will be enforceable?

lease sale," the Department was "doing the work necessary to move in that direction."  Doc. 148-1, at 59:12–1:00:10; *see also id.* at 26:55–27:53 (leasing is "not a switch you can turn on" as "there's a lot of work that goes into a lease sale").

The Fifth Circuit's *Hornbeck* decision demonstrates that the Secretary's testimony is no evidence of contempt.  713 F.3d at 792–96 (reversing district court contempt finding).  There, the district court enjoined Interior from enforcing a drilling moratorium.  *Id.* at 790.   The day the injunction issued, the Secretary announced his view that the "decision to impose a moratorium on deepwater drilling was and is the right decision," and his intention to "issue a new order in the coming days that eliminates any doubt that a moratorium is needed, appropriate, and within our authorities."  *Id.* (internal quotation marks and citation omitted).  In subsequent Congressional testimony, the Secretary confirmed his "resolve to reissue the moratorium" and "referred to the moratorium as 'in place.'"  *Id.* at 794.  Despite the Secretary's stated intention to overcome the preliminary injunction by issuing a new moratorium, the Fifth Circuit found his conduct not contemptuous because the "court order did not explicitly prohibit a new, or even an identical, moratorium."  *Id.* at 795.

---

A:      As I mentioned earlier Senator, the report is in its final internal draft and I am unable to comment on it at the moment.

Q:      OK, and what action has the Department taken to be in compliance with the Judge's ruling? Have there been any decisions to reinstate lease sales? Specifically, I'm referring to Lease Sale 257?

A:      Thank you Senator.  Unfortunately, Senator, I can't comment specifically on the question that you're asking.  We'd be more than happy to be back in touch with you as soon as we do have specific answers to your questions.  I know that overall, the Department is working on ensuring that we are complying with the Court order.

Q:      And with the Lease Sale 257?  Are you familiar with that Lease Sale 257?

A:      Senator, I understand the question you're asking, and I want to assure you that we are doing our best to move forward.

In contrast to *Hornbeck*—where the court found that Secretary Salazar had explicitly intended to overcome a preliminary injunction through subsequent agency action—Secretary Haaland has repeatedly affirmed her intention to comply with the Court's Order.  *See supra* pp. 2, 7–8 & n.4.  And the Department in fact has been diligently working to comply with the Court's Order by expending over 650 person-hours to prepare future lease sales.  *See supra* pp. 4–5.  Against that backdrop, the Secretary's observation that "Well, technically, I suppose you could say the pause is still in place," Doc. 149-1, at 59:36–59:50, cannot be contemptuous when the Fifth Circuit found the testimony in *Hornbeck*—that an enjoined moratorium was "in place" coupled with an explicit intent to re-implement a similar moratorium—not contemptuous. *Hornbeck*, 713 F.3d at 794.[5]

Tellingly, Plaintiffs hide their entire discussion of the Fifth Circuit's *Hornbeck* decision in a footnote of their compliance motion, Doc. 149-1, at 4–5 n.4, even as they repeatedly relied on the *Hornbeck* line of cases in their preliminary injunction motion, *see* Doc. 3-1, at ii. Plaintiffs attempt to distinguish *Hornbeck* as being about a procedural, rather than a substantive, failure.  Doc. 149-1, at 4–5 n.4.  But this attempted distinction is unavailing because the Court's decision relied, in relevant part, on an alleged procedural failure of the agency.  *See* Doc. 139, at 27 ("the Secretary of the DOI cannot make any significant changes to the Five-Year Plan without going through the same procedure by which the Five-Year Plan was developed").

