IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA, *et al.*, | ) | Case No. 2:21-cv-00778 |
| | ) | |
| Plaintiffs, | ) | Hon. Judge Terry A. Doughty |
| | ) | |
| v. | ) | Hon. Magistrate Judge Kathleen Kay |
| | ) | |
| JOSEPH R. BIDEN, JR., in his official | ) | |
| capacity as President of the United States, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION
TO DENY MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

PROCEDURAL BACKGROUND....................................................................... 1

RELEVANT BACKGROUND LEGAL PRINCIPLES.................................... 2

     I.     Standard of Review for a Dispositive Report and Recommendation .................... 2

     II.    Judicial Review of Agency Action and the APA Standard .................................. 3

     III.   Standard of Decision for a Motion to Dismiss........................................................ 4

ARGUMENT ...................................................................................................... 5

     I.     The Report's Recommendation Against Dismissing the *Ultra Vires* Claim and Dismissing the President as a Party Ignore the Plain Text of the Executive Order. .............................................................................................. 5

     II.    The Report Incorrectly Disregards the Sixty-Day Notice Requirement of OCSLA. ............................................................................................................ 9

     III.   The Report Incorrectly Recommends Denial of Defendants' Motion to Dismiss Plaintiffs' Claims Under the APA. .................................................... 12

           A.     The Report Incorrectly Found a Discrete Agency Action. ....................... 12

           B.     The Report Incorrectly Found a Final Agency Action. ............................ 15

           C.     The Report Incorrectly Found that Holding an Offshore Lease Sale Was Mandatory ..................................................................................... 18

CONCLUSION.................................................................................................. 20

i

# TABLE OF AUTHORITIES

## Cases

*Alabama-Coushatta Tribe of Texas v. United States,*
  757 F.3d 484 (5th Cir. 2014) .................................................................. 20, 21, 22

*Am. Airlines, Inc. v. Herman,*
  176 F.3d 283 (5th Cir. 1999) ................................................................... 23

*Am. Petroleum Inst. v. EPA,*
  216 F.3d 50 (D.C. Cir. 2000)................................................................... 24

*Amerada Hess Corp. v. Dep't of Interior,*
  170 F.3d 1032 (10th Cir. 1999) .............................................................. 25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................ 6

*Atieh v. Riordan,*
  727 F.3d 73 (1st Cir. 2013)..................................................................... 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................ 6

*Bennett v. Spear,*
  520 U.S. 154 (1997)................................................................................ 23

*Blanco v. Burton,*
  No. 06-cv-3813, 2006 WL 2366046 (E.D. La. Aug. 14, 2006)........................ 29, 30

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
  295 F.3d 28 (D.C. Cir. 2002)................................................................... 9, 10

*Bowlby v. City of Aberdeen,*
  681 F.3d 215 (5th Cir. 2012) .................................................................. 6

*Brown v. Offshore Specialty Fabricators, Inc.,*
  663 F.3d 759 (5th Cir. 2011) .................................................................. 14

*City & Cty. of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ................................................................ 7, 11

*City of Clinton, Ark. v. Pilgrim's Pride Corp.,*
  632 F.3d 148 (5th Cir. 2010) .................................................................. 5

*Common Cause v. Trump,*
  No. 1:20-cv-2023, 2020 WL 8839889 (D.D.C. Nov. 25, 2020)................. 8, 9, 12, 13

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
  563 F.3d 466 (D.C. Cir. 2009)................................................................. 28

*Davidson v. Georgia-Pac., L.L.C.,*
  819 F.3d 758 (5th Cir. 2016) .................................................................. 3

*Duke Energy Fields Servs. Assets, L.L.C. v. Comm'n,*
  150 F. Supp. 2d 150 (D.D.C. 2001) ...................................................................... 15

*Fisheries Survival Fund v. Haaland,*
  No. 20-cv-5094, 2021 WL 2206426 (D.C. Cir. May 20, 2021) .................................. 15, 17, 18

*Fisheries Survival Fund v. Jewell,*
  No. 16-cv-2409, 2018 WL 4705795 (D.D.C. Sept. 30, 2018)...................................... 15, 16, 17

*Ford v. Ducote,*
  No. 20-cv-1170, 2020 WL 8642257 (W.D. La. Nov. 2, 2020) .................................... 4

*Funk v. Stryker,*
  631 F.3d 777 (5th Cir. 2011) .......................................................................... 7

*Goonsuwan v. Ashcroft,*
  252 F.3d 383 (5th Cir. 2001) .......................................................................... 5

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
  484 U.S. 49 (1987)........................................................................................ 14

*Hias, Inc. v. Trump,*
  985 F.3d 309 (4th Cir. Jan. 8, 2021) ................................................................ 8, 12

*Humble Equip. Co. v. Team Eagle Ltd.,*
  No. 3:17-CV-01575, 2018 WL 3946022 (W.D. La. Aug. 15, 2018)........................ 4

*Judulang v. Holder,*
  565 U.S. 42 (2011) ...................................................................................... 5

*La. Pub. Serv. Comm'n v. FERC,*
  761 F.3d 540 (5th Cir. 2014) ........................................................................ 5

*Louisiana v. U.S. Army Corps of Eng'rs,*
  834 F.3d 574 (5th Cir. 2016) .................................................................... 23, 26

*Louisiana v. United States,*
  948 F.3d 317 (5th Cir. 2020) ........................................................................ 27

*Lujan v. National Wildlife Federation,*
  497 U.S. 871 (1990)............................................................................ 19, 20, 21, 22

