# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| STATE OF LOUISIANA, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  2:21-cv-00778 |
| | ) | |
| v. | ) | |
| | ) | Honorable Judge Terry A. Doughty |
| JOSEPH R. BIDEN, JR., in his official capacity | ) | |
| as President of the United States, ET AL. | ) | Magistrate Judge Kathleen Kay |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.      Legal Background ...................................................................................... 2

          A.      The Mineral Leasing Act (MLA) ................................................. 2

          B.      The Outer Continental Shelf Lands Act (OCSLA) ..................... 3

          C.      The National Environmental Policy Act (NEPA) ....................... 4

    II.     Factual Background ................................................................................... 4

STANDARD OF REVIEW ................................................................................................ 9

          A.      Judicial Review of Agency Action; the APA Standard ........................... 9

    II.     Summary Judgment as Applied to Review of Agency Actions ............................ 9

    III.    The Permanent Injunction Standard .................................................................. 10

ARGUMENT ................................................................................................................... 10

    I.      The Court Lacks Jurisdiction Over Any Agency Action ...................................... 10

          A.      The Court lacks jurisdiction over post-filing agency actions ................. 10

          B.      The Court lacks jurisdiction over three onshore postponements, including BLM's January 25 Nevada postponement ............................... 13

          C.      The Court lacks jurisdiction over BLM's March 1 postponement .......... 14

          D.      The Court lacks jurisdiction to review agency programs consisting of numerous individual agency actions .................................................... 15

          E.      The Court lacks jurisdiction to review individual postponement decisions under § 706(2) of the APA, as those decisions were not final agency actions .................................................................................. 18

          F.      The Court lacks jurisdiction to compel lease sales ................................. 19

          G.      The Court lacks jurisdiction over the Executive Order ........................... 20

          H.      The Court lacks jurisdiction over Plaintiffs' citizen suit claim ............... 20

    II.     The Court Is Prohibited From Issuing Plaintiffs' Requested Relief .................... 21

i

A.       Plaintiffs' Requested Injunction Is Prohibited By 28 U.S.C. §
         2401(a) ................................................................................................. 21

B.       Plaintiffs' Requested Injunction Is Barred By Rule 65 ........................... 21

C.       Plaintiffs are not entitled to nationwide relief ........................................ 23

D.       Plaintiffs are not entitled to declaratory relief ....................................... 24

E.       Plaintiffs are not entitled to any other relief ........................................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Coushatta Tribe of Tex. v. United States*,
    757 F.3d 484 (5th Cir. 2014) ................................................................................................ 12

*Am. Airlines, Inc. v. Herman*,
    176 F.3d 283 (5th Cir. 1999) ................................................................................................ 10

*Am. Petroleum Inst. v. EPA*,
    216 F.3d 50 (D.C. Cir. 2000)................................................................................................ 18

*Baisden v. I'm Ready Prods., Inc.*,
    693 F.3d 491 (5th Cir. 2012) ................................................................................................ 11

*Boquet Oyster House, Inc. v. United States*,
    2011 WL 5187292 (E.D. La. Oct. 31, 2011) .......................................................................... 9

*Burns Ranches, Inc. v. U.S. Dep't of the Interior*,
    851 F. Supp. 2d 1267 (D. Or. 2011) .................................................................................... 25

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)................................................................................................................ 12

*Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*,
    220 F.3d 1171 (10th Cir. 2000) ............................................................................................ 13

*Dalton v. Specter*,
    511 U.S. 462 (1994)........................................................................................................ 24, 25

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019).......................................................................................................... 17

*Dep't of Homeland Sec. v. New York*,
    140 S. Ct. 599 (2020)............................................................................................................ 24

*Donelson v. U.S. Dep't of Interior*,
    730 Fed. Appx. 597 (10th Cir. 2018).................................................................................... 11

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997) .............................................................................................. 20

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997) ........................................................................................ 20, 21

*Executive Order 14,008* ............................................................................... 5, 6, 7, 8, 12, 22

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)............................................................................................................... 24

*Friends of the Earth v. Haaland*,
No. CV 21-2317, 2022 WL 254526 (D.D.C. Jan. 27, 2022) ...................................... 8

*Friends of the Earth v. Haaland*, Civil Action,
No. 21-2317, 2022 WL 254526 (D.D.C. Jan. 27, 2022) ........................................... 8

*Girling Health Care v. Shalala*,
85 F.3d 211 (5th Cir. 1996) ......................................................................................... 9

*IMS, P.C. v. Alvarez*,
129 F.3d 618 (D.C. Cir. 1997) ................................................................................... 12

*Lewis v. Casey*,
518 U.S. 343 (1996) ........................................................................................ 11, 13, 14

*Louisiana v. U.S. Army Corps of Eng'rs*,
834 F.3d 574 (5th Cir. 2016) ..................................................................................... 14

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .................................................................................................... 13

*Lujan v. National Wildlife Fed'n*,
497 U.S. 871 (1990) ..................................................................................... 15, 16, 18, 23

*Maritel, Inc. v. Collins*,
422 F. Supp. 2d 188 (D.D.C. 2006) ........................................................................... 12

*Milena Ship Mgmt. Co. v. Newcomb*,
995 F.2d 620 (5th Cir. 1993) ..................................................................................... 12

*Mobil Oil Corp. v. Kelley*,
493 F.2d 784 (5th Cir. 1974) ..................................................................................... 10

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ................................................................................................... 10

*Nat. Res. Def. Council, Inc. v. Hodel*,
865 F.2d 288 (D.C. Cir. 1988) ..................................................................................... 3

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .................................................................................................. 9, 19

*OXY USA Inc v. Babbitt*,
122 F.3d 251 (5th Cir. 1997) ..................................................................................... 20

*Palmer v. Sun Coast Contracting Servs., LLC*,
No. 1:15-cv-34, 2015 WL 5823938 (S.D. Miss. Oct. 6, 2015) ........................... 11, 13

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
139 S. Ct. 1881 (2019) ................................................................................................. 3

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ..................................................................................................... 4

*Sabine River Auth. v. U.S. Dep't of Interior*,
   951 F.2d 669 (5th Cir. 1992) .......................................................................... 9

*Scott v. Schedler*,
   826 F.3d 207 (5th Cir. 2016) ................................................................... 10, 22

*Secretary of the Interior v. California*,
   464 U.S. 312 (1984) ....................................................................................... 4

*Shawnee Trail Conservancy v. Nicholas*,
   343 F. Supp. 2d 687 (S.D. Ill. 2004) ...................................................... 18, 19

*Sierra Club v. Peterson*,
   228 F.3d 559 (5th Cir. 2000) ................................................ 11, 12, 13, 15, 16

