# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| STATE OF LOUISIANA, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  2:21-cv-00778 |
| | ) | |
| v. | ) | |
| | ) | Honorable Judge Terry A. Doughty |
| JOSEPH R. BIDEN, JR., in his official capacity | ) | |
| as President of the United States, ET AL. | ) | Magistrate Judge Kathleen Kay |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submit this Reply in Support of their Cross-Motion for Summary Judgment (Cross-Mot.), Doc. 209-1.  As explained below, Plaintiffs' Opposition (Opp'n), Doc. 217, provides no basis for denying Defendants' cross-motion for summary judgment.

**I.      Forty Years Of Settled Law And Leasing History Demonstrate That Plaintiffs' *Ultra Vires* Claim Fails Because Executive Order 14,008 Can Be Lawfully Implemented.**

Section 208 of Executive Order 14,008 directs the Secretary of the Interior (Interior) to "the extent consistent with applicable law, [to] pause new oil and natural gas leases . . . pending completion of a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices."  86 Fed. Reg. 7619, 7624.  Thus, as Plaintiffs recognize, their *ultra vires* challenge cannot proceed unless Section 208 *cannot* be implemented "consistent with applicable law," *i.e.*, "it provides no mechanism for an agency to actually implement the order consistent with law."  Doc. 199-1, at 12.[1]  Plaintiffs concede, however, the prevalence of numerous uncontested leasing postponements over the last forty years in both leasing programs.  *See* Pls.' Resp. to Defs.' Statement of Material Facts (PRSMF) ¶¶ 23, 24, 39, Doc. 216.  As to sales under the Mineral Leasing Act (MLA), Plaintiffs concede that such sales occurred in the Plaintiff States in only 27% of the quarters from 2017 to 2020—foregoing sales at a 73% rate.  *Id.* ¶ 23.  They further concede that most Plaintiff States experienced at least seven consecutive quarters without any lease sales from 2017 to 2020.  *Id.* ¶ 24.  And Plaintiffs have not claimed that such significant periods without leasing were unlawful, let alone sought judicial review of those extended periods.

---

[1] Because Section 208 is constrained to apply only "the extent consistent with applicable law," the Court need not evaluate Plaintiffs' contention that Executive Orders in theory may be reviewed for statutory compliance.  To be clear, though, that contention fails. Cross-Mot. 20, 24.  Contrary to Plaintiffs' claim, *see* Opp'n 15, the Supreme Court in *Dalton v. Specter* merely "assume[d] for the sake of argument" that some Presidential actions could be reviewed for violation of a statutory mandate, before concluding that the Presidential action before it was unreviewable. 511 U.S. 462, 474 (1994).

For example, among the reasons that a specific oil and gas sale could be delayed is the requirement that National Environmental Policy Act (NEPA) analysis be completed before the specific sale occurs.  Plaintiffs concede that there is thirty-five years of consistent understanding in both the Legislative and Executive Branches that BLM must comply with its NEPA obligations before holding lease sales.  *Compare* Cross-Mot. 2–3 (explaining that "eligible lands are [not] available for leasing," 30 U.S.C. § 226(b)(1)(A), unless all statutory requirements are met, including compliance with NEPA), *with* Opp'n (omitting any response).  Faced with this consistent understanding, Plaintiffs ask the Court to render the § 226(b)(1)(A) phrase "where eligible lands are available" meaningless, *see* Opp'n 15, in violation of the "rule against superfluities," *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions . . . ." (citation omitted)).  Because Plaintiffs offer no contrary interpretation of this statutory phrase—let alone an interpretation that excludes compliance with NEPA and other statutory requirements—Plaintiffs have failed to demonstrate that there is no mechanism for lawfully implementing Section 208 for onshore lease sales.