---

[5] Additionally, because Executive Order 14,008 has not been rescinded, it is at least "in some sense accurate," *Hornbeck*, 713 F.3d at 794, to state that "the pause . . . that President Biden ordered in his Executive Order is, I suppose it's in effect," Doc. 149-1, at 59:36–59:50.  *See Hornbeck*, 713 F.3d at 794 ("Moreover, because the May Directive had not been rescinded, saying the moratorium was 'in place' was in some sense accurate.").  Nor does the Court's Order require the rescindment of Executive Order 14,008, as it does not apply to President Biden.  *See* Doc. 140 (naming all Defendants but President Biden).  Although the Executive Order remains in place, that does not change the fact that "the Department has taken no action implementing the pause," Daniel-Davis Decl. ¶ 12, as required by the injunction.

9

*Second*, Plaintiffs allege without any evidence or apparent investigation that "BOEM has taken no action whatsoever to hold Lease Sale 257." Doc. 149-1, at 2. Plaintiffs improperly equate the fact that no competitive lease sale has yet been held with complete inaction by the Department.[6] The latter is untrue as the very testimony that Plaintiffs cite make plain. The Secretary testified that Interior was "doing [its] best to move forward" on Lease Sale 257. Doc. 148-1, at 1:01:40–1:02:03. This work includes the following:

- Devoting at least 525 person-hours to planning for proposed Gulf of Mexico sales under the Program, including Lease Sale 257, *i.e.* "over 13 person-hours of work per business day since the Court's Order," Daniel-Davis Decl. ¶ 30;

- "[P]reparing possible new lease stipulations, evaluating potential sale areas, geographic information system ('GIS') analysis, and review of NEPA analysis and documents," *id.*; and

- Preparing to publish a new Record of Decision for Lease Sale 257 by August 31, 2021, followed by subsequent steps necessary to hold Lease Sale 257 this year, *id.* ¶ 31.

Similarly, for Lease Sale 258, BOEM has spent at least 130 person-hours since June 15 preparing to advance that sale to the comment stage, by accounting for intervening information including BOEM's May 2021 Oil and Gas Assessment and recalculated oil discharge probabilities. Daniel-Davis Decl. ¶ 37.

Given Interior's significant efforts to prepare for the lease sales in question, Plaintiffs have not and cannot approach the clear and convincing showing that would be needed to support an order of civil contempt—as demonstrated by *Sebelius*, where the Fifth Circuit reversed a district court's contempt ruling. There, the agency was preliminarily enjoined from "taking any action on the basis of [a] Notice of Termination." 723 F.3d at 585. With such an injunction,

---

[6] Plaintiffs' counsel did not engage with Defendants' counsel seeking to understand what work Interior had done to move forward the process for holding Lease Sale 257. Had Plaintiffs' counsel done so, their motion may have been obviated.

"contempt was appropriate only if [the movant] proved, by clear and convincing evidence, that the Notice affected the government's conduct while the injunction was in effect." *Id.*  The movant nonetheless overreached, arguing that the injunction against certain actions also required the government to take action.  *Id.* ("Oaks treats the injunction as requiring the government *to pay* for services.").  But the Fifth Circuit found that argument "rests on a misreading of the injunction." *Id.*

Similarly here, Plaintiffs misread the Court's Order as requiring government action on a specific timeline, when there is no such command in the Court's Order.  *See* Doc. 140.  Because Fifth Circuit law establishes that civil contempt is available only when "the injunction, neither vaguely nor ambiguously, required the government to perform or abstain from certain conduct," *Sebelius*, 723 F.3d at 585, Plaintiffs cannot establish contempt on their inaction theory.  The fact that Interior has not completed Lease Sales 257 and 258 does not indicate contempt; such sales involve a series of administrative steps, which are required by the relevant federal statutes and regulations.  The Court's order does not compel the agency to act in contravention of these other authorities.

## II.     Plaintiffs' Compliance Motion Improperly Requests That The Court Modify Its Injunction To Exceed Its Jurisdiction.

Although styled as a contempt motion, Plaintiffs' motion actually seeks to modify the Court's Order to obtain additional relief that it did not seek or obtain during the preliminary injunction proceedings.  As explained below, much of Plaintiffs' additional requested relief is neither required by the Court's Order nor within the Court's jurisdiction, and would not be appropriate for an order of enforcement.