*Nat. Res. Def. Council v. Hodel,*
  865 F.2d 288 (D.C. Cir. 1988) ...................................................................... 29

*Norris v. Hearst Trust,*
  500 F.3d 454 (5th Cir. 2007) ........................................................................ 7

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004)............................................................................ 5, 22, 27

*OXY Inc., v Babbitt,*
  122 F.3d 251 (5th Cir. 1997) ........................................................................ 25

*Rader v. Cowart,*
No. 09-cv-1872, 2010 WL 3522371 (W.D. La. Sept. 2, 2010) ................................. 4

*Shawnee Trail Conservancy v. Nicholas,*
343 F. Supp. 2d 687 (S.D. Ill. 2004)........................................................................ 24

*Sierra Club v. Glickman,*
67 F.3d 90 (5th Cir. 1995) ........................................................................................ 5

*State of Cal. By & Through Brown v. Watt,*
712 F.2d 584 (D.C. Cir. 1983)................................................................................. 28

*Stem v. Gomez,*
813 F.3d 205 (5th Cir. 2016) .................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)................................................................................................... 7

*Trump v. New York,*
141 S. Ct. 530 (2020) ................................................................................................ 9

**Statutes**

28 U.S.C. § 636(b)(1) ...................................................................................................... 3

43 U.S.C. § 1337 ...................................................................................................... 7, 18

43 U.S.C. § 1344 ...................................................................................................... 7, 18

43 U.S.C. § 1349(a)(2) ..................................................................................................... 9

43 U.S.C. § 1349(a)(3) ..................................................................................................... 9

43 U.S.C. § 1351 .......................................................................................................... 19

43 U.S.C. §§ 1349(a)(2)-(3) ............................................................................................ 2

5 U.S.C. § 553.......................................................................................................... 1, 12

5 U.S.C. § 553 (13) ........................................................................................................ 14

5 U.S.C. § 704 ................................................................................................................. 1

5 U.S.C. § 706(1) ...................................................................................................... 3, 18

5 U.S.C. § 706(2) ............................................................................................................. 3

5 U.S.C. §§ 701–706 ....................................................................................................... 3

**Regulations**

30 C.F.R. § 556.304 ...................................................................................................... 11

30 C.F.R. § 556.305 ...................................................................................................... 11

30 C.F.R. § 556.307 ...................................................................................................... 11

30 C.F.R. § 556.308 ........................................................................................... 11

30 C.F.R. § 556.516 ........................................................................................... 11

**Rules**

Fed. R. Civ. P. 72 ................................................................................................. 3

**Other Authorities**

75 Fed. Reg. 44,276 (July 28, 2010) ................................................................. 19

86 Fed. Reg. 10,132 (Feb. 18, 2021) ................................................................. 16

Exec Order No. 14,008, 86 Fed. Reg. 7619 (Jan. 27, 2021) ............................ 1, 5, 8, 9

INTRODUCTION

This Court should decline to adopt the August 23, 2021, Report and Recommendation (Report), Doc. 154. First, the Report improperly concludes that Executive Order 14,008 is *ultra vires* by disregarding the Order's qualification that its impact is limited "[t]o the extent consistent with applicable law." 86 Fed. Reg. 7619, 7624-25 (Jan. 27, 2021). Second, the Report erroneously applies an exception to the sixty-day notice requirement for civil lawsuits filed under the Outer Continental Shelf Lands Act without citation to, or analysis of, the legal requirements for that exception. Third, the Report incorrectly recommends against dismissing Plaintiffs' claims under the Administrative Procedure Act, despite Plaintiffs' failure to direct their claims against discrete and final agency action within the meaning of 5 U.S.C. §§ 553, 704.

Because of these errors, Defendants respectfully request that this Court decline to adopt the Report, dismiss the President as a party, and dismiss all counts, except Count VI.

PROCEDURAL BACKGROUND

On January 27, 2021, President Biden issued Executive Order 14,008 (Order 14,008), section 208 of which states:

> To the extent consistent with applicable law, the Secretary of the Interior shall pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices in light of the Secretary of the Interior's broad stewardship responsibilities over public lands and in offshore waters, including potential climate and other impacts associated with oil and gas activities on public lands or in offshore waters.

Order 14,008, Tackling the Climate Crisis at Home and Abroad, 86 Fed. Reg. 7619, 7624-25 (Feb. 1, 2021).

Plaintiffs filed this lawsuit against the President and other federal government officials alleging eight counts under the Administrative Procedure Act ("APA") that are summarized in the Report. Report 2-3, Doc. 154 (describing Counts I through VIII); *see also* Compl., Doc. 1.

1

Plaintiffs also allege a citizen suit under the Outer Continental Shelf Lands Act (OCSLA) (Count IX), and a claim for *ultra vires* review of the President's issuance of Executive Order 14,008 (Count X). Report at 3, Doc. 154.

On June 7, 2021, Defendants filed the instant motion seeking dismissal of all claims, except for Count VI.[1] Defs.' Mot. to Dismiss (Defs.' Mot.), Doc. 128. On August 23, 2021, Magistrate Judge Kay entered the Report recommending denial of Defendants' motion. Doc. 154. The Report denied Defendants' motion to dismiss Plaintiffs' *ultra vires* claim (Count X), finding that Order 14,008 "unambiguously commands the Secretary to act with the language 'shall pause,'" notwithstanding the language directing that any pause be consistent with applicable law. Report 13-16, Doc. 154. The Report also denied Defendants' motion to dismiss Plaintiffs' claim under the citizen suit provision of the OCSLA (Count IX), finding that the complaint alleges sufficient immediate effect on a legal interest to justify an exception to the sixty-day notice provision. Report 17-20, Doc 154 (citing 43 U.S.C. §§ 1349(a)(2)-(3)). Finally, the Report denied Defendants' motion to dismiss Plaintiffs' APA claims (Counts I-V, VII, and VIII) on grounds that Plaintiffs' lawsuit does not constitute a programmatic challenge and the Secretary's decision to pause leasing under Order 14,008 constituted discrete, final agency action. Report 26-29, Doc. 154.