*Texas Off. of Pub. Util. Couns. v. F.C.C.*,
   183 F.3d 393 (5th Cir. 1999) ...................................................................... 19

*U.S. Steel Corp. v. United Mine Workers of Am.*,
   519 F.2d 1236 (5th Cir. 1975) .................................................................... 10

*Veldhoen v. U.S. Coast Guard*,
   35 F.3d 222 (5th Cir. 1994) ......................................................................... 10

*Veldhoen v. United States Coast Guard*,
   35 F.3d 222 (5th Cir. 1994) ......................................................................... 10

**Statutes**

28 U.S.C. § 2401(a) ............................................................................................ 2, 21

30 U.S.C. § 226(a) .................................................................................................... 2

30 U.S.C. § 226(b)(1)(A) .......................................................................................... 2

42 U.S.C. § 4321 ...................................................................................................... 4

43 U.S.C. § 1331 ...................................................................................................... 3

43 U.S.C. § 1332(3) ................................................................................................. 3

43 U.S.C. § 1337(a) ................................................................................................. 4

43 U.S.C. § 1337(a)(8) ............................................................................................. 5

43 U.S.C. § 1337(g)(2) ............................................................................................. 3

43 U.S.C. § 1344(a) .............................................................................................. 3, 4

5 U.S.C. § 551(13) ................................................................................................. 13

5 U.S.C. § 702 ...................................................................................................... 25

5 U.S.C. § 704 ...................................................................................................... 11

5 U.S.C. § 706(2) .................................................................................................... 9

5 U.S.C. §§ 701–706 ................................................................................................... 9

**Rules**

Fed. R. Civ. P. 65(d)(1) ............................................................................................. 21

Fed. R. Civ. P. 65(d)(1)(C) .................................................................................. 10, 22

**Regulations**

43 C.F.R. § 3120.1-3 ............................................................................................... 3, 21

85 Fed. Reg. 55,859 (Sept. 10, 2020) ......................................................................... 6

85 Fed. Reg. 55,861 (Sept. 10, 2020) ......................................................................... 6

85 Fed. Reg. 73,508 (Nov 18, 2020) ........................................................................... 5

86 Fed. Reg. 4,117 (Jan 15, 2021) .............................................................................. 6

86 Fed. Reg. 6,365 (Jan 21, 2021) .............................................................................. 5

86 Fed. Reg. 60,068 (Oct. 29, 2021) ........................................................................... 8

86 Fed. Reg. 7,619 (Feb 1, 2021) ............................................................................... 5

**INTRODUCTION**

Defendants respectfully submit this Memorandum in Support of their Cross-Motion for Summary Judgment (Cross-Mot.).  As set forth in Defendants' Opposition (Opp'n), Doc. 208, to Plaintiffs' Motion for Summary Judgment (Mot.), Doc. 199, Plaintiffs have failed to establish that they are entitled to any relief.  This Cross-Motion presents additional jurisdictional and statutory bars to Plaintiffs' requested relief.

As explained herein, the Court lacks jurisdiction over any agency actions that occurred after Plaintiffs filed suit, as jurisdiction must exist at the outset of the suit.  Because Plaintiffs have never supplemented their Complaint under Rule 15(d) to challenge agency actions that occurred after they brought suit, the Court lacks jurisdiction over those post-filing actions.  Plaintiffs themselves appear to concede this defect, as they never cite the administrative records for such post-filing actions.

The Court also lacks jurisdiction over challenges to certain individual pre-filing agency actions on finality and standing grounds.  Plaintiffs are simply not injured by Q1 2021 onshore postponements in the nonparty States Colorado, Nevada, and Wyoming, and thus lack standing as to those postponements.  And there is no jurisdiction over the BLM's temporary postponement of a Q2 2021 sale in New Mexico, because BLM at the time determined only that the sale should not occur in April 2021, while noting its flexibility to reschedule that sale before the end of the second quarter in June.

The Court also lacks jurisdiction over Plaintiffs' challenge to a purportedly unwritten blanket policy to postpone all lease sales when, at best, only several individual agency actions are at issue.  Although the Court allowed Plaintiffs' challenge to alleged leasing moratoria to survive the pleading stage by construing it as a challenge to unwritten agency action, the administrative record explicitly states that there was no such unwritten action.  Because the challenged individual

1

postponements have written explanations, the Court cannot reject those stated reasons.  Thus, all that remains of Plaintiffs' challenge to an agency "pause" is a programmatic challenge outside the Court's jurisdiction.

Finally, Plaintiffs' requested onshore relief is time-barred under 28 U.S.C. § 2401(a), as Plaintiffs ask the Court to facially enjoin regulatory authority to suspend lease sales that Interior has possessed since 1988.  Because any facial challenge to that regulatory authority expired in 1994, Plaintiffs' requested onshore injunctive relief is decades late.

## BACKGROUND

### I.    Legal Background

#### A.    The Mineral Leasing Act (MLA)

The MLA governs onshore lease sales of public land. It provides that the Secretary "may"—not must—lease land.  30 U.S.C. § 226(a).  When Congress amended the MLA in 1987 to shift to a competitive leasing system with quarterly sales, *id.* § 226(b)(1)(A), it explained that this frequency directive was "[s]ubject to the Secretary's discretionary authority under [§ 226(a)] to make lands *available* for leasing."  H.R. Rep. No. 100-378, at 11 (1987) (emphasis added).  Consistent with that Congressional understanding, Interior has consistently interpreted the term "available," 30 U.S.C. § 226(b)(1)(A), to require, at a minimum, that "all statutory requirements and reviews have been met, including compliance with the National Environmental Policy Act."  BLM_I002689 (2013); BLM_I000017 (1996); BLM_I000008–9 (1989).

In 1988, Interior adopted regulations to manage the competitive leasing process.   It explained at that time that "Congress did not amend the grant of discretion in" § 226(a) because § 226(b)(1)(A)'s "competitive leasing provisions . . . retain[] Secretarial discretionary power to lease lands."  BLM_I00008.  Interior thus "explained that 'available' lands are those statutorily open to leasing under the MLA, that have met other statutory requirements, and for which leasing is in the

public interest," so that "available" referred to "eligible lands subject to leasing by exercise of discretion." *Id.* Interior further promulgated a regulation establishing its authority to suspend lease sales, even after it had published a formal competitive lease sale notice. 43 C.F.R. § 3120.1-3. That regulation establishes the Assistant Secretary of Land and Minerals Management's authority to "suspend a lease sale for good and just cause" upon receipt of an "appeal from a decision by the authorized officer to hold a lease sale" in the form of a "Notice of Competitive Lease Sale." *Id.*

Consistent with this understanding, Interior has frequently exercised its discretion not to make any land available for leasing. Defendants' Statement of Material Facts (SMF) ¶¶ 23–24. For example, BLM did not offer any competitive MLA leases in each of the thirteen Plaintiff States during 73% of the quarters from 2017 to 2020. *Id.* ¶ 23.