As to leasing under the Outer Continental Shelf Lands Act (OCSLA), Plaintiffs do not dispute that *every* prior five-year leasing program scheduled more sales than were ultimately held.  PRSMF ¶ 39.[2]  Nor do Plaintiffs dispute that Interior held only 115 out of 204 scheduled sales from 1980 to 2017—foregoing scheduled sales at a rate of 44% during that period.  *Id.*  And Plaintiffs admit that OCSLA authorizes the Secretary of the Interior to revise a five-year program, thus demonstrating that Interior could lawfully implement Section 208 for offshore lease sales,

---

[2] Although Plaintiffs dispute this statement as "lacking in context," they do not provide any evidence to dispute the Congressional Research Service report offered by Defendants, as required by Federal Rule of Civil Procedure 56(c).  *See* PRSMF ¶ 39.

even under Plaintiffs' theory of the case, by following the procedures required to formally revise the program under 43 U.S.C. § 1344.  *See* Opp'n 15.

In sum, Plaintiffs' *ultra vires* challenge to Section 208 asks the Court to reject forty years of consistent history and law establishing that leasing postponements can be lawful, both onshore and offshore.  Because Plaintiffs do not dispute this history, they instead ask the Court to misconstrue Section 208 as "veto[ing] the MLA" or requiring "an indefinite leasing moratorium." *Id.*  But Section 208 does neither; it directs the Secretary of the Interior to "pause new oil and gas leases" only "[t]o the extent consistent with applicable law" while her review and reconsideration is ongoing.  That means that if Interior "is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).  To the extent that Plaintiffs disagree whether particular leasing postponements are lawful, the appropriate way to resolve those disputes is through a challenge to the disputed postponements, not a wholesale *ultra vires* challenge to Section 208.

## II.    Plaintiffs Do Not Dispute That The Court Lacks Jurisdiction Over All But Three Individual Postponements That Plaintiffs Have Not Challenged On The Merits.

Plaintiffs do not respond to Defendants' lead argument that the Court lacks jurisdiction over agency actions that postdate the March 24, 2021 Complaint.  *Compare* Cross-Mot. 10–13 (explaining lack of jurisdiction), *with* Opp'n (omitting any response).  Because Plaintiffs concede that the Court lacks jurisdiction over post-filing agency actions—and that they have not challenged those actions, Doc. 179 at 2—the Court's jurisdiction over Plaintiffs' Administrative Procedure Act (APA) claims is limited to the nine identified actions that occurred before Plaintiffs filed suit.

Of those nine individual actions, Plaintiffs do not dispute that they lack standing to challenge three onshore postponements in the nonparty States Colorado, Nevada, and Wyoming.

3

*Compare* Cross-Mot. 13–14 (explaining that Plaintiffs failed to establish any injury flowing from the postponement of lease sales in nonparty states), *with* Opp'n (omitting any response).  Because Plaintiffs have provided no theory—let alone evidence—of injury from the postponements of lease sales in nonparty States, the Court has no jurisdiction over those actions.

Of the six remaining individual actions, Plaintiffs do not dispute that their challenge to the two offshore actions is moot because the challenged pre-filing actions involving Lease Sales 257 and 258 have been overtaken by post-filing decisions to hold Lease Sale 257 and to cancel Lease Sale 258 for a lack of industry interest.  *Compare* Cross-Mot. 19 (explaining that challenges to Lease Sales 257 and 258 are moot), *with* Opp'n (omitting any response).  Because the Court cannot grant any effective relief as to Lease Sales 257 and 258, any dispute over the pre-filing postponements involving those sales is moot.

Of the four remaining individual actions, Plaintiffs offer no argument that BLM's March 1, 2021 decision to defer its early Q2 2021 sale in New Mexico was final agency action.  *Compare* Cross-Mot. 14–15 (describing interlocutory nature of the short-term March 1 postponement, and its replacement by a superseding final decision on April 21, 2021), *with* Opp'n (omitting any response).  As BLM did not decide whether to proceed with Q2 2021 sales until April 21, 2021—after Plaintiffs filed suit—the Court has no jurisdiction to review BLM's temporary March 1, 2021 decision; that earlier decision did not mark the consummation of BLM's decisionmaking process concerning whether to proceed with a Q2 2021 sale in New Mexico.