To comply with Rule 65(d), a "court's order granting the injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained or required." *Daniels*

*Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting Fed. R. Civ. P. 65(d)).  The Supreme Court has repeatedly emphasized that "the specificity provisions of Rule 65(d) are no mere technical requirements."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Id.*  Because "[t]he rule embodies the elementary due process requirement of notice," *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975)*,* "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed," *Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016) (quoting *U.S. Steel Corp.*, 519 F.2d at 1246 n.20).  "Since the language employed in Rule 65(d) strongly suggests that only those acts specified by the order will be treated as within its scope and that no conduct or action will be prohibited by implication, all omissions or ambiguities in the order will be resolved in favor of any person charged with contempt."  11A Wright & Miller, Form and Scope of Injunctions or Restraining Orders, Federal Practice & Procedure Civil § 2955 (3d ed.).

Here, the Court's Order proscribes Interior "from implementing the Pause of new oil and natural gas leases on public lands or in offshore waters as set forth in Section 208, Executive Order 14008, 86 Fed. Reg. 7619, 7624-25 (Jan. 27, 2021) and as set forth in all documents implementing the terms of said Executive Order by said defendants, as to all eligible lands."  Doc. 140, at 1.  There can be no genuine dispute that Interior has complied with that requirement.  *See* Daniel-Davis Decl. ¶ 12 ("Since the Court's Order, the Department has taken no action implementing the pause of new oil and natural gas leases on public lands or in offshore

waters as set forth in Section 208, Executive Order 14008 or action implementing said pause with respect to Lease Sale 257, Lease Sale 258 and to all eligible onshore properties.").

Given the absence of objectionable actions, Plaintiffs' compliance motion focuses instead on allegedly contemptuous "inactions."  Doc. 149-1, at 3.  Specifically, Plaintiffs contend that Interior is in contempt because it has "taken no actions to reinstitute Lease Sale 257" such as "publish[ing] the Final Notice of Sale."  *Id.*, at 4.  But Plaintiffs identify no terms in the Court's Order that "specifically" and "in reasonable detail" require Interior to take those actions, as required by Rule 65(d).  While the Order *enjoins* and *restrains* Interior from implementing the Pause, it does not *compel* Interior to take the actions specified by Plaintiffs, let alone on the urgent timeline specified in Plaintiffs' contempt motion.  *See Sebelius*, 723 F.3d at 585–86 (holding that an injunction against acting should not be "misread[]" into a command to take action).

Instead, what Plaintiffs actually seek, under the guise of a contempt motion, is an order modifying the Court's injunction in several ways that exceed the Court's jurisdiction.[7]  *See* Doc. 149-1, at 6–7.  *First*, Plaintiffs seek to compel the agency to rely on the prior, outdated Record of Decision for Lease Sale 257, rather than preparing a new Record of Decision.  *See id.* at 5 ("No new record of decision, lease terms, or notice of sale would have to be prepared—those documents already exist.").  But the Court's Order does not bind the agency to the prior Record of Decision, as the Order in no way compels the content of the Record of Decision for Lease Sale 257.[8]  Nor would the Court have the power to do so.  *See Norton v. S. Utah Wilderness All.*,

---

[7] Defendants also preserve—without seeking to relitigate—their prior jurisdictional objections. *See generally* Doc. 120.

[8] Nor is the prior Record of Decision immutable, given the agency's well-established "power to reconsider that decision."  *ConocoPhillips Co. v. U.S. EPA,* 612 F.3d 822, 832 (5th Cir. 2010).