<u>RELEVANT BACKGROUND LEGAL PRINCIPLES</u>

I.    <u>Standard of Review for a Dispositive Report and Recommendation</u>

Where a party objects to a dispositive report and recommendation, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly

---

[1] Count VI alleges that the Bureau of Land Management ("BLM") unlawfully and unreasonably delayed its quarterly land lease sales and seeks to compel BLM to hold the sales "according to their previous schedules with reasonable modifications." Compl. ¶¶ 156-59, Doc. 1.

objected to." Fed. R. Civ. P. 72; *see also* 28 U.S.C.A. § 636(b)(1); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (reviewing "the district court's ruling as opposed to acting as the second layer of review for the magistrate judge's decision" because the district court must review magistrate judge's report and recommendation *de novo*).

"A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). District courts regularly decline to adopt reports and recommendations on dispositive matters. *See, e.g.*, *Ford v. Ducote*, No. 20-cv-1170, 2020 WL 8642257, at *3 (W.D. La. Nov. 2, 2020); *Humble Equip. Co. v. Team Eagle Ltd.*, No. 3:17-cv-01575, 2018 WL 3946022, at *6-7 (W.D. La. Aug. 15, 2018); *see also Rader v. Cowart*, No. 09-cv-1872, 2010 WL 3522371, at *1 (W.D. La. Sept. 2, 2010) (declining to adopt report and recommendation where the district court "[found] that the magistrate judge's reasoning [did] not conform to applicable jurisprudence").

II.    Judicial Review of Agency Action and the APA Standard

The APA, 5 U.S.C. §§ 701–706, governs judicial review of agency actions. Courts may "set aside" agency action that is arbitrary and capricious or contrary to law. 5 U.S.C. § 706(2). And courts may "compel" unreasonably delayed agency action. *Id.* § 706(1). Because judicial review is confined to "circumscribed, discrete agency actions," however, courts lack broader supervisory authority over agencies. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

APA review generally "involves neither discovery nor trial" because the "focal point of APA review is the existing administrative record." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013); *accord Goonsuwan v. Ashcroft*, 252 F.3d 383, 391 (5th Cir. 2001). A reviewing court's role is to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Judulang v. Holder*, 565 U.S. 42, 53

3

(2011) (internal quotation marks omitted). Under this highly deferential standard, agency actions are presumed to be valid. *La. Pub. Serv. Comm'n v. FERC*, 761 F.3d 540, 588 (5th Cir. 2014). The court must not "substitute its judgment for that of the agency as to which particular features might be most desirable or efficacious." *Sierra Club v. Glickman*, 67 F.3d 90, 97 (5th Cir. 1995).

III.     Standard of Decision for a Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "all well-pleaded facts are viewed in the light most favorable to the plaintiff." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). A motion to dismiss should be granted where the "complaint fails to plead sufficient facts to state a claim that is plausible, rather than merely conceivable, on its face." *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, the claim must have "facial plausibility" such that its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 209 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint is insufficient if it offers only 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'" *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 668).

The Court "must consider the complaint in its entirety . . . in particular documents incorporated into the complaint by reference." *Funk v. Stryker*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Moreover, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Id.* (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

ARGUMENT

I.   The Report's Recommendation Against Dismissing the *Ultra Vires* Claim and Dismissing the President as a Party Ignore the Plain Text of the Executive Order.

Order 14,008 directs the Secretary to pause leasing only "[t]o the extent consistent with applicable law." 86 Fed. Reg.  at 7624-25. But the Report disregards this directive and relies instead on out-of-circuit authority for the proposition that "savings clauses as qualifiers in an executive order should not insulate an executive order from judicial review when that qualifying language would override the substance of the order itself." Report 13 (citing *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018), and *Hias, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. Jan. 8, 2021)). In so holding, the Report disregards the plain language of  Order 14,008 as well as persuasive D.C. Circuit authority, instead relying upon inapposite Ninth Circuit and Fourth Circuit decisions.

Order 14,008 does not unilaterally impose an absolute moratorium (it is not self-executing), and nothing in the Order directs a subordinate officer to act in violation of any law. To the contrary, Section 208 of Order 14,008 explicitly directs the Secretary to pause oil and gas leasing only "to the extent consistent with applicable law." Order 14,008 § 208.

Especially given the respect due the President, courts cannot ignore language in an Executive Order and must give effect to its plain meaning. This includes "unambiguous qualifiers imposing lawfulness and feasibility constraints on implementing the [presidential directive.]" *Common Cause v. Trump*, No. 120-cv-2023, 2020 WL 8839889, at *6 (D.D.C. Nov. 25, 2020). In determining whether an Executive Order is contrary to existing statutes, a court must account for "general instruction[s]" that the order "'shall be implemented consistent with applicable law.'" *Id.* The D.C. Circuit has held where, as here, an Executive Order included language requiring its implementation to be consistent with applicable law, the Executive Order

could not be *ultra vires* because, if the agency "may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). These decisions acknowledge language like that included in the Executive Order serves the entirely proper purpose of ensuring that the implementing agencies act only to the extent the law allows the action in question. *Cf. Trump v. New York*, 141 S. Ct. 530, 535 (holding challenge to presidential memorandum nonjusticiable in part because memorandum included language instructing agency only to act "to the extent practicable").