### B.      The Outer Continental Shelf Lands Act (OCSLA)

The Outer Continental Shelf Lands Act of 1953 (OCSLA), 43 U.S.C. §§ 1331 *et seq.*, "gives the Federal Government complete 'jurisdiction, control, and power of disposition' over the" Outer Continental Shelf for purposes of energy production, *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888–89 (2019), though the adjacent States receive a portion of the revenues received by the Federal Government, 43 U.S.C. § 1337(g)(2). OCSLA provides for "expeditious and orderly development . . . subject to environmental safeguards." 43 U.S.C. § 1332(3). It "sets only broad standards and leaves much to the Secretary's discretion in achieving its goals." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 302 (D.C. Cir. 1988).

OCSLA prescribes a four-stage process for development. The first stage is the development of a five-year program, which includes a schedule of proposed lease sales. 43 U.S.C. § 1344(a). OCSLA sets forth certain procedural requirements applicable to a five-year program's promulgation, including consideration of suggestions from Governors of affected states as well as

3

interested federal agencies, and submission of the program to Congress.  *Id.* § 1344(c)-(d).  The second stage consists of the actual lease sale planning process, when the Secretary decides whether and when to hold the individual lease sale and under what terms.  The sale involves the "solicitation of bids and the issuance of offshore leases," as specified in 43 U.S.C. § 1337(a).  But before a lease sale can take place, the "requirements of the National Environmental Policy Act and the Endangered Species Act must be met," *Sec'y of the Interior v. California*, 464 U.S. 312, 338 (1984), as well as a number of additional requirements, 43 U.S.C. § 1337.

Although the five-year programs under OCSLA set out a number of planned areas and proposed years for which lease sales are scheduled, the schedule provides guideposts rather than rigid requirements.  Of the eight completed five-year programs, 44% of the proposed sales were not held as scheduled.  SMF ¶ 39.

### C.    The National Environmental Policy Act (NEPA)

NEPA—the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*—is a procedural statute that requires federal agencies to consider the impacts of, and alternatives to, federal actions significantly affecting the environment.  It ensures that federal agencies take a "hard look" at the environmental consequences of their proposed actions before deciding to proceed.  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350–51 (1989).  Errors in NEPA analyses can result in lease sales being vacated or production being enjoined by a court.  *See infra* Part II.

## II.    Factual Background

*November 2020 NEPA Decision:* Before Executive Order 14,008 issued, BLM began work under the prior administration to prepare a stronger NEPA approach for analyzing greenhouse gases in response to a November 2020 court decision.  SMF ¶¶ 32–33.  At that time, BLM recognized that this new NEPA approach "will require substantial time" to develop.

4

BLM_I002701–02.  BLM air resources specialists began working on that new approach on January 6, 2021.  SMF ¶ 33.

*Executive Order 14,008:* On January 27, 2021, the President issued Executive Order (EO) 14,008, which directs Interior to undertake a comprehensive review and reconsideration of federal oil and natural gas leasing, including royalty rates, while "to the extent consistent with applicable law" pausing new leases.  86 Fed. Reg. 7,619, 7624–25.

*Onshore Lease Postponements:* Facing significant NEPA challenges to its onshore leasing approach, Doc. 120-4 ¶¶ 3–6, BLM postponed six lease sales proposed for Q1 2021 based on NEPA compliance concerns in four separate decision documents, SMF ¶ 29.  BLM also temporarily postponed a single, early Q2 2021 sale, while noting its "flexibility" to reschedule that sale to occur by June 2021, SMF ¶ 30, as it expected "decisions on how the Department will implement the Executive Order . . . with respect to onshore sales . . . . in the coming weeks," BLM_I001180.  But BLM explained at that time that "there's not a blanket policy even with direction in the EO," and thus reversed a lease sale postponement based on the "misinform[ed]" "'perception' that all future sales would be postponed."  BLM_I002421; SMF ¶ 18.

After Plaintiffs filed suit on March 24, 2021, BLM decided on April 21, 2021 that it would not hold Q2 2021 onshore sales.  SMF ¶ 31.  Plaintiffs never supplemented their Complaint under Rule 15(d) to challenge that April 21 decision.  *Id.*

*Offshore Lease Sales:* On November 18, 2020, BOEM published a proposed notice of Lease Sale 257.  85 Fed. Reg. 73,508.  BOEM then issued a record of decision on January 21, 2021, selecting its preferred alternative under NEPA.  86 Fed. Reg. 6,365.  BOEM, however, did not publish a Final Notice of Sale, which is a statutory prerequisite for any sale, 43 U.S.C. § 1337(a)(8).

With respect to Lease Sale 258, BOEM issued a notice of intent to prepare an environmental impact statement on September 10, 2020.  85 Fed. Reg. 55,861.  Also on September 10, 2020, BOEM issued a Call for Information and Nominations under OCSLA for Lease Sale 258, seeking nominations of leasing areas and comments from the public on issues to be considered.  *Id.* 55,859.  On January 15, 2021, BOEM published a Notice of Availability of a draft environmental impact statement for Lease Sale 258 and opened a comment period scheduled to close March 1, 2021.  86 Fed. Reg. 4117.

Following the President's Executive Order, BOEM rescinded the record of decision for Lease Sale 257 "to comply with Executive Order 14008."  86 Fed. Reg. 10,132-01 (Feb. 18, 2021).  BOEM stated, "[a]fter completion of the review specified in the Executive Order, BOEM may reevaluate [Gulf of Mexico] Lease Sale 257 and publish an appropriate [record of decision] in the Federal Register."  *Id.*  BOEM also canceled the public comment period for the Lease Sale 258 draft environmental impact statement.  86 Fed. Reg. 10,994 (Feb. 23, 2021).  BOEM indicated that it would publish a subsequent notice in the Federal Register if it decides to resume its NEPA evaluation following the Presidentially directed comprehensive review.  *Id.*

*Preliminary Injunction:* On June 15, 2021, the Court preliminarily enjoined Interior from implementing the Pause directive of the Executive Order 14,008.  Doc. 140.  In the accompanying opinion, the Court noted that five onshore postponements—in Utah, Colorado, Montana/Dakotas, Eastern States and Wyoming—were explained on NEPA compliance grounds.  Doc. 139, at 30–31 (citing PR 77, 79–84).  The Court further stated that Plaintiffs' allegation that "the postponements based on an additional need for further environmental analysis is pretextual . . . will need to be explored on the merits of this lawsuit."  *Id.* at 31.  The Court noted that a sixth onshore postponement—in Nevada—did not provide a written rationale for the postponement.  *Id.*

at 30.  Finally, the Court misquoted a decision about a single April sale in New Mexico as stating that "oil and gas lease sales scheduled for April 2021 have been postponed."  Doc. 139, at 31 (quoting Doc. 120-6, at PR 86) (emphasized alterations added by the Court).[1]