In sum, Plaintiffs do not dispute that all but three individual postponements are outside the Court's jurisdiction.  The three remaining decisions—BLM's decisions to postpone proposed Q1 2021 sales in its Utah, Montana/Dakotas, and Eastern States Offices—were all documented in written memoranda as being based on specific concerns about NEPA compliance.  BLM_I001163–

4

66; BLM_I001169–70.  Plaintiffs notably have not offered any argument why those NEPA-based postponements were unlawful.  Plaintiffs instead aver (without evidence) that Defendants' NEPA rationale for postponing lease sales was pretextual.  *See* Opp'n 8 (asserting, without any citation to the BLM administrative record, that BLM's postponements "Rel[ied] Solely on the Pause"); PRSMF ¶ 29 (providing no evidence to dispute the stated NEPA rationales, in violation of Rule 56(c)).  Despite this Court's indication that Plaintiffs' allegations of pretext would "need to be explored on the merits," Doc. 139, at 31, Plaintiffs have come forward with no evidence of pretext and abandoned their efforts to obtain such evidence, *see* Doc. 193.  Because Plaintiffs have failed to carry their heavy burden of demonstrating pretext—and provided no basis to "reject [BLM's] stated reasons for acting"—it matters not that Plaintiffs believe "the agency might also have had other unstated reasons."  *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019).

## III.    Plaintiffs Have Failed To Provide The Requisite Irrefutable Proof That An Agency "Pause" Existed When They Filed Suit.

The most unwieldy portion of Plaintiffs' case is their attempt to challenge an alleged, unwritten agency "Pause" that goes beyond the nine individual pre-filing postponements to establish an agency-wide policy for Interior.  As explained below, Plaintiffs' challenge to an alleged unwritten, agency-wide pause fails because the administrative records that form the basis for judicial review explicitly disclaim such a policy, and Plaintiffs have provided no evidence to controvert that finding, let alone made the requisite showing of "well-nigh irrefragable proof" required to overcome "the normal presumption of good faith" that attaches to government action.  *Marine Shale Processors, Inc. v. E.P.A.*, 81 F.3d 1371, 1385 (5th Cir. 1996) (citation omitted).

The Parties agree on the following: Through Section 208, President Biden directed Interior to pause new oil and gas leases "[t]o the extent consistent with applicable law" pending its review (Doc. 208-1 ¶ 15); Interior acted to postpone two offshore lease sales in February 2021 based on

5

Section 208 (*id.* ¶¶ 16–17); Interior postponed seven onshore lease sales between January and March 24, 2021 (PRSMF ¶¶ 29–30); after Plaintiffs filed suit on March 24, 2021, BLM issued its April 21, 2021 decision not to hold Q2 2021 sales (*id.* ¶ 31); and Plaintiffs have disavowed challenging that April 21, 2021 decision as an independent agency action (*id.*).

The Parties disagree, however, over whether Interior had made an unwritten, final decision to establish a "moratorium on new oil and natural gas leases" before Plaintiffs filed suit on March 24, 2021. *See* Opp'n 18. The record demonstrates that Interior had made no such decision, and Plaintiffs have come forward with no evidence of one. To the contrary, BLM's administrative record specifically states that "there's not a blanket policy even with direction in the" Executive Order, BLM_I002421, that Interior rejected the "'perception' that all future sales would be postponed" as "misinformation," *id.*, and that Interior leadership reversed a state office postponement based on that misinformed perception, Doc. 208-1 pp.19–20. Indeed, BLM's subsequent April 21, 2021 decision not to hold Q2 2021 sales would have been superfluous if BLM had already decided to implement a moratorium on new oil and natural gas leases, *id.* ¶ 28, and moreover, BLM has issued and sold new oil and gas leases while this alleged unwritten moratorium was purportedly in effect, Doc. 134-1 ¶ 2; Doc. 209-3 ¶ 8.