542 U.S. 55, 65 (2004) ("when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be").

Moreover, issuing a new Record of Decision for Lease Sale 257 allows BOEM to ensure compliance with NEPA by reviewing developments since the issuance of the prior Record of Decision.  As discussed *supra* pp. 3–4 n.3, the prior Record of Decision relies on outdated scenarios regarding EPA rules, and relying on an outdated decision carries litigation risk that would place a cloud over any resultant leases.  *See, e.g.*, Ex. D, *Healthy Gulf v. Haaland*, No. 1:19-cv-707, Am. Second Supp. Compl., Doc. No. 37 ¶¶ 107–125 (D.D.C. Jan. 27, 2021) (challenging certain previously-held offshore sales for failing to consider changes to rules where the Records of Decision were allegedly issued after the rule changes were finalized).  By addressing potential issues now, BOEM could save years of litigation later, not to mention legal fees.

*Second*, Plaintiffs seek to impose onerous weekly status report obligations on Interior "detailing all efforts and activities related to lease sales, including progress on environmental analyses and noticing sales, and progress on the new five year plan under OCSLA."  Doc. 149-2, at 2.  The Court previously declined a much narrower request for the agency to provide "a report in writing setting forth in detail the manner in which Defendants have complied with the terms of this Preliminary Injunction."  *Compare* Doc. 3-7, at 2, *with* Doc. 140.  The Court should similarly decline Plaintiffs' broader request, as "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with [broad statutory mandates] is not contemplated by the APA."  *Norton*, 542 U.S. at 67.  Indeed, in moving for the preliminary injunction, Plaintiffs disclaimed "seek[ing] to enlist the Court in an ongoing supervision of the

14

Department's administration" of its oil and gas leasing programs, Doc. 126, at 3, thus

demonstrating how their compliance motion seeks to modify—not enforce—the Court's Order.

*Third*, in expanding this case to address "progress on the new five year plan under

OCSLA," Doc. 149-2, Plaintiffs would have the Court intrude upon the exclusive jurisdiction of

the D.C. Circuit.  Congress has required challenges involving the adoption of the next five-year

program to be brought "only in the United States Court of Appeal for the District of Columbia."

43 U.S.C. § 1349(c)(1); *see also In re Howard*, 570 F.3d 752, 757 (6th Cir. 2009) (holding that

even when language in a jurisdictional provision "does not specifically cover the agency's failure

to [act], . . . the court of appeals' jurisdiction is exclusive" over claims of "agency inaction"

because "[o]therwise claims for agency inaction could still be filed in the district court and the

court of appeals could not properly 'protect its future jurisdiction.'" (quoting *Telecomms. Rsch.*

*& Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984))).

*Fourth*, Plaintiffs spend considerable time discussing BOEM's actions regarding offshore

wind projects, apparently suggesting that the Court should redirect agency resources from wind-

related projects to oil-and-gas-related activities.  Doc. 149-1, at 2, 5.  But the Court's Order does

not require anything of the sort.  Nor can the Court compel agency allocation of resources among

competing priorities, as "[a]n agency has broad discretion to set its agenda and to first apply its

limited resources to the regulatory tasks it deems most pressing."  *Nat'l Grain & Feed Ass'n, Inc.*

*v. Occupational Safety & Health Admin.*, 903 F.2d 308, 310 (5th Cir. 1990) (quoting *Cutler v.*

*Hayes*, 818 F.2d 879, 896 (D.C. Cir. 1987)).  In any event, Plaintiffs overlook that BOEM began

work on many of these wind-related actions before the Court's Order issued on June 15, and that

different BOEM offices address offshore wind issues from those that are responsible for offshore

oil and gas lease sales.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

Motion for Order to Show Cause and to Compel Compliance with Preliminary Injunction.


Respectfully submitted this 24th day of August, 2021.

<div style="margin-left:40%">

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/      Michael S. Sawyer*
THOMAS W. PORTS, JR.
MICHAEL S. SAWYER
Trial Attorneys, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:     (202) 305-5492 (Ports)
               (202) 514-5273 (Sawyer)
Fax:           (202) 305-0506
Email:         Thomas.Ports.Jr@usdoj.gov
               Michael.Sawyer@usdoj.gov

*Counsel for Defendants*

</div>

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2021, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Michael S. Sawyer
Michael S. Sawyer