The Report wrongly rejects these decisions, which it acknowledges would be fatal to Plaintiffs' claim. Report 16, Doc. 154. The Report says that crediting all of the language of the Executive Order would "allow the President to evade judicial review with the mere inclusion of the savings clause." *Id.* This is simply false. The court in *Allbaugh* subjected the Executive Order in that case to judicial review, despite its inclusion of the same language at issue here, and concluded that it survived that review. *See Allbaugh*, 295 F.3d at 33. Nor did the D.C. Circuit simply rubber stamp the Executive Order at issue because of the qualification directing that all actions be "consistent with applicable law." Instead, the Court of Appeals held that such an Executive Order could still be *ultra vires* if it lacked "any valid application." *Id.* And, even where an order is facially valid, the court allowed that judicial review can still be available, so long as that review is focused on the executive officer taking action to carry out the order. *See id.*

Here, the Executive Order is facially valid because the Secretary of the Interior holds broad discretion in the management of the leasing programs under the Mineral Leasing Act (MLA) and OCSLA, including the discretion not to lease any given parcel, or the discretion to

defer lease sales, particularly when necessary to comply with other environmental and federal resource statutes. Defendants provided statutory and historical support for this discretion that the Report overlooks. *See* U.S. Mot. 14-15 (discussing 43 U.S.C. §§ 1337, 1344); *id.* (discussing Cong. Rsch. Serv., *Five-Year Program for Offshore Oil and Gas Leasing: History and Program for 2017-2022,* at 10–12 (Aug. 23, 2019), https://fas.org/sgp/crs/misc/R44504.pdf). This Court should adopt the persuasive reasoning of *Allbaugh* and *Common Cause* and dismiss Plaintiffs' *ultra vires* count.

The cases on which the Report relies, by contrast, are easily distinguishable because both involved executive orders that had no legally valid application. The executive order at issue in *City and County of San Francisco v. Trump,* 897 F.3d 1225, 1233-34 (9th Cir. 2018), for example, directed the Executive Branch to condition federal grants on cooperation with the prior administration's immigration policy goals. Recognizing that the Spending Clause "vests exclusive power to Congress to impose conditions on federal grants," the Ninth Circuit explained that "the Executive Branch may not refuse to disperse the federal grants in question without congressional authorization." *Id.* at 1231. The Ninth Circuit further held that Congress had not authorized the Executive to condition new grants on compliance with immigration laws or the Administration's "immigration strategies." *Id.* at 1233-35. Thus, any implementation of the order by the executive branch would violate the constitution and federal statute, or else would require the court to interpret the order as a nullity. *Id.* at 1238 (rejecting argument that the challenged executive order was "all bluster and no bite . . . use of the presidential 'bully pulpit,' without any real meaning"). This holding is consistent with *Allbaugh*'s recognition that executive orders are *ultra vires* where they have no valid application. The order here, however, is not facially invalid because it can be applied in a manner consistent with applicable law.

The Fourth Circuit's decision in *Hias, Inc. v. Trump,* No. 20-1160, 2021 WL 69994, at *6 (4th Cir. Jan. 8, 2021), similarly involved an executive order that facially contradicted a federal statute. There, a statute required the Secretary of State, when resettling refugees, to "consult" with resettlement agencies, States, and localities, and to make resettlement determinations based on the Secretary of State's assessment of resources available to refugees across the country. *Id.* The challenged order, however, provided that the federal government should "resettle refugees *only* in those jurisdictions in which both the State and local governments have consented to receive refugees," unless the Secretary of State determined that following the order in a given instance would be inconsistent with law, notified the President of that determination in advance, and provided his reasons for it. *Id.* at *2 (quoting executive order). The Fourth Circuit concluded that the Executive Order had replaced the statutory consultation process with a one-sided, opt-in system whereby the individual states could veto resettlement within their borders, despite Congress's choice "not to require the 'approval' or 'consent' of the states and localities." *Id.* at *5. Here again, the "savings clause" did no actual work because no implementation of the Executive Order could ever be consistent with the relevant statute.[2]

The common thread in both cases is that the presiding courts declined to credit so-called "savings clauses" only after finding the challenged executive orders could *never* be implemented consistent with law.

In sum, because Executive Order 14,008 directs the Secretary to pause new lease sales only to the extent "consistent with applicable law," and because both the MLA and OCSLA give

---

[2] Also significant here, the "savings clause" in *Hias* is materially different from that in Order 14,008. The "savings clause" in *Hias* required the Secretary of State to jump through hoops in order to override the "consent" requirement, whereas Order 14,008 simply directs the Secretary of the Interior to pause lease sales only where consistent with applicable law.

the Secretary ample discretion in the management of Interior's leasing programs, there is no

basis for the Report's conclusion that Order 14,008 facially violates either statute. Accordingly,

Plaintiffs' *ultra vires* claim should be dismissed.