*Onshore Leasing Activity Following Preliminary Injunction:*  Before Executive Order 14,008 issued, BLM began work under the prior administration to prepare a stronger NEPA approach for analyzing greenhouse gases in response to a November 2020 court decision.  SMF ¶¶ 32–33.  At that time, BLM recognized that this new NEPA approach "will require substantial time" to develop.  BLM_I002701–02.  BLM air resources specialists worked from January 6, 2021 to October 12, 2021 to prepare this new NEPA approach, which culminated in a 113-page report containing substantial new data responsive to the November 2020 court decision.  SMF ¶ 33.  BLM relied on that new approach in draft NEPA analyses for anticipated Q1 2022 lease sales.  *Id.* ¶ 34.  BLM announced that new NEPA approach, along with other NEPA changes, in an October 29, 2021 Fact Sheet.  *Id.* ¶ 34.

Six Plaintiff States then asked another court in this District to enjoin some of the NEPA changes announced in that Fact Sheet.  *Id.* ¶ 35.  That court so enjoined BLM, thereby preventing BLM from proceeding with its previously anticipated Q1 2022 lease sales.  *Id.* ¶ 36.  After the Fifth Circuit stayed that injunction, BLM noticed Q2 2022 lease sales in April, for lease sales scheduled in June 2022.  *Id.* ¶¶ 37–38.

---

[1] The administrative record repeatedly states that this decision was about a single sale.  But the administrative record states that the March 1 decision was limited to a single sale.  BLM_I001179 ("Also to clarify, the only sale that was anticipated is in NM."); BLM_I001180 ("The oil and gas lease sale scheduled for April, 2021 has been postponed."); BLM_I002428 (showing that only one sale was proposed for April, 2021); *compare* BLM_I001180 ("Circling back from our conversations of last week"), *with* BLM_I002427 (showing that those conversations were about the "April lease sale" in New Mexico).

*Offshore Leasing Activity Following Preliminary Injunction:* On August 31, 2021 BOEM issued a new Record of Decision for Lease Sale 257, and on November 17, 2021 BOEM held Lease Sale 257.  *See* 86 Fed. Reg. 54,728; *see also* Plaintiffs' Memorandum in Support of Their Motion (Mem.), Doc. 199-1 at 9.  But on January 27, 2022, the United States District Court for the District of Columbia vacated BOEM's August 31, 2021 Record of the Decision for Lease Sale 257.  *Friends of the Earth v. Haaland*, No. CV 21-2317, 2022 WL 254526 (D.D.C. Jan. 27, 2022), *appeals filed* Nos. 22-5037, 22-5067 (D.C. Cir. Feb. 11 & Mar. 21, 2022).

BOEM also restarted the process to proceed with Lease Sale 258, but canceled that sale due to lack of industry interest.  On October 29, 2021, BOEM published in the Federal Register a notice of availability for a draft Environmental Impact Statement analyzing the potential environmental impacts of proposed Lease Sale 258.  86 Fed. Reg.  60,068 (Oct.  29, 2021).  This initiated a 45-day public comment period.  *See id.*  BOEM did not receive any nominations or direct indications of interest from potential bidders.  *See* U.S. Dep't of the Interior, Sale 258 Status Update,  https://www.boem.gov/oil-gas-energy/leasing/sale-258-status-update.  Because of the lack of industry interest, and consistent with prior BOEM practice in Alaska, BOEM decided not to proceed with Lease Sale 258.  *Id.*

*Record Order*: On November 17, 2021 the Court issued its Record Order addressing the Parties' disputes about the completeness of the two administrative records lodged with the Court.  Record Order, Doc. 180.  Although Plaintiffs disavowed challenging final agency actions that post-date the Complaint, *see* Doc. 179 at 2, the Court nonetheless interpreted Plaintiffs' Complaint as "attacking each and every OCSLA and MLA lease sale that was cancelled or postponed following Executive Order 14008," including "actions taken on April 21, 2021, regarding second-quarter lease sales."  Record Order at 7.  It then directed Defendants to "complete" the administrative

8

records by adding all documents and materials directly or indirectly considered by agency decisionmakers with respect to each of those cancellation or postponements, including those occurring after the date of the Complaint. *Id.* at 8. After Defendants lodged new administrative records with the Court for post-filing agency actions, Docs. 186, 192, Plaintiffs withdrew their discovery motion, Doc. 193.

## THE STANDARDS OF REVIEW

### I.     Judicial Review of Agency Action; the APA Standard

The Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, governs judicial review of agency actions. Courts may "set aside" agency action that is arbitrary and capricious or contrary to law. 5 U.S.C. § 706(2). And courts may "compel" unreasonably delayed agency action. *Id.* § 706(1). Because judicial review is confined to "circumscribed, discrete agency actions," however, courts lack broader supervisory authority over agencies. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

### II.    Summary Judgment as Applied to Review of Agency Actions

When evaluating summary judgment motions involving APA review, "the [c]ourt does not apply the standard of review set forth in Rule 56." *Boquet Oyster House, Inc. v. United States*, No. CIV.A. 09-3537, 2011 WL 5187292, at *4 (E.D. La. Oct. 31, 2011) (citations omitted). Instead, "[t]he administrative agency is the fact finder," *Girling Health Care. Inc. v. Shalala*, 85 F.3d 211, 214-15 (5th Cir. 1996), such that "the district court's review pursuant to a summary judgment motion cannot turn on credibility determinations or conflicting factual inferences," *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 679 (5th Cir. 1992).

### III.     The Permanent Injunction Standard

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). An injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Because the "rule embodies the elementary due process requirement of notice," *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975), "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed," *Scott v. Schedler*, 826 F.3d 207, 211–12 (5th Cir. 2016).

## ARGUMENT

### I.     The Court Lacks Jurisdiction Over Any Agency Action.

#### A.     The Court lacks jurisdiction over post-filing agency actions.

The Court lacks jurisdiction over any agency actions that occurred after the Complaint was filed, as courts have jurisdiction to review only final agency actions that existed, that were ripe, and for which there was standing at the outset of the suit. Because subject matter jurisdiction "is determined at the outset of the suit," *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir. 1974), and because agency action cannot be deemed "final" before it has happened, the Court lacks jurisdiction over challenges to individual agency actions post-dating March 24, 2021.