Against all of this evidence, Plaintiffs offer only two unavailing contentions that fall far short of "well-nigh irrefragable proof." *Marine Shale*, 81 F.3d at 1385. *First*, Plaintiffs strangely suggest that Interior's postponement of offshore Lease Sales 257 and 258 based on Section 208 somehow implies that Interior had also decided at the same time to implement an onshore leasing moratorium based on the Executive Order. PRSMF ¶ 26. But BLM's administrative record explicitly refutes Plaintiffs' supposition: after postponing Lease Sales 257 and 258, the

6

"Department ha[d] not yet rendered any" "decisions on how the Department will implement the Executive Order . . . with respect to onshore sales."  BLM_I001180.

*Second*, Plaintiffs misquote Interior statements about the President's Section 208 directive as referring to Interior actions.  Plaintiffs wrongly contend that the Department "published a universal notice that it was 'hitting pause on new oil and gas leasing.'"  PRSMF ¶ 26 (purportedly quoting *FACT SHEET: President Biden to Take Action to Uphold Commitment to Restore Balance on Public Lands and Waters* (Jan. 27, 2021), on.doi.gov/3Rj3Xil).  But that Fact Sheet reveals that the phrase "HITTING PAUSE ON NEW OIL AND GAS LEASING" is merely a heading for a section of the Fact Sheet describing the President's Executive Order, not any action Interior was taking to implement the Executive Order.  *Fact Sheet*, on.doi.gov/3Rj3Xil ("The Executive Order will direct . . . .").  Rather than describe any action the Department had taken to implement the Executive Order, the Fact Sheet states that the Department would consult with stakeholders *before* taking such actions.  *Id.* ("In implementing the Executive Order, the Department of the Interior *will engage* diverse stakeholders across the country . . .").

Plaintiffs' lack of evidence of an allegedly "unwritten" blanket policy underscores that their challenge is nothing more than an unlawful attempt to review the entire oil and gas leasing program in violation of *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (en banc).  In *Peterson*, the *en banc* Fifth Circuit rejected plaintiffs' attempt to use individual "sales as evidence to support their sweeping argument that the [agency's] 'on-the-ground' management" was unlawful, *id.* at 567, "regardless of whether that [management policy was] memorialized in a written agency decision," *id.* at 564 (citation omitted).  The Court should similarly reject Plaintiffs' attempt to use "follow-on actions" like BLM's April 21, 2021 decision involving Q2 2021 sales, PRSMF ¶ 28, as evidence that Interior had earlier adopted an unwritten leasing moratorium.  *See*

*Peterson*, 228 F.3d at 566 (dismissing challenge to "sales which have not yet occurred" as "exceed[ing] the court's jurisdiction under the APA").

Plaintiffs unsuccessfully attempt to distinguish *Peterson* on the ground that it recited the Supreme Court's caveat that plaintiffs "can challenge 'a specific final agency action' [which] has an actual or immediately threatened effect,' even when such a challenge [ultimately] has 'the effect of requiring a regulation, a series of regulations, or even a whole 'program' to be revised by the agency.'" *Id.* at 567 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990)); *see* Opp'n 14.  Plaintiffs tellingly omit the subsequent sentence in *Petersen* that limits this caveat: "However, this ability does not allow [plaintiffs] to challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program, which is precisely what they did here." *Id.*  Like the *Peterson* plaintiffs, Plaintiffs unlawfully seek to challenge the entire oil and gas leasing program by simply identifying specific allegedly improper leasing postponements as evidence of a broader policy they claim has not been "memorialized in a written agency decision," *id.* at 564 (citation omitted).

In sum, Plaintiffs have failed to identify any discrete action that Interior took to implement an unwritten, agency-wide moratorium on issuing new oil and gas leases.  BLM's administrative record specifically states that such a blanket policy did not exist. Although Plaintiffs have identified several postponements that they also challenge on an individual basis, Plaintiffs have provided no basis for the Court to disregard the stated rationales for those postponements, let alone to divine the existence of some unwritten moratorium.  *See Rost v. United States*, No. 21-51064, --- F.4th ---, 2022 WL 3271155, at *7 (5th Cir. Aug. 11, 2022) (rejecting argument that "the government relied on an unwritten 'rule' promulgated without notice and comment" when the government analyzed each situation "on its own facts and circumstances").  Accordingly, the Court

should dismiss Plaintiffs' challenge to an alleged, unwritten agency "Pause" as a programmatic

challenge that lies outside the Court's jurisdiction.