And thus, the Report also errs in recommending that the President not be dismissed as a

party. *See* Report 16 n.14. The only count plausibly relevant to the President is the *ultra vires*

claim, which should be dismissed for the reasons explained.[3]

II.     <u>The Report Incorrectly Disregards the Sixty-Day Notice Requirement of OCSLA</u>.

While acknowledging that a would-be plaintiff for an OCSLA citizen suit must give the

Secretary of the Interior sixty-days' notice of the intent to file suit, 43 U.S.C. § 1349(a)(2), the

Report finds that Plaintiffs met an exception to this sixty-day requirement based on an

"immediately affect[ed] . . . legal interest of the plaintiff," Report 17 (quoting 43 U.S.C. §

1349(a)(3)). It reached this conclusion based on economic harm that Plaintiffs allegedly "have

previously suffered and will immediately suffer." Report 20. The Report's reliance on previous

harm is legally irrelevant and its finding of future economic harm is legally inadequate.

First, "[a] prospectively-worded citizen suit provision, like the OCSLA's, requires that

"the harm sought to be addressed . . . lie[ ] in the present or the future, not in the past." *Brown v.*

*Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011) (quoting *Gwaltney of*

*Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 59 (1987)). Lease Sale 257 has

already been postponed and the comment period for Lease Sale 258 has already been cancelled.

To the extent Plaintiffs allege an ongoing procedural injury (rather than the possibility of lost

---

[3] As to the APA claims, the Report explicitly recognized that the President is "not a proper
defendant for the APA claims, as the law is clear that the [P]resident does not constitute an
'agency' under the APA." Report 3 n.4 (citations omitted).

revenue), qualifying such an injury as "immediate" harm would vitiate the sixty-day notice requirement and eliminate Section 1349(a)(1)'s "'explicit and unambiguous' language that 'must be given palpable effect.'" *Fisheries Survival Fund v. Jewell*, 2018 WL 4705795, at *10-11 (D.D.C. Sept. 30, 2018)[4] (quoting *Duke Energy Field Servs. Assets, L.L.C. v. Fed. Energy Regul. Comm'n*, 150 F. Supp. 2d 150, 155 (D.D.C. 2001)).[5] Given that, the Report's reliance on past injury as a basis for denying Defendants' motion to dismiss Count IX was erroneous.

Second, the Report also erred in crediting Plaintiffs' allegations of future injury stemming from their future shares in forgone bonuses, rents, and royalties as a basis for circumventing OCSLA's sixty-day notice requirement. This too was error, as there are many months and several intervening agency decisions between holding any lease sale and the receipt of any funds by Plaintiffs. *See Fisheries Survival Fund*, 2018 WL 4705795, at *10-11 (rejecting plaintiffs' argument that "since the lease auction occurred only forty-five days after the Final Sale Notice was published, they did not have sixty days to notify Defendants of their claims before the Final Sale"). Alaska's legal conclusion that it will be "imminently harmed" by the halt of Lease Sale 258 lacks any facts to render it plausible. Compl. ¶ 118, Doc. 1. Instead, Alaska cites a study projecting the number of jobs and amount of money that it claims could *eventually* result from a lease sale in the Cook Inlet. *Id.* But these projected benefits are in the indefinite future, not "imminent," and thus not a basis to disregard the sixty-day notice requirement. Moreover, when the Secretary paused the Lease Sale 258 NEPA process, the Bureau of Ocean

---

[4] *Aff'd sub nom. Fisheries Survival Fund v. Haaland*, No. 20-5094, 2021 WL 2206426 (D.C. Cir. May 20, 2021), and *aff'd sub nom. Fisheries Survival Fund v. Haaland*, No. 20-5094, 2021 WL 2206426 (D.C. Cir. May 20, 2021).

[5] Relevant to Plaintiffs' other claims, *Duke Energy Field Servs. Assets, L.L.C. v. Fed. Energy Regul. Comm'n* also dismissed claims brought under the APA for alleged violation of OCSLA procedures based on failure to provide 60-day notice. 150 F. Supp. 2d at 155.

Energy Management ("BOEM") was only about halfway through the sale planning process. *See* 30 C.F.R. §§ 556.304, 305, 307, 308. This administrative process must be completed before Interior can hold a lease sale under OCSLA. Even for Lease Sale 257, a Final Notice of Sale would need to be published at least 30 days before any sale could be held, *id.* § 556.308; then the Attorney General in consultation with the Federal Trade Commission has 30 days to review the results of the lease sale before BOEM may accept any bid, *id.* § 556.516; BOEM has at least 90 days to decide whether to accept any bid, *id.* ; and ultimately BOEM could reject all bids, *id.* ("BOEM reserves the right to reject any and all bids received, regardless of the amount offered."). For all these reasons, Plaintiffs did not plead "immediate" harm sufficient to excuse compliance with the 60-day notice requirement.

Moreover, the Report cannot justify an exception to the sixty-day notice requirement based on an alleged failure to consult about the rescission of Lease Sale 257 or comment on Lease Sale 258. In *Fisheries Survival Fund v. Jewell*, the plaintiffs claimed that BOEM had failed to properly consider certain interests at the site selection and lease sale stages and that those interests would be harmed by a scheduled lease sale, including by fixing the boundaries of the challenged development area. 2018 WL 4705795, *10-11. Plaintiffs argued that the harm they sought to redress was "immediate" because the lease sale was scheduled to occur in 45 days (less than the 60 days required by OCSLA's notice provision). *Id.* Although the court found plaintiffs had standing—and thus a right to advance the asserted interests—plaintiffs' injuries did not excuse them from OCSLA's notice requirement. *Id.* at *11. The alleged procedural injury here, although framed as Plaintiffs' right to comment and consult, is no different. The Report ignores *Fisheries Survival Fund* entirely.