As the Fifth Circuit has repeatedly held, courts lack jurisdiction to review agency actions that are not yet final. *E.g.*, *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) ("If there is no 'final agency action,' as required by the controlling statute, a court lacks subject matter jurisdiction." (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Like any jurisdictional requirement, the final agency action requirement must be met at the outset of the suit. *E.g.*, *Veldhoen*, 35 F.3d at 225 ("Normally, the plaintiff must await resolution of the agency's

inquiry and challenge the final agency decision."). And agency actions that become final after the commencement of litigation do "not operate to breathe life into Plaintiffs' formerly deficient Complaint." *Palmer v. Sun Coast Contracting Servs., LLC*, No. 1:15-cv-34, 2015 WL 5823938, at *3 (S.D. Miss. Oct. 6, 2015) (dismissing February lawsuit seeking to challenge action that did not become final until April); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 510 & n.19 (5th Cir. 2012) (rejecting argument that post-filing event could create jurisdiction, which the plaintiff "had to establish . . . at the time his suit was filed").

The standing, ripeness, and final agency action requirements must be met for each challenged agency action because jurisdictional requirements are "not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).[2] "If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law." *Id.* Because a claim brought under the APA must target discrete "final agency action," 5 U.S.C. § 704, "[e]ach specific final agency action should be treated as giving rise to an independent claim." *Donelson v. U.S. Dep't of Interior*, 730 Fed. Appx. 597, 602 (10th Cir. 2018); *accord Sierra Club v. Peterson*, 228 F.3d 559, 566 n.11 (5th Cir. 2000) (en banc) (assessing "justiciability problems" for each "of the individual acts" challenged). Indeed, the *en banc* Fifth Circuit specifically rejected the argument that challenges to "sales which have not yet occurred" were "made justiciable by the fact that [plaintiffs] identified some specific sales in their pleadings that they argue are final agency actions." *Peterson*, 228 F.3d at 566–67.

Despite these principles, the Court's Record Order characterized the Complaint as "attacking each and every OCSLA and MLA lease sale that was cancelled or postponed following

---

[2] Defendants do not concede the finality of any challenged agency actions. *See infra* 18–19.

Executive Order 14008," Record Order at 7, including "actions taken on April 21, 2021, regarding second-quarter lease sales." *Id.* at 8. That characterization deviated from the Court's prior order, where it had declined to interpret Plaintiffs' Complaint "as a 'blanket' challenge to '*all* of the Government's actions with respect to *all* . . . leases.'" Report & Recommendation, Doc. 154, at 27 (quoting *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014)); *see also* Doc. 170 (adopting Report & Recommendation). That characterization also deviates from Plaintiffs' own characterization of their Complaint, which Plaintiffs have explained did "not . . . challenge these post-filing actions as independent final agency actions." Doc. 179 at 2.[3] Consistent with their prior characterization, Plaintiffs have not challenged BLM's April 21, 2021 decision as an independent final agency action, as their merits brief does not even mention that decision, let alone cite its administrative record. *See* Doc. 199-1.

---

[3] Plaintiffs notably have not explained how they could challenge post-filing agency actions as something other than "independent final agency actions." Doc. 179 at 2. The *en banc* Fifth Circuit has held that plaintiffs must "limit their challenge to individual sales," and cannot circumvent "justiciability problems" for "individual acts . . . by consolidating them into [a] programmatic challenge." *Peterson*, 228 F.3d at 566–67 & n.11. While Plaintiffs nonetheless contend that these post-filing actions are "relevant" as "evidence of the Department-wide Pause," Doc. 179, at 2, that evidentiary argument violates the foundational principle that an administrative record must contain only materials before the agency at the time of its challenged decision. *See Milena Ship Mgmt. Co. v. Newcomb*, 995 F.2d 620, 624 (5th Cir. 1993) ("we base our review of an administrative action 'on the full administrative record that was before the administrative officer . . . *at the time he made his decision*'" (emphasis added) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)); *see also Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) ("To ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'" (quoting *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997))). Thus, if the challenged final agency action is an alleged Department-wide Pause in place by the time Plaintiffs filed their Complaint, post-filing actions cannot be part of the administrative record for an alleged Department-wide Pause because they were not before the agency at the time of the alleged Department-wide decision and thus could not have been considered, either directly or indirectly, in reaching that alleged decision.

The Court's expansive interpretation of the Complaint in the Record Order now requires the Court to dismiss those aspects of the Complaint that purport to challenge post-filing actions, including any inferred challenges to "actions taken on April 21, 2021," Record Order, at 8, because such actions did not occur until nearly a month after Plaintiffs filed their Complaint. *Palmer*, 2015 WL 5823938, at *3 (reciting "the well-settled principle that if jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss" (internal citations and quotation omitted)). "Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of [5 U.S.C. §] 551(13)." *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)); *accord Peterson*, 228 F.3d at 566–67. They also have the burden of demonstrating ripeness and standing as to each challenged agency action. Plaintiffs have failed to meet those burdens with respect to post-filing actions, and indeed have disavowed challenging such actions. Doc. 179 at 2; Doc. 199. Accordingly, the Court lacks jurisdiction over post-filing actions.

### B.     The Court lacks jurisdiction over three onshore postponements, including BLM's January 25 Nevada postponement.

Because "standing is not dispensed in gross," Plaintiffs must establish standing to challenge each of the individual agency actions before the Court. *Lewis*, 518 U.S. at 358 n.6. Plaintiffs contend that they have standing to challenge certain individual postponements because they deprive Plaintiff States of lost revenue from lease sales. Mem. 10–11. But none of those arguments apply to onshore postponements in three non-Plaintiff States—Colorado, Wyoming, and Nevada—as the Plaintiff States have no entitlement to revenue from those sales.[4]

---

[4] Although Plaintiffs also make generalized claims of lost jobs or investments, they provide no evidence that those alleged injuries are fairly traceable to postponements in these three States.

Of particular note, Plaintiffs have no standing to challenge BLM-Nevada's January 25, 2021 decision to postpone its Q1 2021 lease sale that the Court earlier singled out, as Nevada is not a Plaintiff here.  In that decision, which was made before the Executive Order issued, BLM-Nevada decided to postpone its Q1 2021 decision for the same reason that it postponed its Q4 2020 decision: NEPA compliance, SMF ¶ 29, but BLM has since issued a competitive sale notice in Nevada, *see* Doc. 198-2.  "If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law."  *Lewis*, 518 U.S. at 358 n.6.

### C.     The Court lacks jurisdiction over BLM's March 1 postponement.

The only challenged onshore decision that was not based on NEPA concerns is BLM's March 1, 2021 decision to temporarily postpone a proposed April 2021 lease sale in New Mexico. SMF ¶¶ 29–30.  But the Court has no jurisdiction over that decision, because it was not a final agency action.  To be final, agency action must meet two requirements: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 580–81 (5th Cir. 2016) (internal quotations omitted).  Neither of these conditions is met as to the March 1 decision.