**IV.     The Court Should Deny Plaintiffs' Request For Permanent, Ambiguous, Nationwide Relief.**

The Court should deny Plaintiffs' request for permanent, ambiguous, and nationwide relief,

as Plaintiffs have shown no entitlement to such far-reaching remedies.  As the Supreme Court has

repeatedly cautioned, requests for "systemic" changes in agency behavior are reserved for the

political Branches, *Lujan*, 497 U.S. at 894, because the "prospect of pervasive oversight by federal

courts over the manner and pace of agency compliance with [broad statutory mandates] is not

contemplated by the APA," *Norton v. SUWA*, 542 U.S. 55, 67 (2004).

Plaintiffs' request for permanent injunctive relief violates these fundamental constraints on

judicial authority.  Tellingly, Plaintiffs abandon the request in their proposed order for a permanent

injunction preventing Interior "from withholding or delaying oil and gas lease sales." *Compare*

Cross-Mot. 21 (citing Doc. 199-12), *with* Opp'n 17.  As Defendants explained, that requested relief

is barred by the statute of limitations because it would facially enjoin the Assistant Secretary's

ability to suspend lease sales under 43 C.F.R. § 3120.1-3, a claim that is nearly three decades too

late.  Cross-Mot. 21.  Because Plaintiffs decline to justify that aspect of their requested relief, and

because it is barred as untimely by 28 U.S.C. § 2401(a), that relief must be denied.

Similarly, Plaintiffs' request for an ambiguous injunction against a capitalized-but-

undefined agency "Pause" must be rejected as that injunction would force the Court to engage in

the sort of "pervasive oversight . . . not contemplated by the APA." *Norton*, 542 U.S. at 67.

Plaintiffs' Opposition seeks precisely such unlawful relief, proposing that ambiguities be resolved

in a future request to have the Court clarify its injunction.  Opp'n 18 ("Now is not the time.").

Plaintiffs' proposal that Interior should simply "s[eek] district court clarification," *id.* (citation

9

omitted), about the legality of historically routine leasing postponements, *supra* 2–3, violates both Federal Rule of Civil Procedure 65(d) and the APA.

Finally, the Court should reject Plaintiffs' request for nationwide relief.  Plaintiffs concede that this case is on all fours with *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021), where the Fifth Circuit stayed a nationwide injunction sought in similar circumstances.  *Compare* Cross-Mot. 23–24, *with* Opp'n 19–20.  Plaintiffs' only response to *Louisiana* invokes the principle that motions panel decisions are "not binding on the later panel that is assigned the appeal for resolution."  *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021) (citation omitted).  Even so, it is common for district courts to treat published appellate opinions as precedent.  *E.g.*, *Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at \*26 (N.D. Tex. Dec. 31, 2021) (treating *Louisiana* as "Fifth Circuit precedent").  Because that published Fifth Circuit opinion is directly on point and merits at least great persuasive weight, the Court should decline to issue nationwide relief as similar issues are being litigated in other courts, thirty-five States have not brought suit, and there is no basis for uniformity given the great variation in quantity of mineral estate managed across the fifty States.  *See* Cross-Mot. 23–24.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgement.

Respectfully submitted this 12th day of August, 2022.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S.  Department of Justice

*/s/ Michael S. Sawyer*
THOMAS W.  PORTS, JR.
MICHAEL S.  SAWYER
Trial Attorneys, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:     (202) 305-5492 (Ports)
               (202) 514-5273 (Sawyer)
Fax:           (202) 305-0506
Email:         Thomas.Ports.Jr@usdoj.gov
               Michael.Sawyer@usdoj.gov

*Counsel for Defendants*