11

Plaintiffs cannot substitute quantity for quality when it comes to the injuries they allege. Even where Plaintiffs assert future—as opposed to past—injury, they fail to allege the *type* of injury that justifies an exception to the general sixty-day rule. Because they undisputedly failed to provide a sixty-day notice of their citizen suit claim, Defendants' motion to dismiss Plaintiffs' citizen suit should be granted.

III.    The Report Incorrectly Recommends Denial of Defendants' Motion to Dismiss Plaintiffs' Claims Under the APA.

Defendants moved for dismissal of Plaintiffs' Counts I-V, VII and VIII on grounds: (1) that Plaintiffs' claims constitute an improper programmatic challenge and (2) that Plaintiffs do not challenge a final agency action. U.S. Mot. 19-24, Doc. 128. The Report rejects both bases, Report 23-29, but its reasons for rejecting those two bases are legally unsound.[6]

A.    The Report Incorrectly Found a Discrete Agency Action.

Rather than identify a specific agency action evincing an alleged program-wide moratorium, Plaintiffs identify individual agency lease sale deferrals. *E.g.,* Compl. ¶¶ 138, 140, Doc. 1. But Plaintiffs simultaneously acknowledge that these individual actions occurred at different times with different rationales. *See, e.g.,* Compl. ¶ 78 (citing February 18 rescission of record of decision to comply with Executive Order); *id.* ¶ 103 (citing Nevada "*Errata,*" which was published on January 27, 2021, and "provides no reasons for postponing" lease sale); *id.* ¶ 105 (citing Wyoming February 12, 2021, announcement that "lease sales are postponed to confirm the adequacy of underlying environmental analysis") (internal quotations omitted). It is

---

[6] The Report provided dicta relating to Plaintiffs' contentions under 5 U.S.C. § 553 (notice and comment rulemaking). *See* Report 32-36. The arguments in Defendants' motion to dismiss were limited, however, to the threshold requirement that a litigant proceeding under the APA must direct its challenge against discrete and final agency action. *See* Motion 1, 19-25. Because Plaintiffs' contentions under 5 U.S.C. § 553 were not raised in the Motion, Defendants do not address the Report's corresponding findings in their Objections.

because of this mismatch in the relief they seek against the facts they allege that Plaintiffs' complaint constitutes an improper programmatic challenge under the APA.

The Report translates these varied actions and varied rationales into a single alleged (and undocumented) Secretarial decision to "implement the pause" on government leasing. Report 26 (referring to "the systemic cancellation of mineral leases on eligible lands" as the discrete agency action from which Plaintiffs seek relief). This extrapolation places the Report's reasoning in conflict with precedent. In *Lujan v. National Wildlife Federation*, 497 U.S. 871, 890-93 (1990), plaintiff sought judicial review of a "so-called 'land withdrawal review program'" that it described as consisting of numerous individual land use decisions. *Id.* The Supreme Court held that "the flaws in the entire 'program'—consisting principally of the many individual actions referenced in the complaint and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Id.* at 893. In *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 486 (5th Cir. 2014), the plaintiff—an Indian Tribe—challenged the approval of all "drilling leases and permits to third parties" on land to which the Tribe asserted title. The Fifth Circuit held that it lacked jurisdiction to hear such a "blanket challenge to all of the Government's actions with respect to all permits and leases" that was directed at "the way the Government administers these programs and not to a *particular and identifiable* action taken by the Government." *Id.* at 491-92 (emphasis added). Even though the Tribe alleged that a particular policy applied across all permitting decisions—"namely the agencies' failure to consider and accommodate the Tribe's aboriginal title"—the Fifth Circuit rejected the challenge as directed to "the federal agencies' broad policies and practices" rather than an "'agency action' sufficient to trigger the sovereign immunity wavier from [5 U.S.C.] § 702." *Id.*

13

As in *Lujan* and *Alabama-Coushatta*, Plaintiffs' challenge to the alleged moratoriums should be rejected as an improper programmatic challenge. Like the "so-called 'land withdrawal review program'" in *Lujan*, the term "moratoriums" is "not derived from any authoritative text" from the agency but "is simply the name by which [Plaintiffs] have occasionally referred to the continuing (and thus constantly changing) operations of the BLM" and BOEM in evaluating oil and gas lease sales. 497 U.S. at 890. Plaintiffs also seek to control future conduct of the agency in "actions yet to be taken," *Lujan*, 497 U.S. at 893, namely an indefinite number of future lease sales, despite the rule that allegations "cover[ing] actions that have yet to occur . . . do not challenge specific 'agency action.'" *Alabama-Coushatta*, 757 F.3d at 490. Plaintiffs' moratorium challenges focus on systemic changes, rather than individual agency decisions, *see* Compl. ¶ 152 (challenging "systematic delay of scheduled quarterly sales"), even though such "systemic improvement[s]" must be sought before the legislative or executive branches, *Lujan*, 497 U.S. at 894.

The Report attempts to distinguish *Lujan* by noting that "plaintiffs here seek relief from the cancellation and postponement of two specific Lease Sales in offshore Waters." Report 26 (ECR No. 154). But that, of course, is not the limit of Plaintiffs' complaint, as the Report acknowledges. *Id.* Plaintiffs also sought relief from "the systemic cancellation of mineral leases on eligible lands"—a claim the Report characterized as targeting discrete agency action, Report 26, but which cannot be reconciled with the term "agency action" as defined in 5 U.S.C. §553(13). *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) (explaining that a litigant invoking the APA's private right of action must direct its claim at one of the circumscribed, discrete agency actions identified in Section 551(13)). The Report also attempts to distinguish *Alabama-Coushatta* by characterizing the nature of the challenge there as

14

broader than the nature of the challenge Plaintiffs mount here. Report 27, Doc. 154. But the Fifth

Circuit's ruling in *Alabama-Coushatta* turned on both the number of actions and leases that

would be affected by the ruling plaintiff sought as well as the breadth of types of actions that

would be subject to the ruling plaintiffs sought. 757 F.3d at 491-92.