*First*, that decision was only a tentative decision about how to proceed with BLM-NM's Q2 2021 sale in the "meantime" "pending decisions on how the Department will implement the Executive Order . . . with respect to onshore sales," when the "Department ha[d] not yet rendered any such decisions."  BLM_I001180.  Because BLM had "the flexibility to hold the sale [no later than] the end of the Quarter (end of June)" by moving the sale date, BLM_I002424, BLM had not

14

yet consummated its decisionmaking on whether BLM-NM (let alone any other BLM office) would hold a Q2 2021 sale. Had BLM already decided on March 1, 2021 that it would not hold a Q2 2021 sale, then its subsequent April 21, 2021 decision that it would not hold such a sale would have been superfluous. SMF ¶ 28.

*Second*, no rights or obligations were determined by the March 1 decision, as the agency did not decide at that time whether it would decline to offer any New Mexico parcels for sale in Q2 2021. Instead, it was only deciding to postpone a proposed April sale, while it had the unquestioned "flexibility" to reschedule that sale to occur later in the quarter (e.g., by June). BLM_I002424.

### D. The Court lacks jurisdiction to review agency programs consisting of numerous individual agency actions.

Under the APA, the Court lacks jurisdiction to review entire agency programs and instead must confine its review to an "identifiable" "specific and final agency action." *Peterson*, 228 F.3d at 561, 565–67 & n.11 (holding that a district court "exceeded its jurisdiction in hearing [a] challenge" that was not "limited" to "identifiable final agency actions"). "[T]his prohibition is motivated by institutional limits on courts which constrain [their] review to narrow and concrete actual controversies" to "avoid encroaching on the other branches of government." *Id.* at 566. As the Supreme Court has explained, Plaintiffs "cannot seek wholesale improvement of [BLM's] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 891.

The *en banc* Fifth Circuit has explained how those principles apply to disputes over natural resource sales: plaintiffs must "limit their challenge to individual sales" and cannot "challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program." *Peterson*, 228 F.3d at 567. Rather than limit their challenge to individual sale decisions,

the *Peterson* plaintiffs "merely used these sales as evidence to support their sweeping argument that the Forest Service's 'on-the-ground' management of the Texas forests" was unlawful. *Id.* The Fifth Circuit thus reversed the district court's "broad relief barring almost all timber harvesting in the Texas forests." *Id.* In doing so, the Fifth Circuit explained how courts should distinguish between proper challenges to specific and identifiable agency actions involving natural resource sales and improper challenges to general management practices: while courts may review a challenge limited to "seven timber sales" that "sought relief only as to these sales, and did not attempt to challenge the Forest Service's general administration of national forests," *id.* at 569 & n.13, courts cannot review claims "broadly challenging Forest Service practice in the Texas forests" and seeking "systemwide relief," *id.* at 565 & n.10.

Under *Peterson*, Plaintiffs' challenge to the programmatic state of "the Pause" falls on the unlawful side of that divide, as demonstrated by Plaintiffs' arguments, evidence, and requested relief. Plaintiffs contend that "the Pause systematically cancels lease sales," demonstrating that their challenge is directed at a system rather than discrete agency actions. Mem. 10. As evidence, Plaintiffs do not rely on administrative records for discrete decisions; instead, they direct the Court to speculation about "future" agency actions that have not yet occurred. *Id.* at 9. Finally, and most critically, they seek sweeping relief that goes far beyond the nine individual pre-filing sale postponements, and is instead directed at the entire "oil and gas leasing framework." Doc. 199-12. Plaintiffs unlawfully ask the Court to impose "wholesale" changes by "court decree," *Lujan,* 497 U.S. at 891, enjoining Interior in perpetuity "from withholding or delaying oil and gas lease sales under OCSLA and the MLA." Doc. 199-12. Such relief would have an unlawful wholesale effect, requiring Interior to hold 100% of potential lease sales, in stark contrast to its

56% historical offshore rate from 1980 to 2017 (SMF ¶ 39) and its 27% historical onshore rate from 2017 through 2020 (SMF ¶¶ 23–24).

At the pleading stage, the Court held that Plaintiffs' challenge to alleged OCSLA and MLA leasing moratoria could proceed by construing those challenges as being "specifically targeted towards the Secretary's *unwritten* decision to postpone and cancel previously scheduled lease sales under the MLA and OCSLA." Doc. 154, at 27 (emphasis added). The administrative records, however, demonstrate that there was no such unwritten decision when Plaintiffs filed suit. SMF ¶¶ 26–28; BLM_I002421 (reversing a postponement because "there's not a blanket policy even with direction in the [Executive Order]"). Of the nine individual postponements that occurred before Plaintiffs filed suit, eight of them have specific, discrete, written rationales that constrain the Court's review.[5] And post-filing decisions, such as BLM's April 21, 2021 decision not to hold Q2 2021 lease sales and BOEM's May 13, 2022 decision to cancel Lease Sale 258 for lack of industry interest, also have written rationales that would be superfluous if Interior had already made an unwritten decision to postpone those sales. SMF ¶ 28. In sum, the legally empowered factfinder[6] has explicitly determined that there was no "blanket policy" against leasing when Plaintiffs brought suit. SMF ¶¶ 26–28. And where BLM or BOEM deferred or cancelled specific lease sales and the agencies stated their reasons for those actions, the Court cannot "reject [those] stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).

---

[5] The only pre-filing postponement without a written rationale is a January 25, 2021 Nevada postponement that predates the Executive Order. That postponement is outside the Court's jurisdiction because the thirteen Plaintiff States lack standing to challenge the Nevada postponement. *See supra* 13–14.

[6] As explained *supra* 9, the agency, not the Court, is the factfinder at this stage.

Plaintiffs attempt to salvage their programmatic challenge by focusing on the alleged "across-the-board nature of the pause," Mem. 15, but fail to identify any "specific order or regulation, applying some particular measure across the board to all" leasing decisions, as required to avoid dismissal as an improper programmatic challenge under *Lujan*, 497 U.S. at 890 n.2.  The administrative records before the Court reflect that there is no such across-the-board rationale; while offshore lease sales were temporarily postponed, but not cancelled, to implement the Executive Order, most onshore sales were postponed because of NEPA compliance concerns, SMF ¶ 29.  And post-filing actions reflect additional reasons, from complying with a nationwide injunction sought in a separate case by six of the Plaintiffs here, *id.* ¶¶ 34–38, to a lack of industry interest in leasing off Alaska's coast, *supra* 8.  Given these different bases for different actions, Plaintiffs have failed to identify "any specific order or regulation" from Interior that applies "some particular measure across the board to all" leasing decisions, as required to avoid dismissal under *Lujan*, 497 U.S. at 890 n.2.