In sum, the Report incorrectly found that Plaintiffs' claims target discrete agency action,

when in fact they assert an improper programmatic challenge and should be dismissed.

B.      The Report Incorrectly Found a Final Agency Action.

The Report next finds that the Secretary's alleged implementation of the pause, together

with BOEM and BLM's subsequent cancellations of lease sales, amounted to final agency

action. Report 27. It reasoned that those "actions" are final because "they alter the obligations of

the various federal officials charged with performing the lease sales and affect the statutory

rights of plaintiffs to collect proceeds from the sales." Report 28, Doc. 154. The problem with

the Report's reasoning is that it ignores the appropriate legal standard.

"If there is no 'final agency action,' as required by the controlling statute, a court lacks

subject matter jurisdiction." *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). To

be a "final" agency action subject to judicial review, an agency action must meet two conditions"

"First, the action must mark the consummation of the agency's decisionmaking process—it must

not be of a merely tentative or interlocutory nature. And second, the action must be one by which

rights or obligations have been determined, or from which legal consequences will flow."

*Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 580–81 (5th Cir. 2016) (quoting *Bennett*

*v. Spear*, 520 U.S. 154, 177–78 (1997)).

Here, the challenged actions do not mark the "consummation" of the agency's process

because they are interim postponements of lease sales; they are not decisions to forego the sales

entirely and, as of the time of the complaint, no ultimate decision had yet been made. *E.g.*,

15

Compl. ¶ 103 (alleging Nevada sale was "postponed"), *id.* ¶ 104 (alleging Colorado, Montana, Utah, and Wyoming sales were "postponed"). Deferrals or postponements of agency decisions are not "final" agency actions because they are necessarily interlocutory in nature. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 68 (D.C. Cir. 2000) ("A decision by an agency to defer taking action is not a final action reviewable by the court."); *Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 701 (S.D. Ill. 2004) (postponing a decisional process regarding public land use "does not mark the consummation of an agency decisionmaking process but instead reflects an interim or interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process").

The challenged actions also do not determine rights or obligations, and do not trigger legal consequences. For example, the Record of Decision for Lease Sale 257 was a NEPA document that did not grant any right or determine any obligation and would not have caused any lease sale to happen. Its rescission therefore had no real-world consequences. *See* 86 Fed. Reg. 10,132 (Feb. 18, 2021) ("After completion of the review specified in the Executive Order, BOEM may reevaluate GOM Lease Sale 257 and publish an appropriate ROD in the Federal Register."). It simply told the world where the agency stands in its decision-making process.

Nor could Plaintiffs' OCSLA citizen suit count circumvent the APA's limits on judicial review of agency action. In *OXY USA Inc v. Babbitt* (*OXY*), the Fifth Circuit held that the citizen suit provision cannot operate as "a means of obtaining 'umbrella' review for a series of agency decisions that were or will be otherwise subject to judicial review under the APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency." 122 F.3d 251, 258 (5th Cir. 1997).

*OXY* rejected a claim that, much like Count IX here, challenged an alleged "final determination" that they argued was "'revealed by,' 'reflected in,' and otherwise manifested 'through'" certain other agency actions. *Id.* There, as here, plaintiffs sought to use the citizen suit provision "as an avenue of obtaining judicial review of OCSLA-related agency decisions that is wholly independent of the judicial review procedures set forth in the APA." *Id.* The Fifth Circuit rejected this attempt because the actions plaintiffs challenged were—by their own terms— subject to further review within the agency. *Id.* To hold otherwise, it reasoned, "would be to interpret the citizen suit provision as implicitly repealing the APA with respect to such agency action" *Id.*; *see also Amerada Hess Corp. v. Dep't of Interior*, 170 F.3d 1032, 1034–35 (10th Cir. 1999) (agreeing with *OXY* but holding a suit challenging an agency decision could not be brought under OCSLA). Mirroring *OXY*, Plaintiffs' instant OCSLA citizen suit claim rehashes allegedly final agency actions that Plaintiffs also challenge in their APA counts. Compl. ¶ 171. Applying *OXY*, Plaintiffs' claims should be dismissed.

Tellingly, the Report does not identify, much less examine, the Fifth Circuit's two conditions to establish final agency action. Instead of identifying a "decision making process," *Louisiana*, 834 F.3d at 580, that culminated in the alleged "systematic[]" cancellation and postponement of onshore and offshore lease sales, *see* Report 28, the Report instead states that it is not bound by the word "pause" and can instead conduct its finality inquiry "flexibl[y]" and "pragmatic[ally]," *id*. Further, the Report conflates the Fifth Circuit's requirement that action "determine" rights or obligations, *Louisiana*, 834 F.3d at 580-81, with a finding that the alleged "systematic[]" cancellation and postponement of onshore and offshore lease sales "*affect*" statutory rights to collect proceeds, Report 28 (emphasis added). The Report does not justify its deviation from the Fifth Circuit's test for final agency action.