In sum, the Court lacks jurisdiction to either entertain Plaintiffs' programmatic challenge or grant Plaintiffs' programmatic relief.

### E.      The Court lacks jurisdiction to review individual postponement decisions under § 706(2) of the APA, as those decisions were not final agency actions.

Additionally, the other eight challenged individual actions are not final agency actions that can be reviewed under the APA.  Deferrals or postponements of agency decisions are not "final" agency actions because they are necessarily interlocutory in nature.  *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 68 (D.C. Cir. 2000) ("A decision by an agency to defer taking action is not a final action reviewable by the court."); *Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 701 (S.D. Ill. 2004) (postponing a decisional process regarding public land use "does not mark the consummation of an agency decisionmaking process but instead reflects an interim or

interlocutory decision to postpone the decisionmaking process to a more convenient time and to a more comprehensive process.  It is not, as the plaintiffs imply, an affirmative agency decision to prohibit" use).  BOEM's final actions—holding Lease Sale 257 and cancelling Lease Sale 258 on bases not challenged here—further demonstrate the Court lacks jurisdiction for the independent reason that Plaintiffs' claims addressing those sales are now moot; the Court cannot order relief that would have any effect on those actions. *Texas Off. of Pub. Util. Couns. v. F.C.C.*, 183 F.3d 393, 413–15 (5th Cir. 1999) (explaining "[a]ny further judicial pronouncements . . .  would be purely advisory" and dismissing plaintiffs' challenge to the agency's subsequent actions that had rendered the initial claims moot).

In particular, BOEM's two challenged decisions were not final decisions that BOEM would not hold Lease Sale 257 or 258; they were not even final decisions that BOEM would not hold those in 2021, as proposed by the Five-Year Program.  Instead, BOEM's decisions were merely interlocutory decisions to postpone the decisionmaking process to a later date.  Consistent with that understanding, BOEM has since held Lease Sale 257 and cancelled Lease Sale 258 for lack of industry interest.  Similarly, BLM's challenged decisions were not "affirmative agency decision[s] to prohibit" leasing.  *Nicholas*, 343 F. Supp. 2d at 701.  Those decisions were merely interlocutory decisions that BLM needed additional time to review and revise NEPA analysis in order to decide how to proceed with those sales.  Once BLM completed its NEPA analysis—and an intervening nationwide injunction was stayed—BLM noticed those sales, scheduling them for June.  SMF ¶¶ 32-38.

**F.      The Court lacks jurisdiction to compel lease sales.**

Additionally, the Court lacks jurisdiction to compel Defendants to hold lease sales.  The Supreme Court has explained that courts may compel agency action "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S.

at 64.  The Fifth Circuit has similarly held that courts cannot compel agency action unless plaintiffs "demonstrate that a government officer owes [plaintiffs] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).  That ministerial act's "performance must be positively commanded and so plainly prescribed as to be free from doubt." *Id.*

As explained *supra* 2–4, neither the MLA nor OCSLA impose such "discrete," "ministerial" and "plainly prescribed" duties on Interior.  As more fully explained in Defendants' Opposition, Interior's substantial discretion over leasing decisions has been repeatedly affirmed by numerous courts.  Opp'n 11–15.  Given that discretion, the Court cannot compel Interior to hold any specific sale, let alone hold sales across-the-board, without exceeding its authority under the APA.  *See Norton*, 542 U.S. at 64.

### G.     The Court lacks jurisdiction over the Executive Order.

As explained in Defendants' Opposition, the Court lacks jurisdiction to review the Executive Order under the APA or for statutory compliance.  Opp'n 11–12, 24.  Because the Executive Order is a lawful exercise of the President's constitutional authority to supervise the Executive Branch—and the Order's directives can be lawfully implemented—the Court has no jurisdiction to review that Presidential action.  *Id.*

### H.     The Court lacks jurisdiction over Plaintiffs' citizen suit claim.

Although Plaintiffs have not prosecuted their citizen suit claim, *see* Mem., the Court lacks jurisdiction over any such challenges to agency action under OCSLA's citizen suit provision.  *See OXY USA Inc v. Babbitt* (*OXY*), 122 F.3d 251, 258 (5th Cir. 1997) ("We do not think that Congress intended for the citizen suit provision to operate either as a means of obtaining 'umbrella' review for a series of agency decisions that were or will be otherwise subject to judicial review under the

APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency.").

## II.     The Court Is Prohibited From Issuing Plaintiffs' Requested Relief.

### A.     Plaintiffs' Requested Injunction Is Prohibited By 28 U.S.C. § 2401(a).

Plaintiffs ask the Court to issue an injunction that prohibits Interior from exercising regulatory authority that was established over three decades ago.  *See* 43 C.F.R. § 3120.1-3. Because such facial challenges to regulations must be brought within six years of their issuance, Plaintiffs' requested relief is barred under 28 U.S.C. § 2401(a).

Fifth Circuit law establishes that "[o]n a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register."  *Dunn-McCampbell Royalty*, 112 F.3d at 1287.  In 1988, Interior published a regulation establishing the Assistant Secretary of Land and Minerals Management's authority to "suspend a lease sale for good and just cause" upon receipt of an "appeal from a decision by the authorized officer to hold a lease sale" in the form of a "Notice of Competitive Lease Sale."  43 C.F.R. § 3120.1-3.  Plaintiffs did not challenge that regulation within six years of its issuance.

Plaintiffs nonetheless request an injunction that would facially enjoin the Assistant Secretary from exercising that regulatory authority.  *See* Doc. 199-12 (proposing that the Court permanently enjoin Interior "from withholding or delaying oil and gas lease sales under . . . the MLA").  Because Plaintiffs' request for such an injunction is at least a quarter-century late, Plaintiffs' claim is barred under § 2401(a).

### B.     Plaintiffs' Requested Injunction Is Barred By Rule 65.

Federal Rule of Civil Procedure 65(d)(1) requires "[e]very order granting an injunction" to "state its terms specifically" and "describe in reasonable detail—and not by referring to the

complaint or other document—the act or acts restrained or required." Plaintiffs' requested injunctive relief violates this Rule in several ways.

*First*, despite the requirement to state terms "specifically," Plaintiffs propose that the Court enjoin "the Pause," Doc. 199-12, even though Plaintiffs have never once defined this capitalized term. That omission is particularly telling because their brief uses the term 69 times, *see generally* Mem., to mean at least three distinct things, Opp'n 15–17. Although the Court's preliminary injunction order referenced "the Pause . . . set forth in Section 208, Executive Order 14008," Doc. 140, Plaintiffs' proposed permanent injunction appears to use the term "Pause" to mean something distinct from "Section 208 of Executive Order 14,008," *see* Doc. 199-12.