C.     The Report Incorrectly Found that Holding an Offshore Lease Sale Was Mandatory

The Court should decline to adopt the Report's application of the law for claims under 5 U.S.C. § 706(1) to the OCSLA claim (Count I) because the reasoning in the Report is incorrect.[7] The Report recognizes that a claim under § 706(1) may only proceed "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Louisiana v. United States*, 948 F.3d 317, 323 (5th Cir. 2020) (quoting *Norton v. S. Utah Wilderness All.*, 124 S. Ct. 2373, 2380 (2004) (emphasis in original)). "This limitation means that if a discrete agency action 'is not demanded by law,' a court may not compel the action under § 706(1)." Report 32, Doc. 154 (quoting *Louisiana*, 948 F.3d at 323). The Report incorrectly concludes, however, that OCSLA demands lease sales occur on particular dates. This is error.

The Secretary has regularly deferred or cancelled lease sales when necessary to allow review and consideration under relevant environmental laws, and pausing lease sales pending such a review is consistent with the statute. OCSLA does not compel that lease sales occur on any particular date, *see* 43 U.S.C. § 1337 (governing lease sales), nor does it require that agencies proceed with lease sales proposed in the Five-Year Program, *see id.* § 1344 (directing the Secretary to prepare and periodically revise a schedule of "proposed" lease sales). Plaintiffs' arguments to the contrary ignore the "pyramidic" structure of OCSLA. *See State of Cal. By & Through Brown v. Watt*, 712 F.2d 584, 588 (D.C. Cir. 1983) (the OCSLA "process is 'pyramidic in structure, proceeding from broad-based planning to an increasingly narrower focus as actual development grows more imminent.' . . . Thus, while an area excluded from the leasing program

---

[7] The Court should also decline to adopt the Report's application of the law for claims under 5 U.S.C. § 706(1) to the MLA claim because Defendants did not move to dismiss the relevant Count (Count VI).

cannot be leased, explored, or developed, an area included in the program may be excluded at a later stage"). As the D.C. Circuit[8] has recognized, "the completion of the first stage of a leasing program [adopting a five-year program] . . . does not require any action . . . ." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 483 (D.C. Cir. 2009) (finding Endangered Species Act claim was not ripe at program approval stage because a program that does not require any action cannot cause any harm). In contrast, where Congress intended that an act occur within a certain time, OCSLA sets a deadline. *See, e.g.*, 43 U.S.C. § 1351 (requiring the Secretary to act on a development and production plan within 60 days from the completion of the NEPA process).

History is replete with examples of Interior pausing and cancelling lease sales proposed in the Outer Continental Shelf leasing program. *See* Cong. Rsch. Serv., *Five-Year Program for Offshore Oil and Gas Leasing: History and Program for 2017-2022*, at 10–12 (Aug. 23, 2019), https://fas.org/sgp/crs/misc/R44504.pdf. For example, Interior cancelled lease sales in the Mid-Atlantic and Gulf of Mexico to allow for the development of stronger protections following *Deepwater Horizon*. 75 Fed. Reg. 44,276 (July 28, 2010). And at least one sale has been postponed by a sitting administration in order to allow an incoming administration to decide whether to proceed with the sale. *See Nat. Res. Def. Council*, 865 F. 2d at 293 n.3 ("the Secretary delayed publication of a final environmental impact statement for Lease Sale 91 . . . to permit the new incoming administration to decide whether to proceed with the sale").

---

[8] Because the D.C. Circuit has exclusive jurisdiction under OCSLA to review the Secretary's approval of five-year programs adopted pursuant to § 1344, that Circuit has the most relevant precedent explaining that the adoption of a five-year program—OCSLA's first stage—does not compel any particular action or decision in OCSLA's subsequent stages, including lease sale.

Even Louisiana has taken the position in federal court proceedings that the Secretary has authority to postpone lease sales proposed in a Five-Year Program without following the full process to amend a program, including the authority to postpone a sale until after the program expires. *See Blanco*, 2006 WL 2366046, at *5. Following hurricanes Katrina and Rita, Louisiana commented on Interior's notice proposing to hold the last potential lease sale in the then-effective 2002-2007 five-year program, Lease Sale 200. *Id.* "[T]he Governor recommended that Lease Sale 200 be postponed and included in the 2007-2012 program [then] being prepared by [Interior] . . . [which] would allow [Interior] the opportunity to meaningfully assess the impact of [Outer Continental Shelf] activities in light of the devastation wreaked on the Gulf Coast as a result of the 2005 hurricanes." *Id*. Louisiana asserted Interior had "failed, perhaps in the simple rush to stay on the schedule identified in the [five-year program], to take the necessary steps with which it is charged under [federal law] to ensure for the protection of Louisiana's coastal zone and the infrastructure." *Id.* at *4. Louisiana's reversal of its position seeks to ignore the law as long recognized by Louisiana, Interior, the Eastern District of Louisiana, and other courts.

<u>CONCLUSION</u>

Based on these objections, Defendants respectfully request the Court decline to adopt the Report and Recommendation. Instead, this Court should dismiss the President as a party and also dismiss all claims in Plaintiffs' complaint other than Count VI.

Respectfully submitted this 21st day of September, 2021.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

By  */s/ Thomas W. Ports, Jr.*
THOMAS W. PORTS, JR.
MICHAEL S. SAWYER

Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-5492 (Ports)
(202) 514-5273 (Sawyer)
Fax:     (202) 305-0506
Email:  Thomas.Ports.Jr@usdoj.gov
          Michael.Sawyer@usdoj.gov

*Counsel for Defendants*