*Second*, unwilling to define "the Pause" themselves, Plaintiffs instead ask the Court to do that work for them. *See* Doc. 199-12 (proposing that the Court "describe[] in [its] Memorandum Ruling" "the Pause of offshore and onshore oil and gas leasing"). But Rule 65 requires every injunction to "describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added). Because Plaintiffs are incapable of defining this term in a non-programmatic way, the Court cannot do so either. *See supra* 15–18.

*Third*, Plaintiffs double-down on their ambiguity by asking the Court to enjoin not only the undefined-but-capitalized "Pause" but also "any similar pause or delay of oil and gas leasing framework." Doc. 199-12. Such ambiguity fails to meet the specificity requirements of Rule 65, which requires that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed," *Scott*, 826 F.3d at 211–12. As Plaintiffs have not defined "the Pause" in a non-programmatic manner, their request for an injunction against

22

"any similar pause or delay" to however the Court describes "the Pause" in its forthcoming Memorandum Ruling violates the due process principles embodied in Rule 65.

The foregoing flaws in Plaintiffs' requested injunctive relief are not mere technical defects, as these issues go to foundational statutory and constitutional limits on judicial authority.  Under Supreme Court law, requests for "wholesale" changes in Interior's programs cannot be sought by "court decree," and are instead reserved for "the offices of the Department or the halls of Congress." *Lujan*, 497 U.S. at 891.  Plaintiffs tacitly recognize that they are not entitled to a court decree compelling lease sales to occur, *see* Doc. 199-12 (proposing no such decree), so they instead propose the Court take an ambiguous first step that restrains, but does not require, unspecified acts. But the Court cannot issue such an ambiguous order under Rule 65.

### C.       Plaintiffs are not entitled to nationwide relief.

"[N]ationwide injunctions have not been good for the rule of law."  *Arizona v. Biden*, 31 F.4th 469, 485 (6th Cir. 2022) (C.J. Sutton, concurring).  As the Fifth Circuit recently held, "[p]rinciples of judicial restraint" counsel against allowing "one district court [to] make a binding judgment for the entire country" when "many states . . . have not brought suit" and "[o]ther courts are considering these same issues."  *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (staying this Court's nationwide injunction against a vaccine mandate to the extent it applied outside the plaintiff states).

The same considerations apply here.  Thirty-five other States have not brought suit, suggesting they "may well have accepted and even endorsed" the challenged actions.  *Id.*  Two other courts are currently considering similar challenges to onshore actions, and both of them have declined to issue preliminary relief.  *See W. Energy All. v. Biden*, No. 21-cv-13 (D. Wyo.); *North Dakota v. Dep't of Interior*, No. 21-cv-148 (D.N.D.).  Because similar questions are "currently being litigated throughout the country," "ultimate resolution [of these issues] will benefit from 'the

airing of competing views' in" sister courts. *Louisiana*, 20 F.4th at 264 (quoting *Dep't of Homeland Sec. v. New York*, ––– U.S. ––––, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of a stay)).

Although this Court issued nationwide preliminary relief, its nearly identical rationale for doing so in *Louisiana v. Becerra* was specifically rejected by the Fifth Circuit as inapplicable outside the immigration context. *Id.* at 263 ("That justification existed in *Texas* because of the constitutional command for 'uniform' immigration laws and a concern that 'a geographically limited injunction would be ineffective because DAPA beneficiaries would be free to move among states."). Similarly here, there is no constitutional basis for a uniform approach to oil and gas leasing. BLM manages widely varying amounts of mineral estate in different States, from zero acres in some States to over 200 million acres in Alaska. SMF ¶ 25. Given that variance, there is no reasoned basis for a uniform, nationwide approach.

Further, Plaintiffs have not shown that they will be irreparably harmed by leasing postponements in other States, such as Nevada or Colorado, that have declined to bring suit. Because Plaintiffs have no entitlement to leasing revenues from lands in those States, there is no basis for a nationwide injunction.

### D.     Plaintiffs are not entitled to declaratory relief.

Finally, Plaintiffs are not entitled to their requested declaration that the Executive Order is unlawful. *See* Doc. 199-12. Plaintiffs have not alleged that the President has violated his constitutional authority; nor could they given the President's constitutional authority to supervise the Executive Branch. And "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review under the" exception for suits challenging *ultra vires* actions recognized in *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992). *Dalton v. Specter*, 511 U.S. 462, 473–74 (1994). Further, as explained in Defendants' Opposition,

the Executive Order is both facially and substantively lawful. Opp'n 11–15. Because the President has not violated any statutory authority, but instead merely instructed the Secretary of the Interior how to exercise her congressionally delegated authority to manage the public lands "to the extent consistent with applicable law," there is no lawful basis for *ultra vires* review of the Executive Order. *See Dalton*, 511 U.S. at 470.

Additionally, the Court lacks jurisdiction to issue a freestanding declaratory judgment about agency authority under OCSLA and the MLA because Congress has not waived sovereign immunity to such claims. *Burns Ranches, Inc. v. U.S. Dep't of the Interior*, 851 F. Supp. 2d 1267, 1270 (D. Or. 2011) ("The fact that a court may grant declaratory relief against any type of defendant in a case otherwise within the court's jurisdiction does not imply, let alone expressly state, that the United States has waived its immunity for all declaratory relief claims."). Instead, the only waiver of sovereign immunity conceivably applicable to Plaintiffs' case is the waiver of sovereign immunity in the APA, which is expressly limited to agency actions. 5 U.S.C. § 702. Thus, while the Court has jurisdiction to hold unlawful a specific, discrete, final agency action based upon reviewing an administrative record, Congress has not issued a broader waiver of sovereign immunity for declaratory relief against the United States divorced from an agency action. *Burns Ranches*, 851 F. Supp. 2d at 1270–71 (collecting cases throughout the country).

E.     **Plaintiffs are not entitled to any other relief.**

Plaintiffs' Motion last requests that the Court grant other relief including attorneys' fees and costs. Mot. 2. Because Plaintiffs have not briefed the basis for any such relief, the Court cannot grant the requested relief.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgement.

Respectfully submitted this 13th day of June, 2022.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S.  Department of Justice

*/s/ Michael S. Sawyer*
THOMAS W.  PORTS, JR.
MICHAEL S.  SAWYER
Trial Attorneys, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:    (202) 305-5492 (Ports)
              (202) 514-5273 (Sawyer)
Fax:          (202) 305-0506
Email:        Thomas.Ports.Jr@usdoj.gov
              Michael.Sawyer@usdoj.gov

*Counsel for Defendants*

26